**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HARRY SAMUEL, CHRISTOPHER ROBERT DESMOND, and ARTHUR GOVAN, individually and on behalf of others similarly situated, | ) C.A. No.: 1:23-cv-01134-RGA<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH and BUREAU CHIEF MEDICAL RECORDS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**DEFENDANT VITALCORE HEALTH STRATEGIES'
OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Lindsay DeCarlo, Esq. (*pro hac vice*)
401 E. Jackson Street, Suite 3400
Tampa, FL 33602
(813) 739-1911
Lindsay.DeCarlo@lewisbrisbois.com

Dated: December 11, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Andrew R. Ralli, Esq. (No. 6733)
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
(302) 295-9447
Andrew.Ralli@lewisbrisbois.com

*Attorneys for VitalCore Health Strategies*

132579523.2

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ........................................................... 1

SUMMARY OF ARGUMENTS ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

   I. Plaintiff Specific Allegations ...................................................................... 2

   II. Defendant Specific Allegations .................................................................. 5

ARGUMENT ................................................................................................. 7

   I. Legal Standard for Motion to Dismiss ......................................................... 7

   II. The Complaint Fails to State a Valid Constitutional Claim Against VitalCore Upon
   Which Relief May Be Granted ...................................................................... 8

      A.     The Complaint is a "Shotgun" Pleading in Violation of Rule 8(a) ....................... 8

      B.     The Complaint Alleges Insufficient Facts to Establish a § 1983 Claim
             Against VitalCore Under Rule 12(b)(6) ............................................... 11

            1.   1983 Claims Cannot Be Based on Vicarious of Joint Liability ................... 12

            2.   The Complaint Alleges No Deficiencies in Care Rising to the Level of
                 Eighth Amendment Deliberate Indifference ................................ 15

            3.   The Complaint Fails to Plead Recoverable Damages ............................. 18

      C.     Plaintiffs Do Not Allege Actual Injury or Concrete Harm Proximately
             Caused by VitalCore Necessary to Confer Standing ................................ 20

   II. Plaintiffs' State Law Claims Against VitalCore Also Fail ................................. 22

      A.     State Law Claims for Discretionary Function are Barred by DTSCA ................... 22

      B.     Claims for Negligent Hiring are Insufficiently Plead ................................. 24

   III. Plaintiffs Failed To Exhaust Administrative Remedies Required Before Filing Suit ...... 26

   IV. VitalCore is Immune Despite How Claims Were Plead .................................... 27

      A.     Claims Against VitalCore are Barred by the Eleventh Amendment ..................... 27

      B.     VitalCore is Entitled to Qualified Immunity Under Delaware Law ..................... 29

   V.   Class Certification Elements are Insufficiently Plead ..................................... 29

CONCLUSION .............................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adger v. Carney*,
   2020 U.S. Dist. LEXIS 52533 (D. Del. Mar. 26, 2020) .............................................10, 15, 24

*Allah v. Al-Hafeez*,
   226 F.3d 247 (3d Cir. 2000)..........................................................................................21

*Alston v. Penn State Health Milton S. Hershey Med. Ctr.*,
   2023 U.S. Dist. LEXIS 141774 (M.D. Pa. Aug. 14, 2023) ...................................27

*Angstadt ex rel. Angstadt v. Midd-W. Sch. Dist.*,
   182 F. Supp. 2d 435 (M.D. Pa. 2002) ...................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................8, 13, 14

*Bartol v. Barrowclough*,
   251 F. Supp. 3d 855 (E.D. Pa. 2017) .....................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................8

*Brooks v. Beard*,
   167 F.Appx. 923 (3d Cir. Feb. 14, 2006)...............................................................16

*Brown v. Nicklow*,
   2023 U.S. Dist. LEXIS 18965 (M.D. Pa. Feb. 3, 2023) ...........................................8

*Buoniconti v. City of Phila.*,
   148 F. Supp. 3d 425 (E.D. Pa. 2015) ...................................................................24

*Castro v. New Castle Cnty. Voc. Tech. Sch. Dist.*,
   2016 Del. C.P. LEXIS 77 (Aug. 23, 2016)...........................................................23

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998)....................................................................................7

*Clark v. McDonald's Corp.*,
   213 F.R.D. 198 (D.N.J. 2003)...............................................................................30

*Davis v. Yates*,
   2020 U.S. Dist. LEXIS 17758 ...............................................................................18

*De'Lonta v. Angelone*,
    330 F.3d 630 (4th Cir. 2003) ...................................................................................12

*Diaz v. FCA US L.L.C.*,
    2022 U.S. Dist. LEXIS 158865 (D. Del. Sept. 2, 2022) ...........................................21

*Dooley v. Wetzel*,
    957 F.3d 366 (3d Cir. 2020)......................................................................................13

*Durmer v. O'Carroll*,
    991 F.2d 64 (3d Cir. 1993)........................................................................................16

*Estelle v. Gamble*,
    429 U.S. 97 (1976)........................................................................................... *passim*

*Evancho v. Fisher*,
    423 F.3d 347 (3d Cir. 2005).........................................................................12, 14, 22

*Fanean v. Rite Aid Corp. of Del., Inc.*,
    984 A.2d 812 (Del. Super. 2009) ..............................................................................25

*Farmer v. Brennan*,
    511 U.S. 825 (1994).....................................................................................12, 13, 15

*Farmer v. Carlson*,
    685 F. Supp. 1335 (M.D. Pa. 1988) .........................................................................16

*Fisher v. Goord*,
    981 F. Supp. 140 (W.D.N.Y. 1997) ..........................................................................19

*Fuhrman v. Mawyer*,
    2023 U.S. Dist. LEXIS 155820 (M.D. Pa. Sep. 1, 2023) ..........................................9

*Gould Elecs., Inc. v. U.S.*,
    220 F.3d 169 (3d Cir. 2000).......................................................................................8

*Greenfield v. Miles*,
    211 A.3d 1087 (Del. 2019) .......................................................................................23

*Gutierrez v. Advanced Student Transp., Inc.*,
    2015 Del. Super. LEXIS 352 (Del. Super. July 14, 2015)........................................26

*Holiday Inns of Am. v. B & B Corp.*,
    409 F.2d 614 (3d Cir. 1969)......................................................................................19

*Iko v. Shreve*,
    535 F.3d 225 (4th Cir. 2008) ....................................................................................21

*Jacobs v. P'. Dep't of Corrections,*
  2011 U.S. Dist. LEXIS 60869 (W.D. Pa. June 7, 2011)........................................18

*Kost v. Kozakiewicz,*
  1 F.3d 176 (3d Cir. 1993)..................................................................................8

*Ky. v. Graham,*
  473 U.S. 159 (1985)........................................................................................28

*Lapella v. City of Atl. City,*
  2012 U.S. Dist. LEXIS 100327 (D.N.J. July 18, 2012)........................................9

matter of law. *Bd. of Trs. v. Garrett,*
  531 U.S. 356 (2001)........................................................................................27

*Little v. Lycoming Cnty.,*
  912 F. Supp. 809 (M.D. Pa.), *aff'd,* 101 F.3d 691 (3d Cir. 1996) .........................16

*Litwak v. Tomko,*
  2018 WL 1378633 (M.D. Pa. Mar. 19, 2018)......................................................9

*Miller v. Corr. Officer Berrios,*
  2023 U.S. Dist. LEXIS 84419 (D.N.J. May 15, 2023)....................................26, 27

*Monell v. Dep't of Soc. Servs.,*
  436 U.S. 658 (1978)........................................................................................28

*Morse v. Lower Merion Sch. Dist.,*
  132 F.3d 902 (3d Cir. 1997)..............................................................................7

*Pearson v. Callahan,*
  555 U.S. 223 (2009)........................................................................................28

*Ramirez v. Collier,*
  142 S. Ct. 1264 (2022)....................................................................................27

