## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SAMUEL, ET AL., individually and on behalf of others similarly situated, *Plaintiffs,* v. CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER, MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH, BUREAU CHIEF MICHAEL RECORDS, *Defendants.* | Civil Action No. 1:23-CV-01134-RGA |

---

## DEFENDANT CENTURION OF DELAWARE, LLC'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE

---

**MARKS, O'NEILL, O'BRIEN DOHERTY & KELLY, P.C.**

/s/ Dawn C. Doherty
Dawn C. Doherty, Esquire (ID No. 3164)
Brett T. Norton, Esquire (ID No. 5559)
300 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 658-6538
Ddoherty@moodklaw.com
Bnorton@moodklaw.com

**BRADLEY, ARANT, BOULT, CUMMINGS, LLP**

/s/ Michael J. Bentley
Michael J. Bentley, Esquire (*Pro Hac Vice*)
Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
188 E. Capitol Street
Suite 1000, One Jackson Place
Jackson, Mississippi 39201
(601) 948-8000
Mbentley@bradley.com
Esaltaformaggio@bradley.com

*Attorneys for Defendants Centene Corporation and Centurion of Delaware, LLC*

<u>DATED</u>: December 11, 2023

## TABLE OF AUTHORITIES

TABLE OF AUTHORITIES.................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS................................................1

SUMMARY OF THE ARGUMENTS.................................................................3

STATEMENT OF FACTS.................................................................................4

ARGUMENT.................................................................................................9

I.      LEGAL STANDARD.............................................................................9

II.     PLAINTIFFS' PROPOSED CLASS IS DOMINATED BY FACT QUESTIONS AFFECTING INDIVIDUAL PROPOSED CLASS MEMBERS ...............................................................................10

       1.      Centurion's liability depends on the facts specific to each proposed class member's medical conditions...............................................................11

              A.      Harm, and any resulting damages, must be proven individually.................................................................17

       2.      There is no risk of inconsistent judgments or incompatible standards if inmates bring individual lawsuits...............................................20

CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
    822 F.3d 125 (3d Cir. 2016) ..................................................................... 5

*Banda v. Corzine*,
    2007 WL 3243917 .................................................................................. 18

*Berg v. County of Allegheny*,
    219 F.3d 261 (3d Cir. 2000) ................................................................. 12

*Bryan County, Okla. v. Brown*,
    520 U.S. 397 (1997) .............................................................................. 12

*Bureerong v. Uvawas*,
    922 F. Supp. 1450 (C.D. Cal. 1996) ....................................................... 9

*Cessna v. Corr. Med. Servs.*,
    794 F.Supp.2d 544 (D. Del. 2011) ........................................................ 13

*Colley v. Procter & Gamble Co.*,
    No. 1:16-CV-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ............. 19

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    543 F.3d 141 (3d Cir. 2008) ................................................................. 10

*Davis v. D.R. Horton Inc.*,
    2020 WL 1244848 (D. Del. 2020) ........................................................... 9

*Deaduff v. Washington*,
    330 F.R.D. 452 (E.D. Mich. 2019) ................................................... 15, 16

*Doe v. Claiborne Cnty*,
    103 F.3d 495 (6th Cir. 1996) ............................................................... 15

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ................................................................................ 12

*Farmer v. Brennan*,
    511 U.S. 825 (1994) .............................................................................. 12

*Forrest v. Parry*,
    930 F.3d 93 (3d Cir. 2019) ................................................................... 12

*Georgine v. Amchem Prodcs., Inc.*,
    83 F.3d 610 (3d Cir. 1996).................................................................. 10, 11

*Goodrich v. Clinton Cnty. Prison*,
    214 F. App'x 105 (3d Cir. 2007)............................................................ 13

*Hernandez v. City of San Jose*,
    2019 WL 4450930 (N.D. Cal. Sept. 17, 2019)...................................... 18

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*,
    372 F. 3d 572 (3d Cir. 2004)................................................................ 12

*Janail Brown, et al. v. Centurion of Delaware, LLC, et al.*,
    No. 1:22-cv-00923-GBW (D. Del.) ......................................................... 2

*Johnson v. GEICO Casualty Co.*,
    310 F.R.D. 246 (D. Del. 2015) .............................................................. 18

*Johnson v. Organo Gold Int'l, Inc.*,
    2016 WL 2771124 (D. Del. May 13, 2016)........................................... 10

*Jones v. BRG Sports, Inc.*,
    2019 WL 3554374 (N.D. Ill. Aug. 1, 2019)........................................... 19

*Kensu v. Michigan Dep't of Corr.*,
    2020 WL 1698662 (E.D. Mich. Apr. 8, 2020)....................................... 16

*Lang v. Cain*,
    2021 WL 3611107 (N.D. Miss. Aug. 13, 2021)....................................... 2

