## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SAMUEL, ET AL., individually and on behalf of others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER, MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH, BUREAU CHIEF MICHAEL RECORDS, <br><br> *Defendants.* | Civil Action No. 1:23-CV-01143- RGA |

## DEFENDANT CENTURION OF DELAWARE, LLC'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

**MARKS, O'NEILL, O'BRIEN DOHERTY & KELLY, P.C.**

*/s/ Dawn C. Doherty*
Dawn C. Doherty, Esquire (ID No. 3164)
Brett T. Norton, Esquire (ID No. 5559)
300 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 658-6538
Ddoherty@moodklaw.com
Bnorton@moodklaw.com

**BRADLEY, ARANT, BOULT, CUMMINGS, LLP**

*/s/ Michael J. Bentley*
Michael J. Bentley, Esquire (*Pro Hac Vice*)
Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
188 E. Capitol Street
Suite 1000, One Jackson Place
Jackson, Mississippi 39201
(601) 948-8000
Mbentley@bradley.com
Esaltaformaggio@bradley.com

*Attorneys for Defendants Centene Corporation and Centurion of Delaware, LLC*

DATED: December 11, 2023

{M0780538.1}

**TABLE OF AUTHORITIES**

TABLE OF AUTHORITIES..............................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS..............................................1

SUMMARY OF THE ARGUMENTS...................................................................1

STATEMENT OF FACTS.................................................................................3

ARGUMENT....................................................................................................7

I.      LEGAL STANDARD.............................................................................7

II.     PLAINTIFFS FAIL TO STATE A CLAIM THAT CENTURION HAD AN
        UNCONSTITUTIONAL POLICY OR PRACTICE THAT AMOUNTED TO
        DELIBERATE INDIFFERENCE IN THE PROVISION OF
        MEDICAL CARE..................................................................................8

        1.      Plaintiffs fail to plausibly allege the existence of a Centurion policy
                or practice of denying medical care................................................9

        2.      Plaintiffs cannot maintain their Section 1983 claim based on the
                alleged failure to investigate medical grievances............................12

III.    PLAINTIFFS' CLAIMS OF DELIBERATE INDIFFERENCE RELATING TO
        TRAINING, SUPERVISION, AND HIRING IS NOT
        ADEQUATELY PLEAD...........................................................................13

CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Rumsfeld,*
  450 F. Supp. 2d 440 (D. Del. 2006) ......................................................................... 4

*In re Asbestos Prod. Liab. Litig. (No. VI),*
  822 F.3d 125 (3d Cir. 2016) ..................................................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 8, 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................. 8

*Berg v. County of Allegheny,*
  219 F.3d 261 (3d Cir. 2000) ........................................................................ 10, 12, 14

*Brown v. Muhlenberg Twp.,*
  269 F.3d 205 (3d Cir. 2001) ................................................................................... 15

*Bryan County, Okla. v. Brown,*
  520 U.S. 397 (1997) .......................................................................................... 10, 15

*Caterbone v. Lancaster County Prison,*
  2019 WL 2774162 (E.D. Pa. July 2, 2020) *aff'd*, 811 F. App'x 721 (3d
  Cir. 2020) ............................................................................................................... 12

*Connelly v. Lane Const. Corp.,*
  809 F.3d 780 (3d Cir. 2016) ..................................................................................... 8

*Connick v. Thompson,*
  563 U.S. 51 (2011) ........................................................................................... 15, 16

*Crump v. Corr. Med. Servs.,*
  647 F. Supp. 2d 375 (D. Del. 2009) ....................................................................... 11

*Dorsett v. Kramer,*
  2016 WL 922073 (D. Del. Mar. 10, 2016) ......................................................... 8, 16

*Forrest v. Parry,*
  930 F.3d 93 (3d Cir. 2019) ....................................................................................... 9

*Hurley v. Connections Cmty. Support Programs, Inc.,*
  2021 WL 677943 (D. Del. Feb. 22, 2021) .............................................................. 12

*Issa v. Del. State Univ.*,
2014 WL 3974535 (D. Del. Aug. 11, 2014)............................................................ 12

