# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SAMUEL, ET AL., individually and on behalf of others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER, MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH, BUREAU CHIEF MICHAEL RECORDS,<br><br>*Defendants.* | Civil Action No.<br>1:23-CV-01134-RGA |

---

## DEFENDANT CENTENE CORPORATION'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

---

**MARKS, O'NEILL, O'BRIEN DOHERTY & KELLY, P.C.**

/s/ Dawn C. Doherty
Dawn C. Doherty, Esquire (ID No. 3164)
Brett T. Norton, Esquire (ID No. 5559)
300 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 658-6538
Ddoherty@moodklaw.com
Bnorton@moodklaw.com

*Attorneys for Defendants Centene Corporation and Centurion of Delaware, LLC*

**BRADLEY, ARANT, BOULT, CUMMINGS, LLP**

/s/ *Michael J. Bentley*
Michael J. Bentley, Esquire (*Pro Hac Vice*)
Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
188 E. Capitol Street
Suite 1000, One Jackson Place
Jackson, Mississippi 39201
(601) 948-8000
Mbentley@bradley.com
Esaltaformaggio@bradley.com

<u>DATED</u>: December 11, 2023

{M0780636.1}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS........................................................1

SUMMARY OF THE ARGUMENTS...............................................................................3

STATEMENT OF FACTS.................................................................................................4

ARGUMENT......................................................................................................................8

I.    LEGAL STANDARD..............................................................................................8

II.   CENTENE CANNOT BE HELD VICARIOUSLY LIABLE UNDER SECTION
      1983 FOR CONSTITUTIONAL VIOLATIONS COMMITTED BY
      ANOTHER PERSON OR ENTITY.....................................................................10

III.  CENTENE IS NOT LIABLE FOR CENTURION'S CONDUCT UNDER
      DELAWARE LAW................................................................................................13

      1.    Centurion is a separate legal entity, not merely an alter ego or
            instrumentality of Centene......................................................................15

      2.    Centurion does not act as Centene's "agent" when providing correctional
            healthcare to inmates in DDOC's custody................................................18

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Rumsfeld,*
　450 F. Supp. 2d 440 (D. Del. 2006) ................................................................... 5, 6

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.,*
　607 F. Supp. 227 (D. Del. 1984) ........................................................................ 15

*In re Asbestos Prod. Liab. Litig. (No. VI),*
　822 F.3d 125 (3d Cir. 2016) ................................................................................. 9

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ........................................................................ 9, 10, 13, 14

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ............................................................................................. 9

*Berg v. County of Allegheny,*
　219 F.3d 261 (3d Cir. 2000) ............................................................................... 12

*Blair v. Infineon Tech. AG,*
　720 F. Supp. 2d 462 (D. Del. 2010) ............................................... 10, 15, 16, 17

*Brit. Telecomms. PLC v. IAC/InteractiveCorp.,*
　356 F. Supp. 3d 405 (D. Del. 2019) .......................................................*passim*

*Bryan County, Okla. v. Brown,*
　520 U.S. 397 (1997) ........................................................................................... 12

*C.R. Bard, Inc. v. Guidant Corp.,*
　997 F. Supp. 556 (D. Del. 1998) ................................................................. 14, 18

*Connelly v. Lane Const. Corp.,*
　809 F.3d 780 (3d Cir. 2016) ................................................................................. 9

*Dole Food Co. v. Patrickson,*
　538 U.S. 468 (2003) ........................................................................................... 11

*Dorsett v. Kramer,*
　2016 WL 922073 (D. Del. Mar. 10, 2016) ......................................................... 9

*Forrest v. Parry,*
　930 F.3d 93 (3d Cir. 2019) ........................................................................... 11, 12

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*,
372 F. 3d 572 (3d Cir. 2004) ...................................................................... 11, 13

*Janail Brown, et al. v. Centurion of Delaware, LLC, et al.*,
No. 1:22-cv-00923-GBW (D. Del.) ............................................................. 2

*Johnson v. Karnes*,
398 F.3d 868 (6th Cir. 2005) ................................................................... 12

*Kelley v. Fed. Bureau of Investigation*,
67 F. Supp. 3d 240 (D.D.C. 2014) ......................................................... 9, 16

*Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*,
2017 WL 726660 (D. Del. Feb. 23, 2017) ............................................... 14

*In re Lyondell Chem. Co.*,
491 B.R. 41 (Bankr. S.D.N.Y. 2013) ..................................................... 9, 16

*Mobil Oil Corp. v. Linear Films, Inc.*,
718 F. Supp. 260 (D. Del. 1989) ............................................................ 16

*Monell v. Dept. of Soc. Servs.*,
436 U.S. 658 (1978) .............................................................................. 11, 13