*Rhines v. Bledsoe,*
  2009 U.S. Dist. LEXIS 152772 (M.D. Pa. Dec. 18, 2009)..................................15

*Ridge v. Campbell,*
  984 F. Supp. 2d 364 (M.D. Pa. 2013)...........................................................8, 20

*Robinson v. Christiana Sch. Dist.,*
  2022 Del. Super. LEXIS 804 (Del. Super. Sep. 21, 2022) ..................................29

*Rode v. Dellarciprete,*
  845 F.2d 1195 (3d Cir. 1988).....................................................................13, 15

*Rogers v. Pendleton*,
    249 F.3d 279 (4th Cir. 2001) ...................................................................................28

*Root v. Wilmington*,
    2022 Del. Super. LEXIS 1384 (Del. Super. 2022) .................................................25

*Rosenberg v. Meese*,
    622 F. Supp. 1451 (S.D.N.Y. 1985).......................................................................17

*Ross v. Blake*,
    578 U.S. 643 (2016).................................................................................................27

*Saucier v. Katz*,
    533 U.S. 194 (2001).................................................................................................28

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)...................................................................................................8

*Smith v. Sullivan*,
    2008 U.S. Dist. LEXIS 12361 (D. Del. Feb. 19, 2008) ...........................................8

*Spruill v. Gillis*,
    372 F.3d 218 (3d Cir. 2004)....................................................................................16

*Steffel v. Thompson*,
    415 U.S. 452 (1974).................................................................................................17

*Talley v. Harper*,
    2017 U.S. Dist. LEXIS 12837 (W.D. Pa. Jan. 31, 2017)..................................11, 19

*Talley v. Supreme Court of Pa.*,
    2019 U.S. Dist. LEXIS 87967 (M.D. Pa. May 23, 2019) ..................................13, 19

*Toll Bros. v. Twp. of Readington*,
    555 F.3d 131 (3d Cir. 2009)....................................................................................20

*Trump Hotels & Casino Resorts v. Mirage Resorts*,
    140 F.3d 478 (3d Cir. 1998)......................................................................................7

*United States v. Pennsylvania*,
    533 F.2d 107 (3d Cir. 1976)....................................................................................19

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ................................................................................9

*White v. Napoleon*,
    897 F.2d 103 (3d Cir. 1990)...............................................................................16, 17

*Williams v. Papi*,
    714 F. App'x 128 (3d Cir. 2017) ...................................................................14

*Zavala v. Wal-Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012)........................................................................22

**Statutes**

10 *Del. C.* § 4001 ..............................................................................................23, 29

11 *Del. C.* §§ 6516, 6517 ......................................................................................14

42 U.S.C. ...............................................................................................................21

42 U.S.C. § 1983 ............................................................................................ *passim*

42 U.S.C. § 1997e(a) .............................................................................................26

42 U.S.C. § 1997e(e) .............................................................................................18

Defendants' act ......................................................................................................23

DSTCA .......................................................................................................... *passim*

PLRA ........................................................................................18, 21, 26, 27

Prison Litigation Reform Act ..................................................................................1

State Tort Claims Act ...............................................................................................1

**Other Authorities**

Eighth Amendment ........................................................................................ *passim*

Eleventh Amendment..........................................................................................2, 27

Fourteenth Amendment ............................................................................................1

Eighth and Fourteenth Amendments .......................................................................5

Civil Rule 9(b) ......................................................................................................29

Del. Const. Art. I, § 11 ..........................................................................................23

Fed. R. Civ. P. Rule 8 ..............................................................................................9

Federal Rules of Civil Procedure rules 8(a), 10, and 12(b)(6)................................1

Rule 8 ........................................................................................................................9

Rule 8(a)....................................................................................................................1, 8

Rule 8(a)(2)....................................................................................................................11

Rule 8's....................................................................................................................10

Rule 12(b)(6)....................................................................................................1, 7, 8, 11

U.S. Const. amend. VIII....................................................................................................12

## NATURE AND STAGE OF PROCEEDING

Plaintiffs Harry Samuel ("SAMUEL"), Christopher Robert Desmond ("DESMOND"), and Arthur Govan ("GOVAN")(collectively, the "Plaintiffs") filed their Class Action Complaint (the "Complaint," or "Compl.") on October 11, 2023, against Defendant VitalCore Health Strategies ("VITALCORE," "Defendant," or the "Movant") and the other above-captioned Co-Defendants (collectively, the "Co-Defendants", and together with VITALCORE, the "Defendants") raising two causes of action: Count I, claiming §1983 Violations of the Eighth and Fourteenth Amendment under federal law; and Count II, claiming Negligent Hiring, Supervision, and Retention under state law. *See* Compl. These two causes are raised jointly and without distinction against *all* Defendants. The pleading generally alleges that Plaintiffs and a proposed class of similarly situated Delaware inmates received inadequate health care from Defendants.

This is VITALCORE's Opening Brief (the "Opening Brief") in support of its Motion to Dismiss (the "Motion"), filed contemporaneously herewith, pursuant to rules 8(a), 10, and 12(b)(6) of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENTS

1.      The Complaint is an improper "shotgun pleading" which comingles claims and causes of action against VITALCORE and others without distinction, in violation of Rule 8(a).

2.      Count I of the Complaint fails to state a valid cause for Section 1983 Constitutional violations by failing to allege sufficient facts of VITALCORE's direct involvement nor deliberate indifference resulting in concrete harms suffered by Plaintiffs in violation of Rule 12(b)(6).

3.      Count II of the Complaint fails to state valid state law negligence causes of action, which are barred by the Delaware State Tort Claims Act ("DSTCA") even if properly pled.

4.      Plaintiffs failed to exhaust administrative remedies as mandatory prerequisite before filing suit, as required by the Prison Litigation Reform Act ("PLRA").

5.      VITALCORE is immune from suit under the Eleventh Amendment and DSTCA.

6.      The Complaint fails to plead facts sufficient to establish requisite elements for certification of the proposed putative class, which is both premature and improper.

## STATEMENT OF FACTS

### I.      **Plaintiff-Specific Allegations**

The Complaint identifies three named Plaintiffs bringing claims individually and on behalf others similarly situated. Plaintiffs are currently incarcerated within the Delaware Department of Correction (the "DDOC") and each allege to have received insufficient healthcare constituting deliberate indifference to their medical needs.

Specifically, it is alleged that Plaintiff SAMUEL was and is an inmate of the James T. Vaughn Correctional Center who claims to have a serious medical condition that was negligently managed.  Specifically, SAMUEL claims: (i) he began suffering from bleeding beginning on November 29, 2022 for which he immediately sought emergency care from Co-Defendants and did not receive treatment in response to his complaints; (ii) alleges he interacted with staff employed by certain Defendants on various dates between November 29, 2022 and February 7, 2023, during which time he placed numerous "sick calls" for worsening symptoms which Co-Defendants' staff failed to properly address; (iii) on February 7, 2023, while being transported by wheelchair to undergo treatment for profuse bleeding, SAMUEL became faint and sustained a fall. He was left on the floor bleeding and received no aid for several minutes until being transported by ambulance to an emergency room; and (iv) after receiving emergency medical treatment at an offsite hospital, SAMUEL was advised that he needed specialist care and would likely require surgery. Despite this recommendation, SAMUEL claims *Co-Defendants* failed to provide necessary referrals for specialist consultation and surgery, causing prolonged pain.