*In re LifeUSA Holding Inc.*,
    242 F.3d 136 (3d Cir. 2001)................................................................. 10

*McGowan v. Hulikc*,
    612 F.3d 636 (7th Cir. 2010) ............................................................... 15

*Mielo v. Steak 'n Shake Operations, Inc.*,
    897 F.3d 467, 487 (3d Cir. 2018).......................................................... 11

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) .............................................................................. 12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
    259 F. 3d 154 (3d Cir. 2001)................................................................ 11

*Pearson v. Prison Health Serv.*,
    850 F.3d 526 (3d Cir. 2017)................................................................. 12

*Phillips v. Sheriff of Cook County,*
    828 F.3d 541 (7th Cir. 2016) ...................................................................... 13, 14, 15

*Estate of Roman v. City of Newark,*
    914 F.3d 789 (3d Cir. 2019) .................................................................................. 12

*Sabata v. Nebraska Dep't of Corr. Servs.,*
    337 F.R.D. 215 (D. Neb. 2020) ............................................................................. 16

*Sepracor Inc. v. Dey, L.P.,*
    2008 WL 4377570 (D. Del. Sep. 26, 2008) ............................................................ 9

*Smith v. Sheriff of Cook Cnty.,*
    2008 WL 1995059 (N.D. Ill. May 6, 2008) ........................................................... 16

*Stearns v. Select Comfort Retail Corp.,*
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................................ 19

*Taha v. Cnty of Bucks,*
    862 F.3d 292 (3d Cir. 2017) .................................................................................. 18

*Talley v. Gen. Motors, LLC,*
    2021 WL 7209448 (D. Del. Nov. 26, 2021) .......................................................... 10

*Taylor v. Zatecky,*
    2022 WL 992023 (S.D. Ind. April 1, 2022) ............................................................ 2

*Trunzo v. Citi Mortg.,*
    2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) ...................................................... 10

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) .................................................................................. 9

*Wal-Mart Stores, Inc. v. Duke,*
    564 U.S. 338 (2011) ......................................................................................*passim*

*Woodall v. Wayne Cnty., Mich,*
    2021 WL 5298537 (6th Cir. Nov. 15, 2021) ........................................................ 15

*Yates v. Collier,*
    868 F.3d 354 (5th Cir. 2017) ................................................................................ 17

*Zieger v. Advance Am.,*
    2014 WL 7388365 (D. Del. Dec. 29, 2014) ............................................................ 9

**Statutes**

42 U.S.C. § 1983...................................................................................... 1, 4, 12, 18

**Other Authorities**

Fed. R. Civ. P. 12(f).......................................................................................... 9

Fed. R. Civ. P. 23 ....................................................................................*passim*

## NATURE AND STAGE OF THE PROCEEDINGS

In this putative class action, the named plaintiffs—three inmates in custody of the Delaware Department of Correction ("DDOC")—allege that Centurion and other defendants violated the Eighth Amendment's prohibition on "cruel and unusual punishments" by "pursuing policies and practices that had the foreseeable effect of delaying and denying health care" for serious medical conditions. D.I. 1 (Compl.) at ¶ 171; *see also id.* at ¶¶ 8-16. Plaintiffs demand declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees. *See* D.I. 1. at pp.33-34 ("Prayer for Relief"). Plaintiffs also seek to certify a class of all inmates "with serious medical needs whose diagnosis or treatment was delayed or denied during the period April 1, 2020 through present . . . ." *Id.* at ¶ 157; *see also id.* at ¶¶ 155-166.

Plaintiffs assert two constitutional claims against Centurion under 42 U.S.C. § 1983. First, they allege that Centurion, through a policy or custom, "subjected Plaintiffs and the proposed class to serious harm and injury from constitutionally delayed and denied health care." D.I. 1 (Compl.) at ¶ 168. Second, they claim that Centurion "acted with deliberate indifference to the rights of the Plaintiffs and the proposed class by hiring, failing to supervise and retaining persons without the requisite competency in correctional medical services, including persons who had repeatedly violated the rights of those in custody." *Id.* at ¶ 178. Plaintiffs seek compensatory damages, punitive damages, and attorneys' fees from Centurion, but not declaratory or injunctive relief. *Id.* at pp.33-34 ("Prayer for Relief").[1]

---

[1] As acknowledged in the complaint, Centurion is no longer DDOC's healthcare provider and, as a result, has no involvement in the current or future medical care provided to inmates in DDOC custody.