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*,
372 F. 3d 572 (3d Cir. 2004) ................................................................................. 9

*Johnson v. Karnes*,
398 F.3d 868 (6th Cir. 2005) ................................................................................ 10

*Estate of Kamal by and through Kamal v. Twp. of Irvington*,
790 F. App'x 395 (3d Cir. 2019)........................................................................... 16

*Kelley v. Fed. Bureau of Investigation*,
67 F. Supp. 3d 240 (D.D.C. 2014) ........................................................................ 8

*Lang v. Cain*,
2021 WL 3611107 (N.D. Miss. Aug. 13, 2021)...................................................... 2

*Li Min v. Morris*,
445 F. App'x 574 (3d Cir. 2011)..................................................................... 14, 15

*Lucas v. Officer Ham*,
2021 WL 780746 (D. Del. Mar. 1, 2021) ............................................................. 12

*In re Lyondell Chem. Co.*,
491 B.R. 41 (Bankr. S.D.N.Y. 2013)...................................................................... 8

*Martin v. Sec'y of Corr.*,
2018 WL 2465180 (M.D. Pa. June 1, 2018) ........................................................ 12

*Miller v. Correctional Med. Sys., Inc.*,
802 F. Supp. 1126 (D. Del. 1992) .......................................................................... 9

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) .............................................................................................. 9

*Morris v. Cooper*,
2020 WL 4287369 (D. Del. July 27, 2020) .......................................................... 12

*Natale v. Camden Cty. Corr. Facility*,
318 F.3d 575 (3d Cir. 2003)................................................................................... 9

*In re Rockefeller Center Props., Inc. Securities Liti.*,
184 F.3d 280 (3d Cir. 1999)................................................................................... 4

*Estate of Roman v. City of Newark*,
914 F.3d 789 (3d Cir. 2019)................................................................................... 9

*Sample v. Diecks,*
    885 F.2d 1099 (3d Cir. 1989) ................................................................ 9

*Santiago v. Warminster Twp.,*
    629 F.3d 121 (3d Cir. 2010) ................................................................. 8

*Sims v. Wexford,*
    635 F. App'x 16 (3d Cir. 2015) .......................................................... 11

*Small v. Camden Cnty.,*
    728 F.3d 265 (3d Cir. 2013) ................................................................. 1

*Taylor v. Zatecky,*
    2022 WL 992023 (S.D. Ind. April 1, 2022) ...................................... 2

*Williams v. Del. Cnty. Bd. of Prison Inspectors,*
    844 F. App'x 469 (3d Cir. 2021) ........................................................ 2

*Williams v. Guard Bryant Fields,*
    535 F. App'x 205 (3d Cir. 2013) ................................................... 10, 14

*Wood v. Williams,*
    568 F. App'x 100 (3d Cir. 2014) ...................................................... 15

**Statutes**

42 U.S.C. § 1983 ................................................................................. *passim*

42 U.S.C. § 1997e(a) ............................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 7, 11

U.S. Const. amend. VIII ..................................................................... 1, 2

U.S. Const. amend. XIV ...................................................................... 1, 2

## NATURE AND STAGE OF THE PROCEEDINGS

In this putative class action, the three named plaintiffs (Harry Samuel, Christopher Desmond, and Arthur Govan) allege that Centurion and other defendants violated the Eighth Amendment by "pursuing policies and practices that had the foreseeable effect of delaying and denying health care" for serious medical conditions. D.I. 1 (Compl.) at ¶ 171. Plaintiffs allege that Centurion had unspecified unconstitutional policies and practices to "increase the profitability" of its contract with the Delaware Department of Corrections ("DDOC") under which it provided healthcare services to inmates from April 1, 2020 until June 30, 2023. *Id.* at ¶ 121 (failure to supervise and terminate unqualified), ¶ 122 (denied medically-necessary specialist care), ¶ 129 (understaffed DDOC's healthcare department).Plaintiffs demand declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees. *Id.* at pp. 33-34 ("Prayer for Relief").