*Murphy v. Kellar*,
950 F.2d 290 (3d Cir. 1992) ................................................................... 11

*O'Leary v. Telecom Res. Serv., LLC*,
2011 WL 379300 (Del. Super. Jan. 14, 2011) ..................................... 14, 15

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001) ................................................................ 11, 15

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*,
842 F.2d 1466 (3d Cir. 1988) ............................................................. 15, 18

*Polk County v. Dodson*,
454 U.S. 312 (1981) ............................................................................... 11

*In re Rockefeller Center Props., Inc. Securities Liti.*,
184 F.3d 280 (3d Cir. 1999) ................................................................... 5

*Estate of Roman v. City of Newark*,
914 F.3d 789 (3d Cir. 2019) ................................................................... 11

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010) .................................................................... 9

*SRI Int'l, Inc. v. Intenet Sec. Sys., Inc.,*
  2005 WL 851126 (D. Del. Apr. 13, 2005) ............................................................ 15

*StrikeForce Tech., Inc. v. PhoneFactor,Inc.,*
  2013 WL 6002850 (D. Del. Nov. 13, 2013) .................................................... 18, 19

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc (DE),*
  2017 WL 896988 (D. Del. Mar. 7, 2017) .............................................................. 18

*Trevino v. Merscorp, Inc.,*
  583 F. Supp. 2d 521 (D. Del. 2008) ...................................................................... 15

*United States v. Bestfoods,*
  524 U.S. 51 (1998) ........................................................................................... 10, 18

*United States v. Golden Acres, Inc.,*
  702 F. Supp. 1097 (D. Del. 1988) ......................................................................... 16

*In re Washington Mut. Inc.,*
  741 F. App'x 88 (3d Cir. 2018) ............................................................................. 14

*Williams v. Guard Bryant Fields,*
  535 F. App'x 205 (3d Cir. 2013) ........................................................................... 12

**Statutes**

42 U.S.C. § 1983 ................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 8

U.S. Const. amend. VIII ................................................................................. 1, 2, 11

U.S. Const. amend. XIV .............................................................................................. 5

## NATURE AND STAGE OF THE PROCEEDINGS

In this putative class action, three inmates in custody of the Delaware Department of Corrections ("DDOC") allege that the defendants violated the Eighth Amendment and 42 U.S.C. § 1983 by understaffing DDOC's healthcare system and "intentionally delay[ing] and den[ying] needed medical care." D.I. 1 (Compl. ¶ 2). The defendants are several DDOC officials, DDOC's current contract healthcare provider, VitalCore Health Strategies ("VitalCore"), and its previous contract provider, Centurion of Delaware, LLC ("Centurion"). As the complaint alleges, and public records confirm, Centurion provided healthcare to inmates from April 1, 2020 through June 30, 2023 pursuant to a contract with DDOC.

The complaint also seeks to draw Centurion's former parent company, Centene Corporation, into this inmate-provider dispute on the theory that a parent is "equally liable" for its subsidiary's alleged constitutional violations. *See* D.I. 1 (¶¶ 94-104). That legal theory fails for two reasons. *First*, Section 1983 does not permit passive or vicarious liability for constitutional violations; only persons who directly participate in the allegedly unconstitutional conduct can be liable. Centene's status as Centurion's parent does not make Centene liable for Centurion's alleged conduct. *Second*, federal law and Delaware law respect the legal separateness of parent and subsidiary companies, and plaintiffs have not alleged a plausible basis for ignoring the corporate forms in this case.

If plaintiffs have viable constitutional claims, which is denied, those claims should be pursued against Centurion. The Court should dismiss Centene.

Plaintiffs' complaint seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees for alleged violations of the Eighth Amendment's prohibition on "cruel and unusual punishments." *See generally* D.I. 1. Plaintiffs lump Centurion and Centene together based on their "control" allegations, *see id.* at ¶¶ 94-104, and assert two deliberate indifference claims against these separate entities, both of which depend on Centurion's alleged conduct. First, Plaintiffs allege that "Centene/Centurion" intentionally delayed and denied care for serious medical needs. *Id.* at ¶¶ 105-132. Second, plaintiffs allege that "Centene/Centurion" negligently hired, retained, and failed to supervise staff that lacked the "requisite competency" in correctional healthcare. *Id.* ¶ at 178.

Plaintiffs also seek to certify a class of inmates, *id.* at ¶¶ 155-166, which they define to include all prisoners "incarcerated in Delaware correctional facilities with serious medical needs whose diagnosis or treatment was delayed or denied during the period April 1, 2020 through present (hereinafter "time period."), except that the class excludes those whose medical needs were denied or delayed pursuant to the Pain Management Initiative," *id.* at ¶ 157. The carve out for inmates who claim injuries arising from the "Pain Management Initiative" refers to another putative class action filed against DDOC officials, Centurion, a pharmacy benefits provider, and other defendants. *See Janail Brown, et al. v. Centurion of Delaware, LLC, et al.*, No. 1:22-cv-00923-GBW (D. Del.).