Notably, *none* of SAMUEL'S specific allegations of insufficient medical care and/or delayed diagnosis occurred during relevant dates of VITALCORE's involvement. Rather, SAMUEL actually alleges that upon VITALCORE assuming control of correctional healthcare, it was only then when he finally received necessary testing and treatment. SAMUEL underwent a bone scan and colonoscopy ordered by VITALCORE's staff, which revealed prostate and rectal cancer that had become terminal due to prior delays in treatment under Co-Defendants' purview. Delays in SAMUEL's treatment and diagnosis are alleged to have accrued *prior* to VITALCORE's involvement in his care. SAMUEL'S *only* allegation specific to VITALCORE is that on some unspecified date after July 1, 20203, an unidentified representative of VITALCORE "advised that he was not going to be provided any treatment." However, this contradicts Plaintiff's prior claim that he thereafter underwent a colonoscopy and bone scan ordered by VITALCORE. Significantly, SAMUEL has *not* alleged *any* actual injury or resulting diagnosis proximately caused by VITALCORE's conduct or involvement in his care.

Plaintiff GOVAN was and is an inmate residing at the James T. Vaughn Correctional Center who claims to have a serious medical condition that was negligently treated. Specifically, GOVAN claims: (i) generally, that he was denied emergency medical care and was not taken to see necessary specialists on unspecified times, presumably under Co-Defendants' purview; (ii) on September 15, 2022, he began to experience prostate and urinary symptoms. Weeks later, Co-Defendants' staff referred him to a urology specialist to address urgent needs, but never brought him to receive the consultation; and (iii) after receiving no specialist treatment for several months, another Co-Defendant provider issued GOVAN another referral for a urology consult on or about May 11, 202, noting it to be "urgent," which he never received in a timely manner. GOVAN alleges only generally that Defendants continue to fail to take action to ensure he is seen by an appropriate specialist, so he is unable to determine if he actually suffers from a serious medical condition.

GOVAN's *only* allegation even generally involving VITALCORE is his claim that he has continued to be denied timely assessment by a Urologist after VITALCORE assumed control of healthcare beginning on July 1, 2023. GOVAN has *not* alleged *any* actual injury or resulting diagnosis proximately caused by VITALCORE's conduct or involvement in his care.

Plaintiff DESMOND was and is an inmate residing at the same correctional facility who was placed in a Chronic Care Program for his medical needs, which he claims were negligently managed by Defendants. Specifically, DESMOND claims: (i) he was previously placed in a Chronic Care Program upon recognition of his medical conditions of high blood pressure and heart disease; (ii) despite knowledge of his medical needs, Defendants, without distinction and on unspecified dates, withheld and refused to provide DESMOND's prescribed medications for 47 days as a form of discipline; and (iii) that Defendants jointly failed to provide him access to cardiology specialists for treatment of a heart condition on unspecified dates. DESMOND alleges only generally that he was deprived access to adequate medical care as a result of systemic understaffing and delays by *all* Defendants indivisibly, but makes *no* single allegation specific to VITALCORE or any involvement of its staff in his care. DESMOND has neither alleged *any* actual injury or resulting diagnosis proximately caused by VITALCORE or any other Defendants' conduct and has not raised *any* allegations specifying whether he claims to have continued to receive insufficient treatment resulting in harm since VITALCORE assumed responsibility.

The Complaint thereafter dedicates more than 35 paragraphs to listing nondescript instances of *other* nonnamed Delaware inmates are various families who allegedly have incurred delays in treatment as "examples" purportedly demonstrating a systemic pattern of insufficient care. Notably, *none* of the multiple "examples" of ineffective health care include any specificity of dates nor distinction of which Defendants are claimed to have been involved in such delays.

II.      **Defendant-Specific Allegations**

Between April 1, 2020 and June 30, 2023, Co-Defendants Centene Corporation ("CENTENE") and Centurion of Delaware LLC ("CENTURION"), were responsible for providing comprehensive healthcare services to all inmates within DDOC custody. It is alleged that Co-Defendants chronically understaffed the correctional healthcare system during this time and failed to train necessary professionals, resulting in systemic violations of Delaware law as well as the Eighth and Fourteenth Amendments. It is further alleged that during this period, Co-Defendants were repeatedly found to be out of compliance with the National Commission on Correctional Health Care (the "NCCHC") industry standards for health systems, requiring corrective action. For purposes of the Motion and claims raised against VITALCORE, facts of Co-Defendants' alleged deficiencies and violations occurring between April 1, 2020 and June 31, 2023 are largely immaterial to VITALCORE, aside from demonstrating that Plaintiffs' claimed issues occurred primarily under other parties' oversight, and *not* Movant's.

The Complaint states that relevant dates upon which the Defendants were *jointly* liable for constitutional violations suffered by Plaintiffs began on or about April 1, 2020 and continued through October 11, 2023 and beyond. The pleading expressly concedes that corporate Co-Defendants maintained control and oversight of correctional health care between April 1, 2020 through June 30, 2020, comprising *more than 38 months* and a total of 1185 days of the relevant dates at issue. In contrast, the Complaint explains that VITALCORE assumed the contract to take over correctional health services beginning only on July 1, 2023; meaning that VITALCORE was *only* involved for approximately *3 months* and a total of 102 days as of the asserted dates at issue wherein alleged systemic shortcomings in healthcare occurred. However, both counts and all "general allegations" pertaining to the claims occuring over the full range of dates have been raised jointly against VITALCORE and other Defendants indivisibly and without distinction.

While alleging great detail of systemic deficiencies in correctional health systems under *other* Co-Defendants' control and oversight over a period of 38 months of the relevant date range, the Complaint alleges few, if any, facts specific to VITALCORE's purported perpetuation of such shortcomings in the three months after assuming the DDOC contract. Rather, extensive efforts are dedicated to alleged details of the bidding process by which VITALCORE was awarded the contract to provide DDOC healthcare beginning on July 1, 2023. Such details pertaining to the bidding process and transition phase leading up to VITALCORE's assumption of healthcare responsibilities appear to be included merely as inflammatory allegations intended to question the qualification of VITALCORE to have been awarded the contract, and are irrelevant to the claims at issue and bear no impact on the liability of VITALCORE.

The Complaint alleges that during a two-month transition period between May 1, 2023 and June 30, 2023 leading up to VITALCORE's assumption of health care responsibility, it was provided access to operational knowledge and records of existing prison health systems. Plaintiffs make the conclusory allegation that VITALCORE's "access" to such information prior to assuming the contract on July 1, 2023 made VITALCORE "aware" that Delaware prisons lacked a functional health care system and required dramatic improvements. Without any specificity, Plaintiffs generally allege that VITALCORE thereafter failed to take steps necessary to improve the sufficiency of health services in Delaware prisons after assuming the contract.

It is further alleged that VITALCORE "guaranteed" employment to all existing healthcare workers, regardless of their competence and despite their prior "failures" under Co-Defendants' employment and supervision. However, the Court may take judicial notice that Delaware labor law *required* continuity of employment of the correctional health workforce upon VITALCORE's assumption of the contract unless or until specific employees demonstrated behavior warranting discipline or termination under VITALCORE's purview. Therefore, this allegation is merely an

attempt to mischaracterize VITALCORE's obligation to provide continuity of services and staff—which were previously vetted and trained both by Co-Defendants and the DDOC—as a basis for negligence in hiring and supervision. It is further alleged that VITALCORE's website showed multiple job postings as of mid-July of 2023, leading Plaintiffs to the conclusory and incorrect assertion that the existence of available healthcare provider job openings demonstrated that VITALCORE was "operating without necessary staff" during this time.

Presumably because VITALCORE had *only* assumed contractual responsibility for correctional health care for approximately three months as of the time the Complaint was filed, there are virtually *no* allegations of any specific shortcomings, staffing issues, deficiencies in health services, nor institutional policy prioritizing profits over inmate health raised as to VITALCORE, despite raising such allegations against *other* Defendants. It is alleged vaguely that Defendants, indivisibly, violated Plaintiffs' constitutional rights by systemically failing to ensure appropriate health services during the relevant dates, which have not been timely improved and remedied by VITALCORE since its involvement beginning on July 1, 2023.