Plaintiffs seek to certify a class of inmates to pursue these damages claims against Centurion. *Id.* at ¶¶ 155-166. Plaintiffs define the class broadly to include all inmates "incarcerated in Delaware correctional facilities with serious medical needs whose diagnosis or treatment was delayed or denied during the period April 1, 2020 through present (hereinafter "time period."), except that the class excludes those whose medical needs were denied or delayed pursuant to the Pain Management Initiative." D.I. 1 (Compl.) at ¶ 156.[2]

Plaintiffs allege that this putative class could pursue at least eleven "common question[s] of law and fact," which Plaintiffs identify as:

(1)     "Whether Defendants operated a constitutionally inadequate health care system;"

(2)     "Whether Defendants unreasonably delayed medical care;"

(3)     "Whether Defendants unreasonably denied medical care;"

(4)     "Whether Defendants unreasonably delayed or failed to provide necessary medications;"

(5)     "Whether Defendants unreasonably delayed or denied specialist care;"

(6)     "Whether Defendants chronically understaffed the health care system despite knowing that such understaffing would result in the unconstitutional delay and denial of treatment for serious medical needs;"

---

D.I. 1 at ¶¶ 23-24. Accordingly, any claims against Centurion for declaratory or injunctive relief would be moot. *See Taylor v. Zatecky*, 2022 WL 992023, at *3 (S.D. Ind. April 1, 2022) (recognizing that injunctive relief claims against previous correctional healthcare provider became moot once new provider was hired); *Lang v. Cain*, 2021 WL 3611107 (N.D. Miss. Aug. 13, 2021) (dismissing equitable claims against Centurion as moot after its contract with corrections agency expired).

[2] The proposed carve out for inmates who claim injuries arising from the "Pain Management Initiative" is a reference to another putative class action filed against DDOC officials, Centurion, a pharmacy benefits provider, and other defendants. *See Janail Brown, et al. v. Centurion of Delaware, LLC, et al.*, No. 1:22-cv-00923-GBW (D. Del.).

(7)    "Whether Defendants failed to design and administer an effective system of redress for grievances relating to the delay or denial of medical care;"

(8)    "Whether Defendants withheld or denied medical care as a form of discipline;"

(9)    "Whether Defendants' deliberate indifference to those owed a duty of care violated the Eighth and Fourteenth Amendments;"

(10)    "Whether Defendants' deliberate indifference to those owed a duty of care arose form negligent hiring, staffing and supervision; and"

(11)    "Whether Defendants' deliberate indifference to those owed a duty of care damaged the class."

*Id.* at ¶ 161.

Centurion now moves to strike the class-action allegations against it.

## SUMMARY OF THE ARGUMENTS

Plaintiffs' class-action claims against Centurion, a former healthcare provider for DDOC, are for damages only, which distinguishes them from the injunctive-relief claims against other defendants and makes them uniquely suitable for striking. The individualized nature of each inmate's medical history, conditions, and treatment will predominate in the claims for damages against Centurion. Each inmate-plaintiff suffers from a unique medical condition that required particular, patient-specific treatment, which allegedly was inadequately administered thereby causing pain and harm to that individual. That harm cannot be quantified in mass proceedings; individual damages trials for all putative class members will be required.

Such a generalized approach to class action is improper under both the Prison Litigation Reform Act and the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338 (2011). The answer to the underlying question—whether, in violation of their constitutional rights, the Defendants unreasonably denied or delayed medical care *and caused damage*—can only be answered by considering each putative class member's individualized medical history and treatment. Plaintiffs' class allegations should be stricken for two reasons.

1.    No class can be certified under Rule 23(b)(1) and (b)(3) because establishing Section 1983 liability and assessing damages would require the Court to address the individualized nature of each class member's medical needs and medical treatment decisions. These claims of inadequate care are dependent on complex medical histories and plans of care unique to each individual and should be resolved based on recommended treatment needs for each. Accordingly, individual facts and legal questions would predominate in this matter, precluding class certification under Rule 23(b)(3). For the same reason, there is no possibility Centurion would be faced with inconsistent or conflicting orders if the proposed class members brought their claims as individual plaintiffs and so no class can be maintained under Rule 23(b)(1).

2.    Class claims for declaratory and injunctive against Centurion should be stricken under Rule 23(b)(2) because Centurion is no longer the healthcare provider for DDOC and therefore no injunctive relief can be obtained against it.

## STATEMENT OF FACTS

The three named plaintiffs complain that their particular medical conditions have not been adequately treated. The complaint also alleges that other, unidentified inmates have medical conditions that were not properly treated.[3]

Centurion, a private healthcare company, provided healthcare to inmates in DDOC custody, from April 1, 2020 to June 30, 2023, pursuant to a contract with DDOC. *See* D.I. 1 at ¶¶ 23. Another defendant in this lawsuit, VitalCore Health Strategies, is DDOC's current contract healthcare provider and has provided healthcare services to inmates in DDOC custody since July 1, 2023. *Id.* at ¶ 24.

### 1. Plaintiff Samuel alleges that complaints of rectal bleeding were ignored and he was denied an appointment with a specialist.