Centurion seeks dismissal of Plaintiff's claims because they do not plausibly allege that Centurion acted with deliberate indifference to their medical needs.[1]

Plaintiffs assert two constitutional claims against Centurion under 42 U.S.C. § 1983. First, they allege that Centurion, through a policy or custom, "subjected Plaintiffs and the proposed class to serious harm and injury from constitutionally delayed and denied health care." D.I. 1 (Compl.) at ¶ 168. Second, they claim that

---

[1] The Centurion Defendants reserve their right to assert an exhaustion defense under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), at the appropriate time. While plaintiffs' threadbare recital that they "filed many grievances regarding loss of effective treatment" need not be credited and, in any event, does not demonstrate full and proper exhaustion under DDOC's rules, the Centurion Defendants recognize, however, that exhaustion is an affirmative defense that must be supported by grievance files or other proof. *Williams v. Del. Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 474 n.7 (3d Cir. 2021); *Small v. Camden Cnty.*, 728 F.3d 265, 268-69 (3d Cir. 2013).

Centurion "acted with deliberate indifference to the rights of the Plaintiffs and the proposed class by hiring, failing to supervise and retaining persons without the requisite competency in correctional medical services, including persons who had repeatedly violated the rights of those in custody." *Id.* at ¶ 178. Plaintiffs seek compensatory damages, punitive damages, and attorneys' fees from Centurion, but not declaratory or injunctive relief. *Id.* at pp. 33-34 ("Prayer for Relief").[2]

Plaintiffs seek to certify a class of inmates to pursue these damages claims against Centurion. *Id.* at ¶¶ 155-166. Centurion has filed a motion to strike the class allegations against it.

### SUMMARY OF THE ARGUMENTS

Plaintiffs have not plausibly alleged that Centurion has a policy or practice of deliberate indifference toward inmates' serious medical needs. The Court should dismiss all claims against Centurion for several reasons.

1.    Plaintiffs have not identified a specific Centurion policy or practice that caused the alleged deficiencies in their medical treatment, as required by Section 1983 and cases applying the deliberate indifference standard to healthcare claims. Instead, the complaint refers vaguely and in conclusory fashion to unidentified "policies or practices that had the foreseeable effect of delaying and denying health

---

[2] As acknowledged in the complaint, Centurion is no longer DDOC's healthcare provider and, as a result, has no involvement in the current or future medical care provided to inmates in DDOC custody. D.I. 1 at ¶¶ 23-24. Accordingly, any claims against Centurion for declaratory or injunctive relief would be moot. *See Taylor v. Zatecky*, 2022 WL 992023, at *3 (S.D. Ind. April 1, 2022) (recognizing that injunctive relief claims against previous correctional healthcare provider became moot once new provider was hired); *Lang v. Cain*, 2021 WL 3611107 (N.D. Miss. Aug. 13, 2021) (dismissing equitable claims against Centurion as moot after its contract with corrections agency expired).

care." A plaintiff must allege more than this to assert a plausible policy or practice claim that passes the *Twombly/Iqbal* pleading standard.

2.       Plaintiffs offer no factual allegations to support their claim that Centurion had practice of failing to investigate medical grievances. Indeed, their allegations confirm that Centurion's medical providers *did* respond to inmates' concerns about their health care, and, in some cases, Plaintiffs did not even submit grievances. In any event, the complaint's factual allegations show that DDOC—not Centurion—was responsible for administering the grievance process.

3.       Plaintiffs have not pled sufficient facts to support a negligent hiring, training, or supervision claim against Centurion. Plaintiffs allege one instance of Centurion hiring an unlicensed nurse during its three-year tenure as the healthcare provider. That single event, to which Plaintiffs attribute no harms, cannot plausibly satisfy the required showing of a widespread practice of negligent hiring that resulted in constitutional violations. Further, they pled no facts to support their conclusory failure to train and supervise allegations.

The Court should dismiss the claims against Centurion with prejudice.