Centene now moves to dismiss the claims against it because, as a matter of constitutional and corporate law, Centene's status as a parent corporation does not make it liable for Centurion's alleged constitutional violations.

## SUMMARY OF THE ARGUMENTS

Plaintiffs' lawsuit challenges the constitutional adequacy of medical care provided to inmates in DDOC's custody. Those claims, if they are viable, are limited by federal law (Section 1983) and longstanding common law respecting corporate separateness to entities that were directly involved in the alleged constitutional violations, such as Centurion or Vital Core. There is no basis for extending liability to Centurion's parent corporation, Centene, a company that played no part in the day-to-day work of providing healthcare to DDOC inmates.

1.    Section 1983 does not permit passive or vicarious liability for alleged constitutional violations; a defendant must have personally participated in the acts allegedly violating the Eight Amendment. In the case of healthcare contractors, the constitutional violation must be caused by a policy or practice of the particular contractor, not some other person. Plaintiffs do not allege *that Centene*—as opposed to Centurion—had a policy or practice for treating inmates in DDOC's custody. Instead, they say that Centene's bare status as a parent company makes it "equally liable" for Centurion's healthcare practices. Section 1983 forbids such a transfer of liability from Centurion to Centene under this vicarious liability theory.

2.    Federal law and Delaware law respect the legal separateness of a parent and its subsidiary. Courts hold a parent liable for a subsidiary's acts only in the rarest

of cases involving fraud, injustice, total domination, or specific instigation by the parent—none of which are plausibly alleged here. Plaintiffs' allegations show only that Centene exercised ordinary corporate oversight over Centurion and other subsidiaries; there is no plausible inference that Centene dominated or controlled Centurion for some fraudulent or unjust purpose. Plaintiffs generalized allegations of corporate oversight are not sufficient to pierce the corporate veil and transfer Centurion's alleged liability to Centene.

The Court should dismiss the claims against Centene with prejudice.

## STATEMENT OF FACTS

This suit is brought by three inmates in DDOC custody who claim that their serious medical conditions were not properly treated. *See* D.I. 1 (Complaint) at ¶¶ 8-16, *id.* at ¶¶ 26-39 (Plaintiff Samuel's allegations regarding cancer treatment), ¶¶ 40-48 (Plaintiff Govan's allegations regarding possible cancer diagnosis), ¶¶49-53 (Plaintiff Desmond's allegations regarding high blood pressure, heart disease, high cholesterol, and kidney disease). Among other things, the plaintiffs allege that they were denied emergency care, *id.* at ¶ 8 (Samuel), ¶ 14 (Govan), refused access to specialists, *id.* at ¶ 8 (Samuel), ¶ 11 (Desmond), ¶ 14 (Govan), or denied medication for disciplinary reasons, *id.* at ¶ 11 (Desmond).

In addition to the named plaintiffs' claims, the complaint seeks to certify a class and includes "examples" of other unidentified inmates who were allegedly refused specialist care or experienced treatment delays for their individual medical

conditions. *See id.* at ¶¶ 55-82 (alleging inadequate treatment for, asthma, nerve damage, infection, hernias, mental illness, and myriad other conditions).

Centurion is a private company that provides healthcare to inmates in state prison systems. Centurion provided healthcare services to inmates in DDOC's custody, from April 1, 2020 to June 30, 2023, pursuant to a Professional Services Agreement for Correctional Healthcare Services, Contract No. DOC20026-HEALTH (the "Centurion-DDOC Agreement" or "Agreement")). *See* D.I. 1 at ¶¶ 23, 94, 105 (identifying contract number and period); *see also* Exhibit A (Agreement § 1.1 & App'x 1, ¶¶ 1.1, 9).[1] Another private company, VitalCore, has provided healthcare services to DDOC since July 1, 2023. *See* D.I. 1 at ¶ 24.

As set forth in the Centurion-DDOC Agreement, Centurion contracted to provide medical care in a professional, humane way that was consistent with the Eighth and Fourteenth Amendments of the United States Constitution and compliant with applicable laws and DDOC policies. Ex. A (Agreement § 3 & App'x 1, ¶ 7). Centurion warranted that it possessed all of the capital and resources needed to provide the medical services required under the Agreement. Ex. A (Agreement § 22). Centurion also maintained significant liability insurance to cover any claims arising out of its provision of medical services. Ex. A (Agreement § 21).