## ARGUMENT

I.  ## LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6)  provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478, 483 (3d Cir. 1998). The court need not assume the plaintiff can prove facts that were not alleged in the complaint, *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906

(3d Cir. 1997). When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Defendants bear the burden to establish the plaintiff's complaint fails to state a claim upon which relief can be granted. *Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Before a plaintiff will be permitted to impose the substantial burden and expense of discovery on a defendant, he must plead evidentiary facts, and *not* mere conclusions which might "plausibly" suggest that the defendant was guilty of misconduct. *See id*. Rather, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, at the motion to dismiss stage, a plaintiff is "*required* to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 U.S. Dist. LEXIS 12361, at *3 (D. Del. Feb. 19, 2008) (emphasis added) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

## II.   THE COMPLAINT FAILS TO STATE A VALID CONSTITUTIONAL CLAIM AGAINST VITALCORE UPON WHICH RELIEF MAY BE GRANTED

### A.   The Complaint is a 'Shotgun' Pleading in Violation of Rule 8(a)

"[I]t is well settled in the Third Circuit that, for a Section 1983 claim to be adequately pled, the complaint's allegations *must* show that *each* named defendant was personally involved in the alleged deprivations violations." *Ridge v. Campbell*, 984 F. Supp. 2d 364, 375 (M.D. Pa. 2013) (emphasis added). "'Shotgun pleadings' are complaints that assert numerous claims against multiple defendants without giving adequate notice of the grounds on which the claims rest." *Brown v. Nicklow*, 2023 U.S. Dist. LEXIS 18965, at *6 (M.D. Pa. Feb. 3, 2023).   As Courts

throughout the Third Circuit have recognized, "a shotgun pleading does not give defendants adequate notice of the claims brought against them and the grounds upon which each claim rests." *Litwak v. Tomko*, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018).   Additionally, while a "'complaint may incorporate by reference any prior paragraphs that are necessary to pleading a plausible cause of action, [it] may not use the improper expedient of simply incorporating by reference all prior paragraphs, be they supportive or relevant to the cause of action or not, since such a practice does <u>not</u> provide adequate notice for purposes of Rule 8.'" *Fuhrman v. Mawyer*, 2023 U.S. Dist. LEXIS 155820, at *41 (M.D. Pa. Sep. 1, 2023) (alterations in original) (quoting *Caruso v. Hill*, 2020 U.S. Dist. LEXIS 125709, at *31 (E.D. Cal. July 15, 2020); *see Lapella v. City of Atl. City*, 2012 U.S. Dist. LEXIS 100327, at *14 n.3 (D.N.J. July 18, 2012) (rejecting "[p]laintiff's argument that such incorporation is required under Fed. R. Civ. P. Rule 8," explaining that, "incorporating all preceding allegations into each count . . . [is] a shotgun pleading that obfuscate her claims and defy the mandate of Rule 8, denying defendants of the fullest extent of notice they are entitled").

Plaintiffs' instant Complaint is the embodiment of an improper 'shotgun pleading' because each of the two threadbare Counts indiscriminately incorporate all 166 paragraphs of prior counts and allegations by reference without regard for the particular Defendants or the asserted claim raised against each. *See e.g., Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (explaining basis for dismissal where a "'complaint containing multiple counts where each count adopts the allegations of all preceding counts'" is a shotgun pleading under the first category identified in *Weiland*) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015)).   Plaintiffs' 35 page Complaint states *no* specific allegation against any Defendant, but rather rely upon the extensive background facts afforded to be incorporated by reference to infer joint liability upon *all* parties for the stated history of systemic healthcare

deficiencies. Both the factual allegations and two causes of action fail to raise *any* claims with distinction or specificity among Defendants; styling the two counts as presumed *joint* claims raised indivisible against *all* Defendants. The Complaint, as plead, states that the during the relevant dates spanning April 1, 2020 through the present date; Constitutional violations occurred which are now are charged to *all* Defendants. Clearly, VITALCORE *cannot* be claimed liable for deficiencies alleged to have occurred during the 38 months *prior* to VITALCORE's assumption of the control and control of health services, though the Complaint is plead as such. Such style of pleading comingling parties and relevant dates is a prohibited because it deprives Moving Defendant fair notice of what claims are actually raised against from its period of involvement beginning only on July 1, 2023 with distinction from other named Defendants.

For instance, in *Adger v. Carney*, 2020 U.S. Dist. LEXIS 52533 (D. Del. Mar. 26, 2020), this Court agreed with the correctional defendants challenging a complaint styled almost identically to the instant action, finding that it was essentially a "shotgun pleading" which did not comply with Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," warranting dismissal. *Id.* at *16-17.  Here, Plaintiffs' 'shotgun' style of pleading comingles allegations and fails to distinguish *which* Defendants are charged with purported violative conduct, *what* each Defendant allegedly did to violate Plaintiffs' rights, nor *when* such violative conduct allegedly occurred. However, Plaintiffs own allegations make clear that VITALCORE's contract to assume correctional healthcare responsibilities did not occur until July 1, 2023. Therefore, Plaintiffs' general 'factual allegations' involving care and conduct *prior* to July 1, 2023 cannot be considered for sufficiency of claims pertaining to Movant for purposes of this Motion, as VITALCORE clearly cannot be charged for actions carried out by other parties during extensive periods *prior* to its first involvement in DDOC services. It has been repeatedly held that "[t]he plaintiff who files such a shotgun complaint shifts onto the defendant and the court

the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a Defendant or the Court." *Talley v. Harper*, 2017 U.S. Dist. LEXIS 12837, at *4 (W.D. Pa. Jan. 31, 2017). Accordingly, the Complaint violates Rule 8(a)(2).

**B.    The Complaint Alleges Insufficient Facts to Establish a §1983 Claim Against VitalCore Under Rule 12(b)(6)**

In addition to Plaintiffs' 'shotgun' style of pleading, the Complaint raises virtually *no* specific allegation of dates or instances of deficient care or delays in diagnosis as to *any* Plaintiffs directly involving VITALCORE or its staff. The pleading fails to allege *any* direct involvement of VITALCORE in creating or implementing which contributed to Constitutional violations claimed by Plaintiffs or other inmates. Rather, the Complaint alleges only generally that since July 1, 2023 through the present date, "VITALCORE has failed to remedy the constitutional and statutory failings of the Delaware prison health systems despite being awarded a contract over three years to do so." Compl. ¶ 149.

In a general background section titled "Defendant VitalCore is Acting with Deliberate Indifference by Intentionally Delaying or Denying Health Care for Serious Medical Needs," Plaintiffs dedicate nearly 20 paragraphs to explaining the bidding process and contractual provisions for the DDOC contract awarded to VITALCORE, which are immaterial to a §1983 deliberate indifference claim. However, Plaintiffs make *no* specific allegation of *any* knowledge, direct involvement, conduct, nor medical care carried out by VITALCORE or any of its agents constituting deliberate indifference in this section or elsewhere throughout the Complaint. Valid deliberate indifference claims under §1983 claims *require* a plausible showing both (1) that *each* Defendant was aware of a serious medical need; (2) and that Defendant was actively involved in conduct to deliberately ignore or fail to properly provide medical treatment. Thus, the instant Complaint, which fails to allege *any* specific conduct plausibly giving rise to a deliberate

indifference claim against VITALCORE, fails to state a cognizable §1983 cause of action.

Plaintiffs seek to invoke the Eighth Amendment in order to support their claims against Defendants. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments" and protects inmates from inhumane treatment while imprisoned. U.S. Const. amend. VIII. The Supreme Court discussed the extent of a prisoner's right to medical attention in *Estelle v. Gamble*, 429 U.S. 97 (1976), and explained *only* "deliberate indifference to serious medical needs of prisoners' violates the Eighth Amendment. *Id.* at 104.