Plaintiff Samuel alleges he experienced "untreated" rectal bleeding and now suffers from prostate and rectal cancer. D.I. 1 at ¶¶ 26-39. Samuel claims that his rectal bleeding began in November 2022 and that—despite being evaluated by medical providers multiple times in the next few months—he was not provided proper treatment. *See id.* In January 2023, a physician's assistant diagnosed Samuel with diverticulosis and prescribed him fiber tablets and Colace. *Id.* at ¶ 32.

In February 2023, Samuel was taken to the prison infirmary to evaluate his claims of rectal bleeding and then transferred to an offsite hospital for further evaluation. *Id.* at ¶¶ 33-35. Samuel claims that the hospital physician referred him to a specialist for surgery, *id.* at ¶ 35, but "nothing was done" when he returned to

---

[3] Plaintiffs' factual allegations are taken from the complaint and accepted as true for purposes of this motion only. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). Centurion does not admit any of the factual allegations recited in this motion.

his DDOC facility, *id.* at ¶¶ 36-37. According to Samuel, he ultimately received a bone scan and colonoscopy, which revealed terminal prostate and rectal cancer, but was told by DDOC's current contract healthcare provider, VitalCore Health Strategies ("VitalCore"), that no treatment would be provided. *Id.* at ¶¶ 38-39.

### 2. Plaintiff Govan believes he may have cancer, but claims that referrals to a urologist have not been scheduled.

Plaintiff Govan fears that he may have cancer and alleges that, although he was referred to a specialist by medical staff in May 2023, he has not yet been seen by a specialist. *Id.* at ¶¶ 40-48. According to Govan, in September 2022, he began experiencing "urinary hesitation" and other symptoms that he associates with cancer. *Id.* at ¶ 41. Prison medical staff evaluated Govan in September 2022 and tested his prostate-specific antigen ("PSA") levels, which were elevated but stable. *Id.* at ¶ 42. Govan was prescribed Flomax, which provided some relief, and scheduled for a follow-up PSA test the next month. *Id.* at ¶ 42.

Citing referral orders in his medical records and his grievance filings with DDOC, Govan claims that a urologist should have assessed him for prostate cancer. *Id.* at ¶¶ 44-48. To date, however, Govan has not seen a urologist. *Id.*

### 3. Plaintiff Desmond alleges he should be provided a colonoscopy and a dermatology consult.

Plaintiff Desmond has high blood pressure, heart disease, high cholesterol, and kidney disease and is enrolled in a Chronic Care medical program to ensure regular monitoring and treatment of these chronic conditions. *Id.* at ¶¶49-53. Even so, Desmond claims that he is not seen by a cardiologist "on a regular basis" and alleges that, at one point during his incarceration, his blood pressure medication was

withheld for 47 days as a form of discipline. *Id.* at ¶¶ 49-52. Desmond also claims that, despite a family history of colon cancer, he has been prescribed medication that puts him at higher risk of skin cancer, but has not been seen by a dermatologist or provided a colonoscopy. *Id.* at ¶53.

### 4. The complaint alleges that the unnamed class members suffer from a variety of inadequately treated medical conditions.

In addition to the Named Plaintiffs' claims, the complaint includes "examples" of other unidentified inmates—members of the putative class—who were allegedly refused care or experienced treatment delays for their individual medical conditions. *See id.* at ¶¶ 55-82. The example medical conditions range from asthma to hip pain to post-traumatic stress disorder, including:

- inguinal hernia, post-surgical follow-up visit to the eye surgeon and related medication complaints, *id.* at ¶ 55,

- unexplained knee pain, *id.* at ¶ 56,

- delay and denial of a urology consultation, *id.* at ¶ 57,

- ear pain and loss of hearing, *id.* at ¶ 58,

- brain damage, seizures, and heart issues, *id.* at ¶ 59,

- injuries following a sexual assault, *id.* at ¶ 60,

- gastrointestinal problems, *id.* at ¶ 61,

- PTSD and depressed personality disorder, *id.* at ¶ 62,

- oral surgery needed, but not provided due to alleged clerical error in transfer papers to outside hospital, *id.* at ¶ 63,

- mental illness and opioid addiction, *id.* at ¶ 64,

- hip pain, *id.* at ¶ 65,

- prostate cancer, spinal stenosis, and herniated discs, *id.* at ¶ 66,

- stroke and heart attack, *id.* at ¶ 67,

- fluid around heart and bladder, *id.* at ¶ 68,

- infection, *id.* at ¶ 69,

- Hepatis C and cardiac medication not provided because "he was not going to be detained for long," *id.* at ¶ 70

- Bi-polar schizophrenia and attention deficit hyperactivity disorder medication withheld as form of discipline, *id.* at ¶ 71,