## STATEMENT OF FACTS

### 1.       Centurion contracted with DDOC to provide healthcare to inmates housed at DDOC facilities.

Centurion is a private company that provides healthcare to inmates in state prison systems. Centurion provided healthcare services to inmates in DDOC custody, from April 1, 2020 to June 30, 2023, pursuant to a Professional Services Agreement for Correctional Healthcare Services, Contract No. DOC20026-HEALTH (the

"Centurion-DDOC Agreement" or "Agreement")). *See* D.I. 1, ¶¶ 23, 94, 105 (identifying contract number and period). Centurion contracted to provide medical care in a professional, humane way that was consistent with the Eighth and Fourteenth Amendments of the United States Constitution and compliant with applicable laws and DDOC policies. Ex. A (Agreement § 3 & App'x 1, ¶ 7).[3] Centurion contracted to provide medical, nursing, ancillary, dentary, and pharmacy management services for incarcerated individuals. *Id*. at ¶ 110.

Plaintiffs are incarcerated in James T. Vaughn Correctional Center. *Id*. at ¶¶ 8, 11, 14. The unnamed proposed class members identified as "examples" in the Complaint are housed in three DDOC facilities—James T. Vaughn Correctional Center, *id*. at ¶¶ 55, 58, 63, 65, 73, Howard R. Young Correctional Center, *id*. at ¶ 56, and Sussex Correctional Institution, *id*. at ¶ 57, 72, 78.

### 2. The three named Plaintiffs allege their different medical conditions were inadequately treated.

***Plaintiff Harry Samuel*** alleges he experienced "untreated" rectal bleeding and now suffers from prostate and rectal cancer. D.I. 1 at ¶¶ 26-39. Samuel claims that his rectal bleeding began in November 2022 and that—despite being evaluated by medical providers multiple times in the next few months—he was not provided proper treatment. *See id.* In January 2023, a physician's assistant diagnosed Samuel with diverticulosis and prescribed him fiber tablets and Colace. *Id*. at ¶ 32.

---

[3] The Court may consider the Agreement when deciding Centene's motion because it is both "'integral to'" and "'explicitly relied'" on by plaintiffs in their complaint. *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006) (quoting *In re Rockefeller Center Props., Inc. Securities Liti.*, 184 F.3d 280, 287 (3d Cir. 1999)).

In February 2023, Samuel was taken to the prison infirmary to evaluate his claims of rectal bleeding and then transferred to an offsite hospital for further evaluation. *Id.* at ¶¶ 33-35. Samuel claims that the hospital physician referred him to a specialist for surgery, *id.* at ¶ 35, but "nothing was done" when he returned to his DDOC facility, *id.* at ¶¶ 36-37. According to Samuel, he ultimately received a bone scan and colonoscopy, which revealed terminal prostate and rectal cancer, but was told by DDOC's current contract healthcare provider, VitalCore Health Strategies ("VitalCore"), that no treatment would be provided. *Id.* at ¶¶ 38-39.

***Plaintiff Arthur Govan*** fears that he may have cancer and alleges that, although he was referred to a specialist by medical staff in May 2023, he has not yet been seen by a specialist. *Id.* at ¶¶ 40-48. According to Govan, in September 2022, he began experiencing "urinary hesitation" and other symptoms that he associates with cancer. *Id.* at ¶ 41. Prison medical staff evaluated Govan in September 2022 and tested his prostate-specific antigen ("PSA") levels, which were elevated but stable. *Id.* at ¶ 42. Govan was prescribed Flomax, which provided some relief, and scheduled for a follow-up PSA test the next month. *Id.* at ¶ 42.

Citing referral orders in his medical records and his grievance filings with DDOC, Govan claims that a urologist should have assessed him for prostate cancer. *Id.* at ¶¶ 44-48. To date, however, Govan has not seen a urologist. *Id.*

***Plaintiff Christopher Desmond*** has high blood pressure, heart disease, high cholesterol, and kidney disease and is enrolled in a Chronic Care medical program to ensure regular monitoring and treatment of these chronic conditions. *Id.* at ¶¶49-53.

Even so, Desmond claims that he is not seen by a cardiologist "on a regular basis" and alleges that, at one point during his incarceration, his blood pressure medication was withheld for 47 days as a form of discipline. *Id.* at ¶¶ 49-52. Desmond also claims that, despite a family history of colon cancer, he has been prescribed medication that puts him at higher risk of skin cancer, but has not been seen by a dermatologist or provided a colonoscopy. *Id.* at ¶53.