DDOC looked specifically and solely to Centurion to provide medical services to inmates, forbidding Centurion from assigning or transferring its interest in the

---

[1] The Court may consider the Agreement when deciding Centene's motion because it is both "'integral to'" and "'explicitly relied'" on by plaintiffs in their complaint. *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006) (quoting *In re Rockefeller Center Props., Inc. Securities Liti.*, 184 F.3d 280, 287 (3d Cir. 1999)).

Agreement without DDOC's consent. Ex. A (Agreement § 15). Centene was not a party to the Centurion-DDOC Agreement, is not referenced in the Agreement, and has no obligations under the Agreement.

From April 2020 through January 10, 2023, Centurion was a wholly-owned subsidiary of Centene. The complaint recognizes that Centene Corporation and Centurion of Delaware, LLC are separate corporations. *See* D.I. 1 at ¶¶ 22-23, 94-95. Plaintiffs also acknowledge that Centurion actually provided the care at issue in this case. D.I. 1, ¶ 96 ("Centurion of Delaware LLC provided correctional health care services to the Department . . . ."). Plaintiffs allege, however, that Centurion's parent company, Centene, is liable for Centurion's actions while providing medical care to DDOC inmates. Citing Centene's 2022 Form 10-K, plaintiffs allege that Centurion "did not act as an independent company providing services but instead was wholly controlled and operated by Centene, as evidenced by facts in Centene's filings with the Security and Exchange Commission ("SEC")." D.I. 1, ¶ 96.

Because the Form 10-K is central to plaintiffs' allegations of liability against Centene, the Court should consider its actual contents.[2] As reported in the Form 10-K, Centene is a publicly traded healthcare enterprise that provides managed care services for Medicare and Medicaid programs, health plan coverage directly to consumers, and specialty healthcare services—including behavioral healthcare, primary care, data analytics for health plans, pharmacy services, vision and dental health services. *See* Exhibit B (Form 10-K, Part 1, Item 1). Centene provides these

---

[2] The Court may also consider Centene's 2022 Form 10-K because it is "'integral to'" and "'explicitly relied'" on by the plaintiffs in their complaint. *Adkins*, 450 F. Supp. 2d at 444.

services through separate subsidiaries, including—at one time—Centurion of Delaware, LLC. *Id.* (List of Subsidiaries). Centene sold all of its interest in Centurion to an undisclosed buyer on January 10, 2023. D.I. 1 at ¶ 23.

Plaintiffs allege that Centene "created [Centurion] and completely controlled its operations in order to submit a bid on Delaware's prison health contract and continued to control and operate [Centurion] throughout the time period relevant to this lawsuit." D.I. 1 at ¶ 97. Plaintiffs base this "control" allegation on their characterization of a few parts of the Form 10-K, which is over 200 pages long. Specifically, plaintiffs characterize the Form 10-K as supporting the following:

- Centene "consider[s] its workforce a single entity," *id.* at ¶ 97 (citing Form 10-K at p.16);[3]

- Centene "centralize[s] oversight of its medical programs," *id.* at ¶ 98 (citing Form 10-K at p.7);[4]

- Centene "operate[s] a single, unified corporate compliance program," *id.* at ¶ 99, which generates a report "personally reviewed" by Cetene's Board of Directors' Audit and Compliance Committee, *id.* at ¶ 100 (citing Form 10-K at p.9);[5]

---

[3] The Form 10-K does not describe the employees of Cetene's subsidiaries as a "single entity." To support this characterization, Plaintiffs cite Centene's summary of its workforce- and leadership-development programs. In actuality, that section of the Form 10-K (under the major heading "Human Capital Resources") describes a "Talent Development" strategy that aims to develop a diverse and talented workforce through training, digital tools, leadership development programs, hybrid work, talent identification, succession planning, and workforce analytics." Ex. B (Form K-10 at p.16). The form does not reflect that Centene "controls" the day-to-day work of Centurion's employees or medical providers.

[4] Plaintiffs take this statement out of context too. The Form 10-K explains that Centene's Managed Care segment includes a "quality management" component, which "centralized the oversight of quality programs" in Centene's Managed Care segment. Ex. B. (Form 10-K at p.7). Centene's filing makes clear its correctional health care subsidiaries are under its Specialty Care segment, not its Managed Care segment. *Id.* at p.48.

[5] This allegation relies on Centene's "Corporate Compliance" statement. That portion of the Form 10-K discusses steps Centene is taking to promote a culture of integrity and ethics, prevent fraud, waste, and abuse, and ensure compliance with HIPAA and other laws across all of its business segments. Ex. B. (Form 10-K at p.9). Specifically, Centene maintains a compliance intranet site, a Business Ethics

- Centene "increased its revenues by 22 percent as compared to 2021, partly as a result of 'new contracts in our correctional business,'" *id.* at ¶ 101 (citing Form 10-K at p. 48).[6]

*See generally*, *id.* at ¶¶ 94-104. Plaintiffs also claim, without citation to any source, that "[r]easonable discovery will show that [] Centurion did not keep separate financial books able to be audited by KPMG LLP . . . ." *Id.* at ¶ 103.