A deliberate indifference claim has both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). To satisfy both the objective and subjective components of a §1983 claim, Plaintiffs *must* first show that the alleged deprivation(s) were sufficiently serious and *must* show that *each* Defendant, including VITALCORE, acted with deliberate indifference to their health and safety. *Id*. Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the Eighth Amendment's prohibition against "unnecessary and wanton infliction of pain[.]" *Id.* at 835, 860. "Only extreme deprivations" are sufficient to constitute a violation of the Eighth Amendment. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

In essence, to avoid dismissal for failure to state a §1983 claim, Plaintiffs' civil rights Complaint *must* have stated the specific conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The Complaint fails to plead even basic facts sufficient to establish the *who*, *what*, and *where* details of Plaintiffs' purported constitutional violations as to any Defendant, especially not as to VITALCORE.

### (1)    1983 Claims Cannot be Based on Vicarious or Joint Liability

Because the Complaint alleges virtually *no* conduct specific to VITALCORE, it is presumed that purported liability alleged against Movant is intended to be asserted jointly or

vicariously with other parties. Specifically, the pleading alleges only that VITALCORE failed to timely remedy the constitutional and statutory failings of *other* Defendants upon assuming the contract on July 1, 2023, apparently seeking to hold VITALCORE liable for the prior negligence of *other* parties for which it was successor and had no direct involvement nor control over.

As a preliminary issue, Plaintiffs' §1983 claims against Movant are subject to dismissal on the grounds that VITALCORE is not a 'person,' and is thus is "not a 'person' amenable to suit," and "is not subject to liability under 42 U.S.C. § 1983." *Talley v. Supreme Court of Pa.*, 2019 U.S. Dist. LEXIS 87967, at *26-27 (M.D. Pa. May 23, 2019). Further, Plaintiffs' claims against VITALCORE seeking to impute liability for longstanding institutional failures is misdirected against Movant and fails to assert a breach.

It is well established that in §1983 actions liability *cannot* be "predicated solely on the operation of respondeat superior" or vicarious liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a §1983 Plaintiff <u>*must* aver facts that demonstrate "the defendants' *personal* involvement in the alleged misconduct."</u> *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (emphasis added). Personal involvement can include direct wrongful conduct by a Defendant or its agents, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence" however, <u>such averments *must* be made with particularity</u>. *Id.* Here, the Complaint is substantially void of *any* allegations of individual conduct fairly charged to VITALCORE, let alone allegations of its actual knowledge, personal involvement, or acquiescence to misconduct.

Actual knowledge or awareness on the part of the alleged inflictor is *essential* to proof of deliberate indifference because "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment[.]" *Farmer*, 511 U.S. at 844. Under the progeny of *Iqbal, Estelle* and *Farmer*, it is clear that an Eighth Amendment claim is properly plead <u>*only* when it is alleged that</u>

the defendant actually knew of and consciously disregarded a detainee's medical needs. *See, e.g.,* *Iqbal*, 556 U.S. 662; *Estelle*, 429 U.S. 97.  To state a claim under 42 U.S.C. § 1983, an individual "defendant in a civil rights action *must* have personal involvement in the alleged wrongdoing; liability *cannot* be predicated solely on the operation of vicarious theories. Personal involvement 'can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" *Evancho*, 423 F.3d at 353.

Even assuming that knowledge and acquiescence *could* be sufficient as a basis for liability under §1983, *see generally Williams v. Papi*, 714 F. App'x 128, 133 (3d Cir. 2017) (noting that *Iqbal* "arguably narrowed the ability to find a supervisor liable for conduct of which he was merely aware but did not direct"), Plaintiffs' instant Complaint complaining of delays and denials of prison health services largely occurring prior to July 1st is grievously insufficient to meet the requirements for such liability to be extended to VITALCORE as successor. Plaintiffs do not allege *any* actions by VITALCORE showing or even suggesting personal direction or actual knowledge and acquiescence of wrongful conduct through its actions or health policies it set in place.

Plaintiffs' allegations further fail to set forth a duty owed by VITALCORE distinct from other parties. Under Delaware law, it is the Commissioner of Correction, *not* contracted providers, who have "full and active charge" of the Department's facilities and services, and who is required to "provide for" the "treatment" of persons committed to DOC."  11 *Del. C.* §§ 6516, 6517. This reduces, if not eliminates, any opportunity for VITALCORE to have been *directly* involved nor held liable for the alleged conduct of longstanding systemic failures of correctional heath. VITALCORE is referenced only sparingly throughout the Complaint, with virtually no allegations of direct involvement and *no* distinction from other Defendants. By failing to allege any specific instances of violative conduct occurring under VITALCORE's control nor identifying any staff member it employed engaging in such conduct, Plaintiffs *cannot* claim Movant as "having been

14

involved personally, or been aware of and ratified the abuse or constitutional violations of inmates from April 1, 2020." Allegations against VITALCORE, even viewed favorably, are insufficient to show the requisite degree of involvement in abuse or deliberate indifference to its continuance.

### (2)   The Complaint Alleges No Deficiencies in Care Rising to the Level of Eight Amendment Deliberate Indifference

With respect to Plaintiff's allegations of inadequate medical treatment and medical accommodations, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rhines v. Bledsoe*, 2009 U.S. Dist. LEXIS 152772, at *13 (M.D. Pa. Dec. 18, 2009). In the context of medical care, the relevant inquiry is whether each Defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiffs serious medical needs (the objective element). *Farmer,* 511 U.S. at 835. Thus, a pleading, at minimum, needs to allege enough facts specific to *each* Defendant to sufficiently put *each* Defendant "on notice of what they are accused of doing." *Adger*, 2020 U.S. Dist. LEXIS 52533, at *21. To adequately state a claim under these circumstances, Plaintiffs must have alleged facts making it plausible to believe that VITALCORE was a knowing and active participant in alleged 'systemic shortcomings" and "institutional violations" of Constitutionally protected rights to health care since April 1, 2020, and have not. Plaintiffs similarly failed to allege the injuries each suffered as a result of VITALCORE, including how, why, and when such conduct occurred.

The Complaint correctly alleges that VITALCORE only became involved in their healthcare at DDOC correctional facilities *after* July 1, 2023. However, the comingled nature of the allegations seems to attempt to impute liability to VITALCORE, as successor assuming the duty of care after other Defendants had negligently managed Plaintiffs' symptoms, became jointly liable for failing to timely rectify *prior* shortcomings of other parties resulting in the totality of Plaintiffs' claimed harms. Participation in the after-the-fact is *not* enough to establish personal involvement. *Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the

actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, 167 F.Appx. 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.) Therefore, all Plaintiffs' constitutional claims jointly raised against VITALCORE without distinction are insufficient should be dismissed.

Additionally, *only* egregious and intentional acts or omissions can violate this standard, mere negligence and even medical malpractice cannot result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does *not* state a valid claim of medical mistreatment under the Eighth Amendment[.]" *Estelle*, 429 U.S. at 106 (emphasis added). For example, a "medical decision not to order an X-ray, or like measures, does *not* represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "Allegations of medical malpractice or medical neglected are <u>not</u> sufficient to establish a Constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (emphasis added). In sum, negligence, unsuccessful medical treatment, or medical malpractice do <u>not</u> give rise to a §1983 cause, and inmates' disagreement with medical treatment does not establish deliberate indifference. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

If there is an apparent dispute over the adequacy or timeliness of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer v. Carlson*, 685 F. Supp.

1335, 1339 (M.D. Pa. 1988). Here, Plaintiffs' claims seem to involve delays or unsatisfactory response to named Plaintiffs' medical complaints and needs such as GOVAN's alleged delay in receiving a colonoscopy believed to be urgently needed. Even taken as true, such generalized delays in treatment or diagnosis, many of which allegedly occurring *prior* to VITALCORE's involvement, are insufficient to establish an actionable Eight Amendment claim.