- penis blockage, *id.* at ¶ 72,

- prostate issues, *id.* at ¶ 73,

- hernias, *id.* at ¶ 74,

- mental illness with four diagnosed conditions, *id.* at ¶ 75,

- back and leg pain, *id.* at ¶ 76,

- threatened disciplinary action for use of sick call process, *id.* at ¶ 77,

- asthma, *id.* at ¶78,

- kidney disease, *id.* at ¶ 79,

- foot infection, *id.* at ¶ 80,

- Failure to provide medication-assisted treatment for opioid addiction and refusal to allow sexual abuse victim to shower privately as treatment for post-traumatic stress disorder, *id.* at ¶ 81, and

- nerve damage, *id.* at ¶ 82.

These unnamed proposed class members are housed across three DDOC facilities—James T. Vaughn Correctional Center, *id.* at ¶¶ 55, 58, 63, 65, 73, as well

as other DDOC facilities Howard R. Young Correctional Center, *id.* at ¶ 56, and Sussex Correctional Institution, *id.* at ¶ 57, 72, 78.

## ARGUMENT

## I.    LEGAL STANDARD

Centurion's motion to strike is governed by Federal Rules of Civil Procedure 12(f) and 23. Under Rule 23, courts presiding in putative class actions may issue orders "requir[ing] that the pleadings be amended to eliminate" class allegations. Fed. R. Civ. P. 23(d)(1)(D); *Davis v. D.R. Horton Inc.*, 2020 WL 1244848, at *10 (D. Del. 2020). Courts should consider class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). A court need not wait until a plaintiff moves to certify a class before ruling on the certification question, and discovery need not be had before class allegations are struck. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009); *Zieger v. Advance Am.*, 2014 WL 7388365, at *3 (D. Del. Dec. 29, 2014).

Under Rule 12(f), a court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Davis v. D.R. Horton Inc.*, 2020 WL 1244848, at *10-11 (D. Del. 2020). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Sepracor Inc. v. Dey, L.P.*, 2008 WL 4377570, at *2 (D. Del. Sep. 26, 2008). "The essential function of a Rule 12(f) motion is to avoid expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

Applying these rules, a court should strike class allegations when "no amount of discovery will demonstrate that the class can be maintained." *Trunzo v. Citi Mortg.*, 2014 WL 1317577, at *5 (W.D. Pa. Mar. 31, 2014) (striking class allegations and collecting decisions granting pre-discovery motions to strike under Rule 23(d)(1)(D)); *Talley v. Gen. Motors, LLC*, 2021 WL 7209448, at *9 (D. Del. Nov. 26, 2021); *Johnson v. Organo Gold Int'l, Inc.*, 2016 WL 2771124, at *2 (D. Del. May 13, 2016) ("The Court may strike class allegations before discovery where the complaint itself 'demonstrates that the requirements for maintaining a class action cannot be met.'").

## II. PLAINTIFFS' PROPOSED CLASS IS DOMINATED BY FACT QUESTIONS AFFECTING INDIVIDUAL PROPOSED CLASS MEMBERS

To maintain a class, Plaintiffs must show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). When a class is sought under Rule 23(b)(3), like here, Rule 23(a)'s commonality requirement "'is subsumed by the predominance requirement'" of Rule 23(b)(3). *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Georgine v. Amchem Prodcs., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996)). "The predominance requirement 'tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement.'" *Id.* (quoting *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001)). The predominance requirement is "demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 624. Ultimately, "[w]hat matters to class certification is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the

litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted).

It is clear from the face of the Complaint that individual issues will predominate over any question common to the putative class. That is so for two reasons—each of which precludes certification. *First*, courts have long recognized that causation determinations in cases like this requires individualized inquiries are ill suited for class-wide resolution. *Second*, just as the cause of any harm must be proven individually, so too must damages. The damages to which each class member would be entitled if liability were proven cannot be determined through a formulaic calculation, so damages cannot be resolved on a class-wide basis.

## 1. Centurion's liability depends on the facts specific to each proposed class member's medical conditions and treatment.

"A complaint's mere recital of questions that happen to be shared by class members is 'not sufficient to obtain class certification.'" *Mielo v. Steak 'n Shake Operations, Inc.,* 897 F.3d 467, 487 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 349). Instead, "'[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* (quoting *Dukes*, 564 U.S. at 349–50). The predominance requirement cannot be met if an individual's "claim raises radically different factual and legal issues from those of other plaintiffs." *Amchem*, 83 F.3d at 618. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (citing *Newton*, 259 F.3d at 172).