In addition to the named Plaintiffs' claims, the complaint includes "examples" of other unidentified inmates—members of the putative class—who were allegedly refused care or experienced treatment delays for their individual medical conditions. *See id.* at ¶¶ 55-82 (alleging inadequate treatment for, among other conditions, asthma, nerve damage, infection, hernias, and mental illness).

### 3. Plaintiffs allege Centurion pursued "policies and practices that had the foreseeable effect of delaying and denying health care" for their serious medical conditions.

According to Plaintiffs, Centurion violated the terms of the Centurion-DDOC Agreement "[a]s evidenced by the systemic delays and denials of medical care experienced by Plaintiffs and the proposed plaintiff class." *Id.* at ¶ 118. Plaintiffs claim Centurion violated the Agreement by "lack[ing] physicians, nurses, dentists, medical directors and countless other needed professionals," *id.* at ¶ 119, "fail[ing] to supervise the staff it did have," *id.* at ¶ 120, and "retain[ing] staff known to have violated the rights of Plaintiffs and the proposed class." *Id.*

The only factual allegations associated with these conclusory legal assertions are that "Centurion placed a man without a nursing license into the role of nurse," *id.* at ¶ 120, and Centurion posted "numerous job postings seeking staff" during its

tenure as DDOC's contract healthcare provider, *id.* at ¶ 119, Plaintiffs make no other factual allegations to support their conclusion that Centurion had a policy or custom that amounted to deliberate indifference in hiring, training, or supervising medical staff at DDOC facilities.

Plaintiffs also allege "Centurion routinely denied Plaintiffs and the plaintiff class with medically-necessary specialist care," *id.* at ¶ 122, and "engaged in the wrongful practice of denying meritorious medical grievances," *id.* at ¶ 123. Plaintiffs support this conclusion by pointing to the individual experiences of the three named Plaintiffs in 2022 and 2023, *see supra* 3-4, and the unidentified examples of other proposed class members receiving allegedly inadequate treatment for a wide variety of medical conditions. Plaintiffs do not allege any facts showing that Centurion or its policymakers had knowledge of the alleged denial of specialist care or "meritorious medical grievances." Plaintiffs allege DDOC's Bureau Chief, not Centurion, is responsible for ensuring grievances are "properly investigated and remedied." *Id.* at ¶ 21; *see also id.* at ¶ 48 (DDOC's Bureau Chief participated in the wrongful denial of Govan's grievances); *id.* at ¶ 88 (DDOC's Bureau Chief "denied grievance after grievance without investigating the facts").

## ARGUMENT

## I.    LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all plausible facts" alleged in the complaint and "draw all reasonable inferences" in the plaintiffs' favor. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d

Cir. 2016). The Court disregards legal conclusions and conclusory statements. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Further, the Court need not accept a plaintiff's characterization of documents cited in the complaint, but may decide for itself what those documents provide. *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 280 (D.D.C. 2014); *In re Lyondell Chem. Co.*, 491 B.R. 41, 50 (Bankr. S.D.N.Y. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard" requires that the well-pleaded facts show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Santiago*, 629 F.3d at 131-35. This Court has identified three steps for reviewing complaints under *Iqbal/Twombly*:

> (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Dorsett v. Kramer*, 2016 WL 922073, at *1 (D. Del. Mar. 10, 2016) (citing *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016)).

Importantly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Deciding if a complaint states a plausible claim for relief is a "context-specific" task,

which requires the Court to "draw on its judicial experience and common sense" when addressing whether the "nub" of the complaint alleges unconstitutional conduct despite an "obvious alternative explanation." *Id.* at 679-82.