Plaintiffs' ultimate contention is that "Centene controlled all of [] Centurion's conduct and is equally liable for the repeated constitutional and statutory violations that damaged Plaintiffs and the Plaintiff Class." *Id.* at ¶ 104. Plaintiffs do not claim that Centene itself provided medical care for DDOC inmates; nor do they allege that Centene maintained any particular policy or practice relative to the delivery of healthcare to inmates. Instead, plaintiffs claims rest on the theory that Centene is "equally liable" for Centurion's alleged constitutional violations because Centene exercised ordinary oversight over and earned revenues from the operations of its subsidiaries, including Centurion.

## ARGUMENT

## I.    LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all plausible facts" alleged in the complaint and "draw all reasonable inferences"

---

and Code of Conduct Policy, a compliance helpline, and web-based means of reporting compliance violations. *See id.* The form does not reflect that Centene "controls" Centurion's separate compliance programs.

[6] In actuality, the Form 10-K reflects that, while *revenues* increased by 22% on the performance of several components of its Specialty Care segment (including Centene's acquisition of Magellan, a mental health care provider), *earnings* from operations decreased by $590 million. Ex. B (Form 10-K at p.48).

in the plaintiffs' favor. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). The Court disregards legal conclusions and conclusory statements. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Further, the Court need not accept a plaintiff's characterization of documents cited in the complaint, but may decide for itself what those documents provide. *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 280 (D.D.C. 2014); *In re Lyondell Chem. Co.*, 491 B.R. 41, 50 (Bankr. S.D.N.Y. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard" requires that the well-pleaded facts show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Santiago*, 629 F.3d at 131-35. This Court has identified three steps for reviewing complaints under *Iqbal/Twombly*:

> (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Dorsett v. Kramer*, 2016 WL 922073, at *1 (D. Del. Mar. 10, 2016) (citing *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016)).

Importantly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Deciding if a complaint states a plausible claim for relief is a "context-specific" task, which requires the Court to "draw on its judicial experience and common sense" when addressing whether the "nub" of the complaint alleges unconstitutional conduct despite an "obvious alternative explanation." *Id.* at 679-82.

## II.   CENTENE CANNOT BE HELD VICARIOUSLY LIABLE UNDER SECTION 1983 FOR CONSTITUTIONAL VIOLATIONS COMMITTED BY ANOTHER PERSON OR ENTITY

Plaintiffs allege two theories of deliberate indifference against Centene, both of which depend on holding Centene "equally liable" for Centurion's alleged conduct. Plaintiffs claim that (1) Centene delayed and denied medical treatment for inmates in DDOC custody, D.I. 1 at ¶¶ 167-172 (Count I), and (2) Centene negligently hired, retained, and supervised correctional medical staff. Centene did not contract with or perform work for DDOC. Plaintiffs' liability claims against Centene are predicated entirely on *factual allegations* against *Centurion. See generally*, D.I. 1.

Plaintiffs' claim that Centene is liable for Centurion's alleged constitutional violations defies two established rules of federal law.

*First*, federal courts respect the legal separateness of parent and subsidiary companies and, absent extraordinary circumstances, will not impose liability on a parent for a subsidiary's actions. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.'" *Blair v. Infineon Tech. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)); *accord Brit. Telecomms. PLC v. IAC/InteractiveCorp.*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) ("A parent company is not liable for the actions of its subsidiary solely because of the

parent-subsidiary relationship."). Piercing the corporate vail is a "rare exception" to this long-established rule that parents and subsidiaries are distinct entities. *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475, (2003); *see also Pearson v. Component Tech. Corp.,* 247 F.3d 471, 484 (3d Cir. 2001) (veil piercing is applied only in cases of "abuse of the corporate form").

*Second*, federal law forbids the imposition respondeat superior or vicarious liability for another person's unconstitutional conduct. *Polk County v. Dodson*, 454 U.S. 312, 324 (1981) (stating a Section 1983 claim cannot be based on respondeat superior liability); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978) (supervisory personal are liable under Section 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice that caused the violations); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F. 3d 572, 580 (3d Cir. 2004) (same). Instead, "a plaintiff bringing a section 1983 action must specify *the personal involvement of each defendant.*" *Murphy v. Kellar*, 950 F.2d 290, 292 (3d Cir. 1992) (emphasis added).