Moreover, Plaintiffs' disagreement with the fact that the prison medical department did not immediately refer them for imaging to specialist consultation does *not* serve as a predicate to liability under § 1983. *See White*, 897 F.2d at 108-11 ("[N]o claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). This is particularly so in light of the fact that there is no allegation or indication in the instant pleading that VITALCORE or its agents intentionally or knowingly withheld *any* medical treatment from Plaintiffs in order to inflict pain or harm upon them since their involvement beginning on July 1st.

Finally, with respect to Plaintiffs' comingled claims for declaratory and injunctive relief, the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 459 n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985)(emphasis added). The instant Complaint alleges a pattern of specific conduct occuring over the course of years *prior* to VITALCORE's involvement  which may infer indifference, but fails to allege *any* allegation specific to VITALCORE to suggest that it engaged in violative conduct or inaction since July 1, 2023 as would be necessary to establish an ongoing issue and actual

controversy warranting injunctive or declaratory relief. Accordingly, Plaintiffs' claims for injunctive relief alleged generally against VITALCORE jointly along with other Defendants for prior systemic failures are insufficient and should be similarly dismissed.

### (3)     The Complaint Fails to Plead Recoverable Damages

None of the named Plaintiffs have alleged facts of actual injury proximately caused by VITALCORE sufficient to sustain a valid claim for recoverable compensatory damages.   If Plaintiffs are seeking compensatory damages, or damages for emotional injuries, then he *must* demonstrate physical injury proximately caused by the defendant's actions. *See Davis v. Yates*, 2020 U.S. Dist. LEXIS 17758, at *35 (*see also* 42 U.S.C. § 1997e(e), providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). The Third Circuit is clear that under the PLRA, a prisoner *must* allege he suffered physical injury to bring a claim. *Jacobs v. P'. Dep't of Corrections*, 2011 U.S. Dist. LEXIS 60869, at *64 (W.D. Pa. June 7, 2011).

Here, the three Plaintiffs have failed to sufficiently allege *any* actual injury or medical condition resulting or arising from VITALCORE's conduct. Plaintiff SAMUEL alleges that he raised urgent medical concerns until approximately February 7, 2023, *prior* to Movant's involvement. SAMUEL claims he has been put at risk of future injury by being denied timely specialist consultations, but has *not* alleged that such speculative risk of future harm was caused or exacerbated by VITALCORE. In fact, SAMUEL expressly alleged that he finally received overdue treatment including a bone scan and colonoscopy upon VITALCORE's assumption of correctional healthcare duties. Likewise, Plaintiff GOVAN alleges *no* actual injury against any Defendant, let alone specific to VITALCORE. GOVAN has alleged only that he has been rendered unaware if he suffers any actual medical condition or injury by being denied or delayed specialist

consultation. GOVAN's allegations, which are speculative and not directed at any Defendant, do not state any dates upon which delays in treatment allegedly occurred. Therefore, GOVAN's injuries, even if better alleged, cannot be attributed to VITALCORE. Finally, Plaintiff DESMOND alleged that his medications for diagnosed illnesses were improperly withheld for 47 days as a form of discipline, but does not allege *when* such denial of medications occurred nor whether he suffered from any resulting injury or medical condition as a result of being deprived  medications. Therefore, DESMOND has *not* sufficiently alleged *any* actual injury, nor *any* conduct plausibly inferring the basis for an injury caused by VITALCORE nor occuring during its limited period of involvement after July 1st.

Plaintiffs have similarly failed to allege sufficient facts to infer a plausible basis for injunctive or declaratory relief against VITALCORE. *Talley v. Supreme Court of Pennsylvania* is a case of very similar circumstances, wherein the plaintiff sought injunctive relief against several correctional defendants. *Talley*, 2019 U.S. Dist. LEXIS 87967.  In *Talley,* the court held that the plaintiff's claims sought to compel certain procedures that pertained to correctional conditions of health services programming of the DOC, which caused the claims to fail without a greater showing of future harm from existing policy. "[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury pendente lite if the relief is not granted." *United States v. Pennsylvania*, 533 F.2d 107, 110 (3d Cir. 1976). Indeed, an injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm *must* be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-W. Sch. Dist.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). Further, "[an] <u>injunction cannot be issued based on past harm</u>. *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis added).

In determining appropriateness of declaratory relief, the court must consider whether such relief will resolve an uncertainty giving rise to a controversy, the convenience of the parties, the public interest, and the availability of other remedies. *Ridge*, 984 F. Supp. 2d at 373-74. Here, Plaintiffs have failed to meet the burden of establishing why correctional health policy changes, if in fact warranted, could not be achieved by means short of declaratory relief awarded against VITALCORE. When construed in the light most favorable to Plaintiffs, the Complaint does not state any specific policy enacted or perpetuated by VITALCORE warranting change to prevent future harm to Plaintiffs. Further, the Complaint does not demonstrate that *any* future harm in connection with Plaintiffs' claims for injunctive relief against VITALCORE is imminent, as opposed to speculative. Thus, this Court should find that Plaintiffs' claims for injunctive and declaratory relief, if intended to be jointly asserted against VITALCORE, are improper.

## C.   Plaintiffs Do Not Allege Actual Injury or Concrete Harm Proximately Caused by VitalCore Necessary to Confer Standing

The Complaint raises claims on behalf of three individually named Plaintiffs who are each inmates claiming to have unique medical needs which were improperly managed by correctional health providers between April of 2020 through the present date. The pleading alleges several specific encounters and dates of substandard treatment of these individually named Plaintiffs occurring under *other* Defendants' *prior* purview; but does not state *any* specific instances involving care rendered or omitted by VITALCORE. Most significantly, *none* of the three Plaintiffs allege *any* actual injury resulting from the alleged deficiencies in correctional healthcare nor do Plaintiffs claim any concrete or even intangible future harms proximately caused by VITALCORE's distinct role or involvement in their healthcare.

The irreducible constitutional minimum of standing contains three elements. The first element of standing, injury in act, "is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). The injury *must* be "concrete," meaning that it is real "'distinct and

palpable, as opposed to merely abstract.'" *Diaz v. FCA US L.L.C.*, 2022 U.S. Dist. LEXIS 158865 (D. Del. Sept. 2, 2022) (quoting *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)). Further, there must also be a demonstrable causal connection between the injury and the conduct complained of specific to the Defendants; meaning that the alleged injury must be fairly traceable to the challenged action of *each* Defendant. *Id.*

Under 42 U.S.C. § 1997e of the PLRA, a prisoner *must* suffer a physical injury to bring a claim. Compensatory damages under § 1983 are governed by general tort-law compensation theory. In other words, damages are available under §1983 for actions found to have been violative of constitutional rights proximately causing compensable injury, *not* speculative injuries or risk of future harms. *Allah v. Al-Hafeez*, 226 F.3d 247, 250-52 (3d Cir. 2000). Here, *none* of the named Plaintiffs have alleged *any* actual injury or medical condition resulting as a direct and proximate result of VITALCORE's conduct nor occurring under VITALCORE's purview on or after July 1, 2023. In fact, Plaintiff  GOVAN has expressly conceded that he has not yet been assessed by a specialist so *he is not aware* if he has any actual medical condition or injury. At best, the Plaintiffs have alleged that they each suffer from apprehension and generalized future risk to their health due to prolonged prior delays in obtaining medical treatment and specialist consultations, which is *not* sufficient to establish a concrete injury  necessary to confer standing.