So, to prevail on Plaintiffs' claims against Centurion, Plaintiffs must show that Centurion's policies or practices caused the inadequate medical treatment and

injuries alleged by all putative class members. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).[4]

Here, Plaintiffs allege that Centurion had "policies and practices that had the foreseeable effect of delaying and denying health care," D.I. 1 (Compl.) at ¶ 171, and acted with "deliberate indifference to the rights of the [putative class] by hiring, failing to supervise, and retaining persons without the requisite competency," *id.* at ¶ 178. To set forth a cognizable claim of deliberate indifference, an inmate must allege: (1) a serious medical need; and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). There are two distinct subcomponents of a deliberate indifference claim—the practitioner must have provided "inadequate medical care," and he must have done so "with the requisite state of mind." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

To prevail on their claims against Centurion, Plaintiffs must show a delay and denial of healthcare that amounts to deliberate indifference to a serious medical need. This can only be resolved by looking at the alleged conduct of individual medical

---

[4] Section 1983 does not impose vicarious or *respondeat superior* liability on Centurion for the acts of its providers. *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F. 3d 572, 580 (3d Cir. 2004) (citing *Monell*, 436 U.S. at 691-92). Plaintiffs must identify a policy or practice imposed by *Centurion itself*; it is not sufficient to allege that Centurion followed a DDOC policy or practice. Plaintiffs must prove that *Centurion's* "deliberate conduct . . . was the 'moving force' behind the injury alleged.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

providers compared to the specific medical needs of each Plaintiff and proposed class member. If Plaintiffs cannot prove the individual providers engaged in conduct amounting to deliberate indifference to their serious medical needs, there can be no finding of a custom or policy attributable to Centurion. *Cessna v. Corr. Med. Servs.,* 794 F.Supp.2d 544, 550 (D. Del. 2011) (citing *Goodrich v. Clinton Cnty. Prison,* 214 F. App'x 105, 113 (3d Cir. 2007) (policymakers not liable in prison medical staffs alleged deliberate indifference where, given there was no underlying violation of prisoner's rights, policymakers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights).

Like the employment discrimination claims in *Dukes,* resolving Plaintiffs' deliberate indifference claims will require examination of each inmate's medical conditions, each medical provider's course of conduct in relation to each class member, and—if liability is established—a damages determination unique to each inmate's injury. As in *Dukes,* Plaintiffs seek to combine hundreds of individual damages claims into a class action that challenges to the subjective reasonableness of untold number of patient-specific treatment decisions. Such claims are not suited for the class-action vehicle because there is no "glue" holding the individual claims together—no "common question" that, if answered by this Court, would permit the Court to address all of the inmates' claims with a single stroke remedy. *See Dukes,* 564 U.S. at 352.

The Seventh Circuit's application of *Dukes* in a proposed prisoner class action is particularly instructive. In *Phillips v. Sheriff of Cook County,* 828 F.3d 541 (7th Cir. 2016), the prisoner-plaintiffs advanced deliberate indifference claims involving

untimely and inadequate medical treatment and based on "systemic deficiencies at the prison[.]" *Id*. at 554-58. The district court initially certified a prisoner class, but later *decertified* the class action due to lack of common questions. *Id*. The Seventh Circuit affirmed, explaining that to maintain certification the "prospective class must articulate at least one common question that will actually advance all of the class members' claims." *Id*. at 550. Without a universal common question, the plaintiffs' have asserted only "claims of isolated instances of indifference to a particular inmate's medical needs"—which claims cannot be tried as a class. *Id*. at 554.

As the Seventh Circuit recognized, a commonality determination in an Eighth Amendment conditions-of-confinement class action "requires a precise understanding of the nature of the plaintiffs' claims." *Id*. at 552. With respect to medical care, the court explained that the plaintiffs' allegations of inadequate and untimely medical treatment could "only be answered by looking at the unique facts of each detainee's case." *Id*. at 556. The "contextual nature" of the legal analysis, said the court, prevented class treatment. *Id*. With respect to deliberate indifference arising out of "systemic deficiencies," the court similarly explained that the facts of each prisoner's circumstance were too context specific. *Id*. at 556-58. The court reasoned, in reality, the prisoners had brought "a series of individual claims of deliberate indifference." *Id*. at 558. As to the delay claims, *Phillips* explained that "in assessing deliberate indifference claims, a delay in medical treatment 'is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'" *Id*. at 555 (7th Cir.

2016) (quoting *McGowan v. Hulikc*, 612 F.3d 636, 640 (7th Cir. 2010). So, "the constitutionality of a wait for medical treatment will depend on a variety of individual circumstances" that "can only be answered by looking at the unique facts of each [inmate]." *Id.* at 555-56 (citation omitted).