## II. PLAINTIFFS FAIL TO STATE A CLAIM THAT CENTURION HAD AN UNCONSTITUTIONAL POLICY OR PRACTICE THAT AMOUNTED TO DELIBERATE INDIFFERENCE IN THE PROVISION OF MEDICAL CARE

In their first claim, Plaintiffs allege Centurion pursued "policies and practices that had the foreseeable effect of delaying and denying health care" for their various serious medical conditions. D.I. 1 (Compl.) at ¶ 171. Plaintiffs cannot rely on a theory of respondeat superior to hold Centurion liable, so they must allege a policy or custom that amounts to deliberate indifference. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992).[4] Plaintiffs asserting an unconstitutional policy claim "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority. . . ." *Forrest*, 930 F.3d at 105. For an unconstitutional custom claim, a plaintiff's allegations "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06 (citation omitted).

---

[4] Section 1983 does not impose vicarious or *respondeat superior* liability on Centurion for the acts of its providers. *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F. 3d 572, 580 (3d Cir. 2004) (citing *Monell*, 436 U.S. at 691-92); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

In the case of a private actor, like Centurion, plaintiffs must identify a policy or custom of Centurion; it is not sufficient to show that Centurion was following the policy or practice of another party. Plaintiffs must prove that Centurion's "deliberate conduct . . . was the 'moving force' behind the injury alleged.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997)). When policy and practice claims are leveled against private contractors operating within a state correctional system, courts ask whether the challenged custom or policy was that of the contractor, or rather one imposed by the state. *Williams v. Guard Bryant Fields,* 535 F. App'x 205, 211 (3d Cir. 2013); *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("[A] private contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality." (emphasis in original)).

### 1. Plaintiffs' fail to plausibly allege the existence of a Centurion policy or practice of denying medical care.

Plaintiffs do not identify a specific policy, practice or custom, but instead allege generally that Centurion had "policies or practices that had the foreseeable effect of delaying and denying health care." In particular allege that, pursuant to these unidentified "policies or practices," medical providers at DDOC facilities acted with deliberate indifference toward Plaintiffs' varied and patient-specific medical needs. D.I. 1 (Compl.) at ¶¶ 32-37 (Samuel alleging deliberate indifference when his reports of rectal bleeding were met with over-the-counter fiber tablets and a stool softener instead of a specialist consult and surgery.); *id.* at ¶¶ 40-46 (Govan alleging deliberate indifference when his urinary hesitation was treated with Flomax, repeated

diagnostic testing, and two referrals from Centurion providers requesting he been seen by a specialist, but where his referral appointment has not yet been scheduled); and *id.* at ¶¶ 49-53 (Desmond alleging deliberate indifference when his medication was withheld because he refused to submit "repetitive" sick calls to receive the medication, has been refused to be referred to a dermatologist to conduct a skin check because he is on a medication that increases the risk of skin cancer, and has not had a colonoscopy despite a family history of colon cancer.).[5]

No actual policy is identified, and no pattern emerges from these patient-specific allegations of medical conditions, treatments, and harms. So Plaintiffs have only conclusory claims of a pattern or practice, without any supporting factual allegations. Under similar circumstances, the Third Circuit has affirmed dismissal of an inmate's policy or practice claims under Rule 12(b)(6). *See Sims v. Wexford*, 635 F. App'x 16 (3d Cir. 2015). In *Sims*, the plaintiff made only conclusory allegations regarding the alleged private contractor's policies and practices. *Id.* at 20 (affirming dismissal of complaint where he alleged a policy or practice of denying prescriptions to save costs based on allegations that his prescription medication was discontinued). Similarly, Plaintiffs here allege the individual medical care they received, when considered *in toto*, reflect a general policy or practice by Centurion to maximize

---

[5] Desmond's allegations of deliberate indifference relating to his complaint that he has not had a colonoscopy is not a serious medical need that can support a claim of deliberate indifference. *Crump v. Corr. Med. Servs.*, 647 F. Supp. 2d 375, 379 (D. Del. 2009) (finding plaintiff's "subjective belief that he is at risk for colon cancer does not fall into the category of a serious medical need as contemplated in *Estelle*.").

profits. Like in *Sims*, those allegations do not support a plausible policy or practice of Centurion of denying or delaying medical care to maximize profits.