While private contractors may be liable under Section 1983, plaintiffs must plead and prove that the contractor had a "policy or practice" that caused a violation of their Eighth Amendment rights. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019). To prevail on a unconstitutional "policy" theory, a plaintiff "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority . . . ." *Forrest*, 930 F.3d at 105 (negligent supervision case). For an unconstitutional

"practice" claim, a plaintiff's allegations "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06.

In the case of a private actor, like Centene, plaintiffs must identify a policy or practice imposed by *Centene itself*; it is not sufficient to allege that Centene followed the policy or practice of another party, such as Centurion or DDOC. Plaintiffs must prove that *Centene's* "deliberate conduct . . . was the 'moving force' behind the injury alleged.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Williams v. Guard Bryant Fields,* 535 F. App'x 205, 206 (3d Cir. 2013). As the Sixth Circuit has explained, "a private contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality." *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original)).

Applying these established rules of corporate separateness and Section 1983 liability here, plaintiffs must show that *Centene* adopted a policy or practice— separate from any alleged policy or practice of Centurion—that was the "moving force" behind plaintiffs' alleged injuries. Plaintiffs make no such factual allegations against Centene. Instead, the factual allegations are aimed squarely at Centurion medical staff's treatment of inmates in DDOC custody. *See* D.I. 1 (Compl.) at ¶¶ 25-39 (describing Plaintiff Samuel's encounters with medical staff in DDOC facilities); *id.* at ¶¶ 40-48 (same for Plaintiff Govan); *id.* at ¶¶ (49-53) same for Plaintiff Desmond); *id.* at ¶¶ 54-83 (alleging other "examples" of Centurion medical staff's treatment of unidentified inmates in various DDOC facilities). These Centurion-

focused allegations align with the fact that Centurion—not Centene—contracted with DDOC and provided healthcare services for inmates in DDOC's custody. There is no allegation that *Centene* (as opposed to Centurion) adopted policies or practices applicable to treatment of inmates in DDOC custody, or that *Centene* provided medical treatment to inmates in DDOC facilities.

Instead, the complaint makes clear that plaintiffs seek to hold Centene liable based not on Centene's own conduct, as required by Section 1983, but on *Centene's status* as a parent company to Centurion. The "nub" of plaintiffs' complaint against Centene, *see Iqbal*, 556 U.S. at 680, is that Centene owned and controlled Centurion and, therefore, should be liable for Centurion's conduct, *see* D.I. 1 at ¶¶ 94-104. That theory, however, is foreclosed by the established rule that federal constitutional claims under Section 1983 require active, personal participation by the defendant. One person or entity cannot be liable for the unconstitutional conduct or practices of another. *See Monell*, 436 U.S. at 691-92; *J.M.K.*, 372 F. 3d at 580.

Plaintiffs' claims against Centene depend on ignoring the laws of corporate separateness and holding Centene liable for Centurion's alleged unconstitutional actions and policies. Those theories of passive liability are foreclosed by federal law, and the claims against Centurion should be dismissed with prejudice.

## III. CENTENE IS NOT LIABLE FOR CENTURION'S CONDUCT UNDER DELAWARE LAW

Plaintiffs' attempt to hold Centene liable for Centurion's alleged conduct fails for a separate and independent reason: Delaware law does not impose liability on a parent company for the actions of its subsidiaries.

Like federal law, "Delaware law respects corporate formalities" in all but a few, "extremely limited circumstances." *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, 2017 WL 726660, at *3 (D. Del. Feb. 23, 2017) (quoting *O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *7 (Del. Super. Jan. 14, 2011)). A parent company can be held liable for a subsidiary's action in only three scenarios: (1) cases of fraud; (2) "when the subsidiary is merely an instrumentality or alter ego of the parent corporation," *O'Leary*, 2011 WL 379300, at *7; or (3) under the "agency theory," which requires a showing that a parent instigated the subsidiary's "specific acts" or "precise conduct" that allegedly caused the harm, *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998).

To survive a motion to dismiss, plaintiffs must plead facts sufficient to show "more than a sheer possibility" that Centene is liable for Centurion's actions under one of these extremely limited theories. *See Iqbal*, 556 U.S. at 678; *In re Washington Mut. Inc.*, 741 F. App'x 88, 92-93 (3d Cir. 2018) (applying *Iqbal/Twombly* pleading standard to dismiss conclusory alter ego allegations). Plaintiffs have not asserted a fraud claim, so only the "alter ego" and "agency" theories might apply. Plaintiffs' claim that Centene "controlled" Centurion is not based on plausible factual allegations; it relies on speculative and conclusory assumptions drawn from a few portions of Centene's 212-page Form 10-K. Those allegations are not sufficient to ignore the corporate boundaries between these two distinct legal entities.