The Complaint likewise fails to allege sufficient facts to support the objective component of an Eighth Amendment claim, which requires the Plaintiffs, each, to show that they were suffering from a serious medical condition or injury that was adversely impacted by each Defendant's actions. *See Estelle*, 429 U.S. at 106. A Plaintiff must allege that he has a serious medical need "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person could easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted). The claims raised by Plaintiffs in this case

fall short of the "obviously serious medical need" threshold. For example, GOVAN alleged that he has not yet received a recommended consultation so he is unable to ascertain if he even has a serious medical condition, essentially acknowledging that his claim is based upon his own held beliefs and speculation. Additionally, DESMOND claims that he has the common diagnosis of hypertension and was previously denied medications for 47 days, but does not state whether such delay resulted in any adverse health affect nor whether his health has been comprised or put at ongoing risk. However, "[e]ven on a motion to dismiss [the Court is] *not* required to credit mere speculation." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (emphasis added). Thus, the Complaint fails to state a viable §1983 claim against VITALCORE for Plaintiffs' stated claims and speculative injuries.

To avoid dismissal, a civil rights complaint *must* state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho*, 423 F.3d at 353. Accordingly, as here where Plaintiffs failed to plead any facts concerning an injury to any Plaintiff and the only specific injury recounted is to *other* inmates not a party to this action, Plaintiffs have failed to adequately state a claim. Plaintiffs' injuries, even assumed true, are nondescript and speculative and do not constitute a "serious" medical need as no physician is alleged to have diagnosed Plaintiffs with an illness or condition requiring treatment that was denied or withheld by VITALCORE.

## II.     PLAINTIFFS' STATE LAW CLAIMS AGAINST VITALCORE ALSO FAIL

### A.     State Law Claims for Discretionary Function are Barred by DTSCA

The Complaint names no specific VITALCORE employees or agents allegedly involved in the systemic failures and claims suffered by Plaintiffs. However, because *any* government-contracted medical staff working under the purview of VITALCORE would be considered an employee serving a 'public function,' the Court must first address whether the DSTCA precludes

such claims altogether. Under the DSTCA, public employees or contracted agents of a public agency are immune from suit when:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority; and (2) The act or omission complained of was done without gross or wanton negligence.

10 *Del. C.* § 4001. The Delaware Supreme Court has determined that wherever the tortious actions of individual defendants alleged in a complaint involve the exercise of discretion, claims based on those actions must be barred unless such actions could be demonstrated to have been performed in a grossly negligent or reckless manner. *Greenfield v. Miles*, 211 A.3d 1087, 1095 (Del. 2019). The Superior' Court's conclusion in similar matters has been consistent in that Defendants such as VITALCORE employing persons serving a public function and utilizing discretion in their services are immune from suit under the DTSC. *Id.*

To survive a dismissal where DSTCA immunity is asserted, the Plaintiffs must sufficiently allege either gross negligence or that Defendants' act was ministerial, not discretionary. *Castro v. New Castle Cnty. Voc. Tech. Sch. Dist.*, 2016 Del. C.P. LEXIS 77, at *3-4 (Aug. 23, 2016). Accordingly, immunity under § 4001 applies to discretionary acts or omissions whenever "done without gross or wanton negligence." 10 *Del. C.* § 4001. Further, Delaware prohibits infliction of cruel punishments and requires the construction of jails with proper regard for prisoner health. Del. Const. Art. I, § 11.

This District Court has previously dismissed a prisoner-plaintiff's nearly identical state law counts because it predicted that the Delaware state courts would decline to find a private right of action with respect to Del. Const. Art. I, § 11. In *Winter v. Richman,* this Court held that the prisoner-plaintiff had alternative remedies available to her under the Eighth Amendment, and she

had brought claims under that provision. 2020 U.S. Dist. LEXIS 222022, at *4-5 (D. Del. Nov. 25, 2020). In assessing similar alleged facts in *Winter*, this Court dismissed the action further holding that the prisoner "failed to address step two of the qualified immunity test: whether the constitutional right at issue was clearly established at the time of the purported misconduct[,]" because she did not to explain (or even address) how prison officials could be found to have violated a clearly established right. *Id.* at *10

Here, VITALCORE and its agents not specifically identified in the Complaint were, at all times, performing a public function carrying out health services on behalf of the DDOC. The act of administering health care is discretionary in nature and the Complaint neither alleges nor infers *any* conduct of VITALCORE suggesting intentional, gross, or wanton negligence. Therefore, all state law negligence claims in Count II of Plaintiffs' Complaint raised against VITALCORE or its agents are precluded under the DSTCA and should be dismissed.

## B.    Claims for Negligent Hiring are Insufficiently Plead

To the extent Plaintiffs are attempting to impose liability on VITALCORE for failure to adequately hire or train medical staff, they must demonstrate that *each* Defendants' "failure to train proximately caused [their] constitutional injury by identifying a particular failure in a training program that is 'closed related to the ultimate injury.'" *Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015) (internal quotations omitted). As here, where Plaintiffs have failed to plead *any* detailed allegation of traceable connexity between VITALCORE's nondescript conduct in hiring or training staff and Plaintiffs' alleged harms, the Complaint fails to adequately state a claim for negligent failure to train. *Adger*, 2020 U.S. Dist. LEXIS 52533.

An employer is liable for negligent hiring or supervision only if "the employer is negligent in giving improper or ambiguous orders or in failing to make proper regulations, or in the employment of improper persons involving risk of harm to others, or in the supervision of the

employee's activity." *Root v. Wilmington*, 2022 Del. Super. LEXIS 1384, at *7 (Del. Super. 2022) (internal quotations omitted). Under Delaware law, to have stated a claim for negligent hiring, Plaintiffs in this cause would need to expressly allege that VITALCORE was on actual notice of employees' specific tortious behavior at the time they was hired. Such facts could not be alleged in this case as the Complaint makes clear that other Defendants, and *not* VITALCORE, initially hired and trained the correctional health workforce which was retained for continuity of services upon VITALCORE's assumption of the DDOC contract on July 1, 2023.

Plaintiffs failed to allege VITALCORE had actual or constructive knowledge of any employees' prior tortious behavior at the time they were assumed into the care staff under VITALCORE's purview. The acts of CENTENE or other Defendants are not extended to VITALCORE where Plaintiffs fail to sufficiently allege actual knowledge, acquiescence, and involvement of VITALCORE as a parent (successor) company in retaining employees with prior tortious conduct. For this reason, Plaintiffs' negligent hiring claim should be dismissed.

Finally, Delaware courts have recognized that an employer is liable for negligent supervision *only* where the employer is demonstratively negligent "in the employment of improper persons involving substantial  risk of harm to others or in the supervision of the employee's activities." *Fanean v. Rite Aid Corp. of Del., Inc*., 984 A.2d 812, 826 (Del. Super. 2009) (internal quotations omitted). It is well-established that negligent supervision claims under Delaware law require showing of knowing and *direct* liability of the employer rather than its employee's negligence imputed through vicarious liability. *Id.* Direct negligence claims *require* that the employer be on notice. "The deciding factor is whether the employer had or should have had knowledge of the necessity to exercise control over its employee." *Id.* (quotations omitted).

To have sufficiently stated a claim for negligent hiring and retention against VITALCORE, the Complaint needed to allege that Defendant had distinct actual notice of the risk of tortious

behavior of correctional staff at the it assumed them as employees. The Complaint, which states only that VITALCORE had some access to correctional health records and systems during two-month transition period prior to July 1, 2022, fails to meet this burden of pleading actual knowledge. This Court cannot draw any inference from the instant Complaint that VITALCORE knew or should have known of a legitimate risk to health and safety posed by specific employees at the time of hiring and assumption of the contract. Therefore, the negligent hiring claims must be dismissed.

Delaware courts interpreting the DSTCA have held that the decision to hire is a discretionary decision. *See generally, Gutierrez v. Advanced Student Transp., Inc.*, 2015 Del. Super. LEXIS 352 (Del. Super. July 14, 2015). Thus, to sufficiently plead the inapplicability of the DSTCA for the state law negligent hiring and supervision claims in Count II, Plaintiffs were *required* to plead facts to support a contention that VITALCORE was *grossly* negligent in hiring existing correctional staff upon assuming contractual control. Plaintiffs have failed to allege any requisite facts to waive or absolve DSTCA immunities for state law negligent hiring claims.