The Sixth Circuit has also rejected prisoner class-action claims that do not present a true common question that predominates over individualized claims and factual determinations. In *Woodall v. Wayne Cnty., Mich*, the Sixth Circuit held that plaintiffs failed to show that common issues predominate because, under plaintiffs' *Monell* "inaction theory"—similar to the one plead here—the court would be required to make individual causation determinations. 2021 WL 5298537, at *6 (6th Cir. Nov. 15, 2021). As the *Woodall* Court explained, "[a] municipality could be found to have a policy of failing to act in the face of repeated constitutional violations. But it could also be found to have acted reasonably, or even negligently, in a particular case, thus precluding liability[,]" requiring individual causation determinations. *Id.* (citing *Doe v. Claiborne Cnty,* 103 F.3d 495, 508 (6th Cir. 1996)).

Federal district courts have also recognized the inherent difficulty finding a common question in prisoner class-actions alleging constitutionally inadequate care. In rejecting a prisoner dental healthcare class, a federal district court noted that the Supreme Court's decision in *Dukes* and the subjectivity of the deliberate indifference standard forecloses such class actions unless a policy or practice exposes "nearly every member—no matter their dental health—to similar risk of harm." *Deaduff v.*

*Washington*, 330 F.R.D. 452, 466 (E.D. Mich. 2019). The court explained the problems associated with such prisoner classes as follows:

> First, setting aside the risk and the harm, the two prisoners might be affected by two different prison officials (or two different sets of officials) such that one official's state of mind says little about the other's. *Cf. Wal-Mart*, 564 U.S. at 355-56 ("In [a company using a system of discretion], demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's."). Prisoner A and B's Eighth Amendment claims might also differ in the amount of risk: there might be less than a 1% chance that Prisoner A will experience serious harm but a 20% chance that Prisoner B will experience serious harm. Perhaps the former is not "substantial" in the Eighth Amendment sense but the latter is. Third, even if Prisoner A and B are at similar risk of harm and from the same prison officials, Prisoner A's harm (if it arises) might be very minor while Prisoner B's (if it arises) might be "serious" in the Eighth Amendment sense.

*Id.* at 464; *see also Sabata v. Nebraska Dep't of Corr. Servs.*, 337 F.R.D. 215, 265-66 (D. Neb. 2020) (rejecting proposed class that did "not focus on a single or even a few health conditions or policies" and "consist[ed] of inmates in a variety of institutions with a wide range of health issues and medical needs" with "little in common but their status as NDCS inmates and this lawsuit"); *Kensu v. Michigan Dep't of Corr.*, 2020 WL 1698662, at *12 (E.D. Mich. Apr. 8, 2020) (rejecting class because "the same proof cannot be used to determine the sufficiency of any particular prisoners' diet, or whether any of the prisoners' health, has been adversely affected from the standard fare diet in violation of the Eighth Amendment" and "nature of the injuries allegedly suffered by each prisoner in the class and subclass, relative to the purported deficiencies in the standard fare diet, would require individualized inquiries"); *Smith v. Sheriff of Cook Cnty.*, 2008 WL 1995059, at *2 (N.D. Ill. May 6, 2008) (rejecting class in alleging unconstitutional dental policy because "a plaintiff must first show

that he had a condition that required dental care; second, that he did not receive adequate dental care; third, that he suffered significant injury or harm; and fourth that the injury or harm was causally related to the inadequate care. Each plaintiff's case would necessarily be different.").

These cases confirm that prisoner class claims must rest on a common contention that, if proven, is susceptible of a single-stroke remedy providing relief to every class member. *See Yates v. Collier*, 868 F.3d 354, 367 (5th Cir. 2017) (citing *Wal-Mart*, 564 U.S. at 360). In *Yates*, for example, a class of prisoners complaining of exposure to dangerously excessive heat proposed that the Court issue an injunction requiring that housing unit temperatures be maintained at 88 degrees or lower, a single and specific remedy that would address every class member's complaint and could be easily implemented and enforced by the district court. 868 F.3d at 367-68.

Here, Plaintiffs have not presented any common questions that predominate over individual medical conditions and claims, as in *Yates*. Instead, they seek to certify the type of generalized "inadequate care" or "delayed treatment" class that courts have rejected under *Dukes* because they will require individualized inquiries into each inmate's medical conditions and history, their medical provider's treatment rationale, and the inmate's alleged injuries from a delay or denial of treatment. Plaintiffs' class claims against Centurion should be stricken.