Similarly, Delaware's district courts have granted motions to dismiss when plaintiffs fail to plausibly allege a policy or custom caused a constitutional violation when the allegations do not include "any specificity how [the contract healthcare provider's] failure to implement a policy was the 'moving force behind the injury alleged.'" *Hurley v. Connections Cmty. Support Programs, Inc.*, 2021 WL 677943, at *5 (D. Del. Feb. 22, 2021) (quoting *Martin v. Sec'y of Corr.*, 2018 WL 2465180, at *3 (M.D. Pa. June 1, 2018) (citing *Berg*, 219 F.3d at 275-76); *see also Morris v. Cooper*, 2020 WL 4287369, at *2 (D. Del. July 27, 2020) (granting motion to dismiss where plaintiff's allegations of a practice of "overlooking" and "keeping [the] same people to work for them" to "sav[e] money" did not amount to deliberate indifference); *Issa v. Del. State Univ.*, 2014 WL 3974535, at *5 (D. Del. Aug. 11, 2014) (dismissing § 1983 *Monell* claim and holding the complaint did not adequately identify an allegedly unconstitutional policy or custom, and failed to plead defendants were the "moving force" behind any alleged constitutional violations); *Lucas v. Officer Ham*, 2021 WL 780746, at *3–4 (D. Del. Mar. 1, 2021) (amended complaint "merely paraphrase[d] the elements of a municipality liability claim" which was "insufficient and fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim") (internal quotation and citation omitted); *see also, e.g., Caterbone v. Lancaster County Prison*, 2019 WL 2774162, at *3 (E.D. Pa. July 2, 2020) *aff'd*, 811 F. App'x 721 (3d

Cir. 2020) (allegations insufficient to state a claim for deliberate indifference based on alleged policy or practice).

Plaintiffs' conclusory allegations that Centurion had a practice of providing inadequate care to save costs are not sufficient to push their claims over the line, from possible to actually plausible.

### 2. Plaintiffs cannot maintain their Section 1983 claim based on the alleged failure to investigate medical grievances.

Plaintiffs also fail to advance any factual allegations to support their claim Centurion failed to investigate medical grievances. Instead, the factual allegations show the opposite.

Plaintiff Samuel alleges he submitted a sick call on January 1, 2023, D.I. 1 (Compl.) at ¶ 30, and that he was seen three days later on January 4, 2023 by a Centurion staff member who placed him on a list to be seen by a physician's assistant, *id.* at ¶ 31. Samuel was then evaluated by a physician's assistant on January 6, 2023. *Id.* at ¶ 32. He also alleges he experienced a medical emergency on February 7, 2023 and was transported to the infirmary, and then offsite for further evaluation. *Id.* at ¶¶ 33-35.

Plaintiff Govan does not allege he ever submitted a grievance, much less that one was submitted and ignored without investigation. And Plaintiff Desmond alleges he "refused to submit repetitive 'sick calls' to receive prescribed medications." *Id.* at ¶ 51. Like Plaintiff Govan, there are no factual allegations that Plaintiff Desmond submitted a medical grievance that was ignored by Centurion.

There are no allegations that *Centurion* had a policy or practice of wrongfully denying grievances or that a *Centurion* custom or practice was the moving force behind any alleged constitutional violation. The only factual allegations regarding grievance denials relate to DDOC's Bureau Chief, not Centurion. Plaintiffs cannot maintain a claim for deliberate indifference based on the alleged wrongful denial of medical grievances. *Berg*, 219 F.3d at 276; *Williams,* 535 F. App'x at 211.

## III. PLAINTIFFS' CLAIM OF DELIBERATE INDIFFERENCE RELATING TO TRAINING, SUPERVISION, AND HIRING IS NOT ADEQUATELY PLEAD

In Count II, Plaintiffs allege "Centurion acted with deliberate indifference to the rights of the Plaintiffs and the proposed class by hiring, failing to supervise, and retaining persons without the requisite competency in correctional medical services, including persons who had repeatedly violated the rights of those in custody." D.I. 1 (Compl.) at ¶ 178. Count II does not include any factual allegations to support this conclusion. Elsewhere in the Complaint, Plaintiffs allege Centurion hired "a man without a license" as a nurse, *id*. at ¶ 132, and posted "numerous job postings seeking staff" during its tenure as DDOC's contract healthcare provider, *id*. at ¶ 119. There are no other allegations associated with hiring, retention, or training by Centurion.