### 1.  Centurion is a separate legal entity, not merely an alter ego or instrumentality of Centene.

"In order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that, in all aspects of the business, the [] corporations actually functioned as a single entity and should be treated as such." *Pearson,* 247 F.3d at 485. Under the "alter ego" theory, the parent's control over the subsidiary must be so dominant "that the subsidiary no longer has legal or independent significance of its own." *O'Leary*, 2011 WL 379300, at *7. Courts also "require an element of fraudulent intent in [the] alter ego test, as well as the traditional requirement that the corporation and its subsidiaries operated as a single economic entity . . . ." *Blair*, 720 F. Supp. 2d at 470 (citing *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008); *SRI Int'l, Inc. v. Intenet Sec. Sys., Inc.*, 2005 WL 851126, at *3 (D. Del. Apr. 13, 2005).

The Third Circuit considers seven factors when analyzing claims that a corporation acted as a single economic entity, including "adequacy of capitalization, overlapping directorates and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and subsidiary authority over day-to-day operations." *Brit. Tele.*, 356 F. Supp. 3d at 409 (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476 (3d Cir. 1988); *see also Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984). This list of factors is "not exhaustive and no single factor is dispositive," but "some combination is required, and an overall element of fraud, injustice, or unfairness must always be

present." *Blair*, 720 F. Supp. 2d at 471 (citing *Trevino*, 583 F. Supp. 2d at 529); *see also United States v. Golden Acres, Inc.,* 702 F. Supp. 1097, 1104 (D. Del. 1988)). The "fraud or injustice . . . must be found in the defendants use of the corporate form." *Blair*, 720 F. Supp. 2d at 473 (internal quotation marks omitted); *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989).

Plaintiffs cannot pierce the corporate veil under an alter ego theory. As an initial matter, Plaintiffs have not alleged any facts suggesting that Centene's reliance on a subsidiary to provide correctional healthcare services amounts to a "fraud or injustice" in the use of the corporate form. As reflected in the Form 10-K, Centene's reliance on subsidiaries is commonplace, not unique to its correctional healthcare services. Centene relies on subsidiaries to fulfill day-to-day operational responsibilities across all of its diverse healthcare business segments. *See supra*, 4-5 (citing and discussing Form 10-K). Plaintiffs have not plausibly alleged any "fraud or injustice" in Centene's use of the corporate form, and there is no basis for declaring Centene liable for Centurion's alleged conduct.

Further, plaintiffs have not plausibly alleged a "combination" of the Third Circuit's factors sufficient to support veil-piercing. Plaintiffs assert—based on misleading characterizations of the Form 10-K—that Centene "wholly controlled and operated" Centurion. The Court should not accept plaintiffs' characterization of the Form 10-K, but should consider its contents and decide for itself what the filing says.[7]

---

[7] *See Kelley*, 67 F. Supp. 3d at 280 ("Since the article is specifically referenced in the amended complaint, the Court need not accept plaintiff's characterization of the document, but it may consider the document itself."); *In re Lyondell Chem. Co.*, 491 B.R. at 50 ("[I]f allegations of a complaint are

Plaintiffs select citations to the Form 10-K do not show that Centurion was undercapitalized, lacked authority over its day-to-day operations, or was subject to "crippling control" by Centene. *Blair*, 720 F. Supp. 2d at 473; *see also Brit. Tele.*, 356 F. Supp. 3d at 409. Instead, considered in its entirety, the form reflects ordinary corporate oversight across Centene's various subsidiaries and business segments. It is true, though unremarkable, that Centene relies on an overarching workforce-development strategy, maintains a central quality control program for its Managed Care segment, has programs and policies promoting a culture of ethics and compliance across its business segments, and earns revenues from Centurion and its other subsidiaries. *See supra*, 4-5 (citing Form 10-K). These allegations reflect ordinary parent-subsidiary relationships, not extraordinary control or "fraud and injustice" that could justify ignoring corporate forms.

Importantly, none of plaintiffs' allegations can support the required *plausible inference*—as opposed to mere possibility—that Centurion is Centene's "alter ego." Plaintiffs do not contend that Centurion is undercapitalized. Their citation to the DDOC-Centurion Agreement, which provides a source of revenue for Centurion and requires Centurion to maintain adequate insurance, defeats any plausible inference of undercapitalization. And there are no allegations to support the Third Circuit's critical alter-ego factors, such as assertions that Centene and Centurion have overlapping directors or officers, that the two companies have blended record keeping or bank accounts, that Centurion is unduly dependent on parental financing, or that

---

contradicted by documents that are part of the complaint, the document, and not the allegations, controls, and the court need not accept such allegations as true.").