## III.   PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES REQUIRED BEFORE FILING SUIT

The PLRA provides that *no* action may be brought with respect to prison conditions under 42 U.S.C. §1983 by a prisoner confined in any correctional facility *until* such administrative remedies available are *exhausted,* as required by 42 U.S.C. § 1997e(a). The Plaintiffs in this case, both in their individual and representative capacities, are incarcerated individuals who are indisputably subject to provision of PLRA.

The PLRA "exhaustion requirement" is indeed to serve as a deterrent for frivolous litigation by creating a mandatory prerequisite that: "[n]o action shall be brought with respect to prison conditions under section 1983, or any other Federal law, by a prisoner confined in any correctional facility *until* administrative remedies can be shown to be exhausted." *Miller v. Corr.*

*Officer Berrios*, 2023 U.S. Dist. LEXIS 84419, at *13 (D.N.J. May 15, 2023)(emphasis added). Codification of Section 8804(g) further requires exhaustion of administrative remedies available through the institutional grievance process before filing a complaint relating to a condition of correctional confinement. *See Alston v. Penn State Health Milton S. Hershey Med. Ctr.*, 2023 U.S. Dist. LEXIS 141774, at *9 (M.D. Pa. Aug. 14, 2023) ("a fundamental purpose of the exhaustion requirement is to provide a defendant with notice of a pending discrimination claim"). "PLRA exhaustion is *mandatory,* and inmates *must* exhaust all available remedies" before filing suit. *Miller*, 2023 U.S. Dist. LEXIS 84419, at *13 (emphasis added). Exhaustion "requires compliance with deadlines and other critical procedural rules[.]" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022)(internal quotations and citations omitted). Remedies need not be exhausted *only* when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," which has not been plead to have occurred here. *Ross v. Blake*, 578 U.S. 643, 643 (2016).

Plaintiffs have *not* alleged or even vaguely suggested that *any* pre-litigation administrative remedy processes were completed nor even attempted before filing suit. The Complaint neither contains any allegation inferred that Defendants somehow denied deprived Plaintiffs the ability to first raise their correctional health concerns in an administrative grievance process before filing suit. Therefore, Plaintiffs failed to plead sufficient facts to demonstrate that administrative remedies were exhausted or attempted and have not claimed any circumstances which may excuse why this requirement could not have been met before commencing suit.

## IV.   VITALCORE IS IMMUNE DESPITE HOW CLAIMS WERE PLEAD

### A.   Claims Against VitalCore are Barred by the Eleventh Amendment

Plaintiffs' claims against VITALCORE should be barred by the Eleventh Amendment as claims against a contracted arm of the state acting in official capacity are improper as a matter of

law. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001). Widely accepted law prescribes that claims against a prison official or agent in an individual or official capacity may be permitted *only* if Plaintiffs can plausibly allege that VITALCORE's *individual* conduct constituted deliberate indifference to each Plaintiff's serious medical needs resulting in actual harm.  Importantly, the test is not if in hindsight the action was wrongful, but whether it was "clearly forbidden" on dates alleged. *See Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001)(citation omitted).

To qualify for an exemption to immunity, it must be clear to the "reasonable correctional officer or agency" that the offending conduct was unlawful in the relevant situation. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009). Here, Plaintiffs have failed to alleged *any* facts even suggesting that VITALCORE committed acts that were unlawful or "clearly forbidden" during relevant times.  Because Plaintiffs have not and cannot establish any constitutional violation or illegal conduct fairly chargeable to Defendant VITALCORE, it should be entitled to derivative application of both sovereign and qualified immunity shields from liability for claims against , whether intended in an individual or official capacity.

The law is equally unambiguous that any claim against VITALCORE or its agents acting within a  capacity on behalf of the DDOC must be dismissed. *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)(reasoning that lawsuits against a government employee an official capacity represents "'another way of pleading an action against an entity of which the officer is an agent'"). 42 U.S.C. § 1983 imposes liability based on an official capacity claim, *only* if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Here, there have not been *any* allegations raised against VITALCORE of purposeful of deliberate indifference based upon its individual involvement in inmate health services as rendered to Plaintiffs, so immunity continues to apply.

B.      **VITALCORE is Entitled to Qualified Immunity Under Delaware Law**

In Delaware, public officials are exempt and immune from suit when performing official duties involving the exercise of discretion and when performed in good faith and without gross or wanton negligence. Pursuant to the DSTCA, VITALCORE and its agent would be entitled to immunity from tort claims resulting from their own negligent acts or omissions, *unless* such immunity was expressly waived by statute or is overcome by the Plaintiffs alleging facts which demonstrate either (i) a ministerial act; (ii) bad faith; or (iii) that the action was done with gross or wanton negligence. 10 *Del. C.* § 4001.

The DSTCA further "requires that plaintiff allege facts, *with particularity*, which would demonstrate gross or wanton negligence on behalf of the state." *Robinson v. Christiana Sch. Dist.*, 2022 Del. Super. LEXIS 804, at *20 (Del. Super. Sep. 21, 2022). Furthermore, "[p]ursuant to Superior Court Civil Rule 9(b), Plaintiffs must state the circumstances constituting gross negligence with particularity. Gross negligence requires a showing of a high level of negligence that constitutes an extreme departure from the ordinary standard of care." *Id.* (internal quotations omitted). Here, Plaintiffs have not alleged *any* specific involvement or action carried out by VITALCORE or its agents resulting in injury, have not plead *any* conduct plausibly attributable to VITALCORE constituting intentional or gross negligence under the heightened specificity requirements to overcome DSTCA immunity, and have not plead and any legislative act constituting a waiver of Defendants' immunity. Therefore, DTSCA immunity applies to Plaintiffs' instant claims without exception.

V.      **CLASS CERTIFICATION ELEMENTS ARE INSUFFICIENTLY PLEAD**

Plaintiffs seek relief in the Complaint requesting this Court to certify a class on the pleadings based upon the boilerplate and insufficiently plead class elements alleged. While the district court has broad discretion to grant or deny class certification, Defendant understands and

recognizes that certification of the proposed class is premature at this juncture based upon the class allegations plead. *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003).

The sufficiency of Plaintiffs' claims, Plaintiffs' standing to bring such claims, and Defendant's immunity against such claims have each been challenged. Therefore, if Defendant's dismissal arguments against one or more Plaintiffs is granted, their capacity to serve as representatives for prospective class claims would be similarly dismissed and certification would be improper. Even *if* Plaintiffs could show each of the unidentified proposed class members were Delaware inmates with shared needs for medical care, there are factual and facial differences that will pose potential conflicts. Class certification is both premature and readily overcome by the face of the nondescript allegations in the Complaint, which fail to satisfy multiple requisite elements required for certification. Though Plaintiffs have not yet filed a motion for class certification, because Plaintiffs have included a request for certification of the putative class in the prayer for relief, Defendant preserves its challenges and requests the Court permit leave to enter briefing and opposition before certification is considered.

**CONCLUSION**

For the foregoing reasons, VITALCORE respectfully requests that the Court grant its Motion to Dismiss.

| **LEWIS BRISBOIS BISGAARD & SMITH LLP** | **LEWIS BRISBOIS BISGAARD & SMITH LLP** |
|---|---|
| | */s/ Andrew A. Ralli* |
| Lindsay DeCarlo, Esq. (*pro hac vice*) | Andrew R. Ralli, Esq. (No. 6733) |
| 401 E. Jackson Street, Suite 3400 | 500 Delaware Avenue, Suite 700 |
| Tampa, FL 33602 | Wilmington, Delaware 19801 |
| (813) 739-1911 | (302) 295-9477 |
| Lindsay.DeCarlo@lewisbrisbois.com | Andrew.Ralli@lewisbrisbois.com |
| Dated: December 11, 2023 | *Attorneys for VitalCore Health Strategies* |