### A. Harm, and any resulting damages, must be proven individually.

Further complicating the Court's task, Plaintiffs seek to certify a damages class against Centurion. D.I. 1 at pp.33-34 ("Prayer for Relief"). The predominance

requirement must be evaluated as to damages, too "because the efficiencies of the class action mechanism would be negated if questions of individual damage calculations . . . overwhelm questions common to the class." *Taha v. Cnty of Bucks*, 862 F.3d 292, 308-09 (3d Cir. 2017) (internal quotations and citation omitted); *see also Johnson v. GEICO Casualty Co.*, 310 F.R.D. 246, 255 (D. Del. 2015) ("Common liability issues do not predominate over individualized damages issues and therefore Rule 23(b)(3)'s predominance requirement is not met as to Plaintiffs' claims") (collecting cases where individualized damages inquiries predominated); *Hernandez v. City of San Jose*, 2019 WL 4450930, at *16-17 (N.D. Cal. Sept. 17, 2019) (finding "questions of individual damage calculations will inevitably overwhelm questions common to the class" in proposed Section 1983 class action); *Banda v. Corzine*, 2007 WL 3243917, at *18-19 (finding predominance requirement not met because, "the resolution of the bulk of the matters raised by each Plaintiff of the putative Class/Sub-Class would require its own mini-trial at both the liability and damages stage.").

Here, Plaintiffs seek compensatory and punitive damages that are necessarily individualized and cannot be determined on a class-wide basis. Plaintiffs' complaint underscores the difficulties that a class trial in this matter would present: A parade of individual stories, examples, and evidence about how individuals were harmed by the specific medical treatment they received or failed to receive. To take an obvious example, if Plaintiff Samuel could substantiate his claim that a Centurion policy or practice delayed his cancer diagnosis to a point that he now has terminal cancer, *see* D.I. 1 at ¶¶ 26-39, his damages claims and proof—including physical harms, pain and

suffering, and future medical care if he is released under a sentence reduction (as requested by plaintiffs)—would be vastly different from an inmate alleging knee pain, *id.* at ¶ 56, mental illness and opioid addiction, *id.* at ¶ 64, hernias, *id.* at ¶ 74, asthma, *id.* at ¶78, or a foot infection, *id.* at ¶ 80.

There is no formulaic method or objective standard for calculating damages for these varied conditions on a class-wide basis. This presents an insurmountable hurdle to satisfying the predominance requirement. *See, e.g. Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *4 (S.D. Ohio Oct. 4, 2016) ("Plaintiffs' claims seeking money damages for personal injury . . . causes of action are by their nature fact intensive. . . . A multitude of individual factual and legal issues preclude findings of commonality, predominance, cohesiveness, typicality, and superiority."); *Jones v. BRG Sports, Inc.*,  2019 WL 3554374, at *5 (N.D. Ill. Aug. 1, 2019) (striking class allegations, noting the "tremendously complex" task of determining money damages, given, *inter alia*, variation amongst the types of injuries."); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1155 (N.D. Cal. 2010) ("personal injury claims are not appropriate for class treatment"). Given this undeniable variation among the Plaintiffs and putative class, no amount of discovery will support a finding of either commonality or predominance.

The predominance of individualized questions raised by Plaintiffs' complaint cannot be reconciled with *Dukes* and should be stricken.

## 2. There is no risk of inconsistent judgments or incompatible standards if inmates bring individual lawsuits.

A class may only be maintained under Rule 23(b)(1) if separate lawsuits by each class member would create a risk of imposing incompatible standards of conduct on the party opposing the class, through inconsistent adjudications of the same facts and law. Fed. R. Civ. P. 23(b)(1)(A). Plaintiffs cannot maintain a class under Rule 23(b)(1) because there is no risk of inconsistent judgments if inmates in DDOC custody bring individual lawsuits against Centurion. First, the standard by which to gauge the Plaintiffs' and proposed class members' claims—whether their Eighth and Fourteenth Amendment rights were violated through deliberate indifference to their serious medical need—is well-established. Second, there is no risk of inconsistent judgments because, as noted above, resolution of each inmate's claim for deliberate indifference must be resolved by reference to their specific medical conditions and their providers' treatment decisions.

## CONCLUSION

The Court should strike the class-action claims against Centurion because Plaintiffs cannot maintain a damages class of hundreds of inmates, all claiming different medical conditions, subject to different courses of treatment, and resulting in individualized alleged harms.

Respectfully Submitted,

**MARKS, O'NEILL, O'BRIEN**
**DOHERTY & KELLY, P.C.**

*/s/  Dawn C. Doherty*
Dawn C. Doherty, Esquire (ID No. 3164)
Brett T. Norton, Esquire (ID No. 5559)
300 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 658-6538
Ddoherty@moodklaw.com
Bnorton@moodklaw.com

*Attorneys for Defendants Centene Corporation*
*and Centurion of Delaware, LLC*

**BRADLEY, ARANT, BOULT,**
**CUMMINGS, LLP**

/s/ *Michael J. Bentley*
Michael J. Bentley, Esquire (*Pro Hac Vice*)
Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
188 E. Capitol Street
Suite 1000, One Jackson Place
Jackson, Mississippi 39201
(601) 948-8000
Mbentley@bradley.com
Esaltaformaggio@bradley.com

DATED: December 11, 2023