The Third Circuit has explained that the allegations necessary to "articulate the causation requirement differs for each theory of relief" asserted by a plaintiff. *Li Min v. Morris*, 445 F. App'x 574, 576 (3d Cir. 2011). For example, to allege an injury caused by a Centurion policy of improper hiring, Plaintiffs are "required to demonstrate that 'scrutiny of an applicant's background would lead a reasonable

policymaker to conclude that the plainly obviously consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.'" *Id.* To demonstrate the Plaintiffs' injuries were caused by Centurion's alleged failure to supervise medical staff at DDOC facilities, Plaintiffs must allege facts demonstrating "the existing supervision regime 'created an unreasonable risk' of unconstitutional conduct.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). And to show an alleged injury was caused by an alleged failure to train, Plaintiffs must allege facts that demonstrate Centurion "had shown 'deliberate indifference … [such as] proof that a municipal actor disregarded a known or obvious consequence' of its actions." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Connick*, 563 U.S. at 61 ("a failure to train may amount to deliberate indifference "where the need for more or different training is obvious, and inadequacy [is] very likely to result in violation of constitutional rights.'").

Here, Plaintiffs' allegations fail to state a claim against Centurion under any of these three theories of liability because there are no plausible factual allegations to support the existence of a policy or practice that caused their alleged injuries. Plaintiffs do not allege facts showing that Centurion had a practice of failing to screen potential employees or that Centurion had a practice of failing to train or supervise medical staff once hired. *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (citing *Bryan Cnty.*, 520 U.S. at 410-11) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must [be able to] carefully test the link between the policymaker's inadequate decision and the particular injury

alleged…."); *Connick*, 563 U.S. at 61 (if no notice exists that the training is deficient, decision-makers cannot be said to have deliberately chosen a training program that caused the alleged injury); *Estate of Kamal by and through Kamal v. Twp. of Irvington*, 790 F. App'x 395, 398 (3d Cir. 2019) (affirming grant of motion to dismiss where plaintiff's claim for failure to train or supervise was "unsupported by allegations that [training] deficiencies existed at the time of [the plaintiff's] death, that the deficiencies amounted to deliberate indifference to [his] constitutional rights, or that the deficiencies were closely related to the alleged constitutional violation.").

Plaintiffs' allegations of failure to hire, train, or supervise do not satisfy the *Twombly/Iqbal* plausibility standard. Plaintiffs' conclusory allegations that are not entitled to the assumption of truth. Once those are properly disregarded, Plaintiffs' only relevant allegations are that a man was hired as a nurse without a license and that Centurion published job postings during its tenure as DDOC's contract healthcare provider. Those allegations do not plausibly state a claim that Centurion acted with deliberate indifference to the Plaintiffs based on its hiring, training, and supervision policies or customs. *Dorsett*, 2016 WL 922073, at *1.

## CONCLUSION

The Court should dismiss the Complaint against Centurion because Plaintiffs fail to state a claim for which relief may be granted.

Respectfully Submitted,

**MARKS, O'NEILL, O'BRIEN
DOHERTY & KELLY, P.C.**

*/s/  Dawn C. Doherty*
Dawn C. Doherty, Esquire (ID No. 3164)
Brett T. Norton, Esquire (ID No. 5559)
300 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 658-6538
Ddoherty@moodklaw.com
Bnorton@moodklaw.com

*Attorneys for Defendants Centene Corporation
and Centurion of Delaware, LLC*

**BRADLEY, ARANT, BOULT,
CUMMINGS, LLP**

/s/ *Michael J. Bentley*
Michael J. Bentley, Esquire (*Pro Hac Vice*)
Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
188 E. Capitol Street
Suite 1000, One Jackson Place
Jackson, Mississippi 39201
(601) 948-8000
Mbentley@bradley.com
Esaltaformaggio@bradley.com

<u>DATED</u>: December 11, 2023