Centurion lacks control over its day-to-day correctional healthcare activities. *See Brit. Tele.*, 356 F. Supp. 3d at 409. There are no factual allegations to support a plausible inference that Centene asserted total authority over the day-to-day operations of Centurion and its medical providers actually caring for inmates in DDOC custody.

At bottom, plaintiffs assert that Centene owns and relies on subsidiaries, like Centurion, to conduct certain aspects of its business. So do thousands of other parent corporations, and those corporate forms are respected by federal courts. *See Bestfoods*, 524 U.S. at 69. Centene's reliance on subsidiaries is not a basis for imposing liability for a subsidiary's actions.

### 2. Centurion does not act as Centene's "agent" when providing correctional healthcare to inmates in DDOC's custody.

Finally, plaintiffs cannot shift Centurion's liability to Centene under an "agency" theory. Under that theory, "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions." *Brit. Tele.*, 356 F. Supp. 3d at 409 (quoting *T-Jat Sys. 2006 Ltd. v. Expedia, Inc (DE)*, 2017 WL 896988, at *6 (D. Del. Mar. 7, 2017)); *see also StrikeForce Tech., Inc. v. PhoneFactor,Inc.*, 2013 WL 6002850, at *5 (D. Del. Nov. 13, 2013). "[O]nly the conduct shown to be instigated by the parent may be attributed to the parent." *C.R. Bard, Inc.*, 997 F. Supp. at 560. Plaintiffs must plausibly allege "an arrangement between the two corporations so that one acts on behalf of the other and within usual agency principles," and second, "the arrangement must be relevant to the plaintiff's claim of wrongdoing." *Phoenix Canada,* 842 F.2d at 1477;

This requires particularized allegations of intentional agency conduct on specific actions, as opposed to generalized allegations of "control" unrelated to the allegedly actionable conduct. For example, in *British Telecommunications*, a patent-infringement case, the district court found sufficient "agency" allegations where plaintiffs specifically alleged that the parent company: (1) publicly represented that the allegedly infringing services of the subsidiaries were the parent's proprietary brands, (2) provided the network and technology to support the subsidiary's infringing products and services, (3) shared user information with other subsidiary companies, (4) directly hired and fired officers of its subsidiaries, (5) shared officers and directors with its subsidiaries, and (6) relied on a system in which subsidiary employees reported directly to the parent's CEO rather than the subsidiary's board of directors. 356 F. Supp. 3d at 409-410. Those detailed allegations presented "a plausible factual scenario of close coordination and a joint strategy for the use and deployment of technology and use information that are at the heart of the" subject patents. *Id.* at 410.

There are no such plausible allegations of "close coordination" or "joint strategy" here. Plaintiffs do not allege that Centene is "directing" or "instigating" specific treatment decisions by Centurion's medical providers or "controlling" Centurion's policies or practices for delivering healthcare to DDOC inmates. *See StrikeForce*, 2013 WL 6002850 at *5 ("only the conduct shown to be instigated by the parent may be attributed to the parent."). Instead, plaintiffs allege that Centurion is subject to ordinary, high-level coordination and by its parent company. Such routine

oversight does not make Centene an "agent" for any and all decisions made or actions taken by Centurion. Centene cannot be held liable for Centurion's alleged constitutional violations.

## CONCLUSION

The nub of plaintiffs' complaint is that their medical needs were not met by DDOC and its healthcare contractors, Centurion and VitalCore. Plaintiffs' remedy for allegedly deficient medical care, if they are entitled to one, is a suit against the healthcare provider, Centurion, not against Centurion's parent company. Plaintiffs cannot state a claim for relief against Centene, and well-established constitutional and corporate law forbid transferring liability for Centurion's actions to Centene.

The Court should dismiss the claims against Centene with prejudice.


Respectfully Submitted,

**MARKS, O'NEILL, O'BRIEN DOHERTY & KELLY, P.C.**                    **BRADLEY, ARANT, BOULT, CUMMINGS, LLP**

/s/ Dawn C. Doherty                                   /s/ Michael J. Bentley
Dawn C. Doherty, Esquire (ID No. 3164)    Michael J. Bentley, Esquire (*Pro Hac Vice*)
Brett T. Norton, Esquire (ID No. 5559)    Erin D. Saltaformaggio, Esquire (*Pro Hac Vice*)
300 Delaware Avenue, Suite 900             188 E. Capitol Street
Wilmington, Delaware 19801                 Suite 1000, One Jackson Place
(302) 658-6538                             Jackson, Mississippi 39201
Ddoherty@moodklaw.com                      (601) 948-8000
Bnorton@moodklaw.com                       Mbentley@bradley.com
                                           Esaltaformaggio@bradley.com

*Attorneys for Defendants Centene Corporation and Centurion of Delaware, LLC*

DATED: December 11, 2023