**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HARRY SAMUEL, CHRISTOPHER ROBERT DESMOND, ARTHUR GOVAN, Individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 23-1134-JLH |
| v. | ) ) ) | |
| CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH, BUREAU CHIEF MICHAEL RECORDS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
BY DEFENDANTS TERRA TAYLOR, CLAIRE M. DEMATTEIS, MONROE B.
HUDSON, JR., DR. AWELE MADUKA-EZEH, AND MICHAEL RECORDS**

SAUL EWING LLP

James D. Taylor, Jr. (#4009)
Marisa R. De Feo (No. 6778)
SAUL EWING LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19810
302-421-6800
james.taylor@saul.com
marisa.defeo@saul.com

1

51748740.1

James A. Morsch, *admitted pro hac vice*
161 N. Clark St., Suite 4200
Chicago, IL 60601
(312) 876-7100
jim.morsch@saul.com

Ryan M. Jerome, *admitted pro hac vice*
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
(212) 980-7200
ryan.jerome@saul.com.

Dated: February 9, 2024

*Counsel for Defendants Terra Taylor, Claire M. DeMatteis, Monroe B. Hudson, Jr., Dr. Awele Maduka-Ezeh, and Michael Records*

2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    I.    THE COMPLAINT ........................................................................................ 2

        A. ALLEGATIONS OF CENTENE'S AND VITALCORE'S PROVISION OF HEALTHCARE ............................................................................................. 2

        B.  ALLEGATIONS SPECIFIC TO THE DOC DEFENDANTS ........................... 3

        C.  PURPORTED CAUSES OF ACTION AGAINST THE DOC DEFENDANTS ............................................................................................................... 4

ARGUMENT ............................................................................................................... 5

    II.    PLAINTIFFS FAIL TO STATE A CLAIM ....................................................... 5

        A.  STANDARD OF REVIEW ............................................................................ 5

        B.  PLAINTIFFS' ALLEGATIONS AGAINST THE DOC DEFENDANTS FAIL TO SATISFY THIS COURT'S NOTICE PLEADING STANDARD ............. 6

        C.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER 42 U.S.C. § 1983 ............................................................................................................ 7

     1.  PLAINTIFFS DO NOT ALLEGE THAT ANY OF THE DOC DEFENDANTS POSSESSED ACTUAL KNOWLEDGE OF PLAINTIFFS' MEDICAL NEEDS ..... 8

     2.  PLAINTIFFS DO NOT ALLEGE THAT ANY OF THE DOC DEFENDANTS WERE INTENTIONALLY INDIFFERENT TO PLAINTIFFS' MEDICAL NEEDS ........... 9

     3.  PLAINTIFFS GOVAN AND DESMOND DO NOT ALLEGE SERIOUS OR EXTREME DEPRIVATION OF CARE .................................................... 10

     4.  PLAINTIFFS FAIL TO ALLEGE A POLICY OR PRACTICE DIRECTLY CAUSING CONSTITUTIONAL HARM .................................................... 11

        D.  PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FACTS TO OVERCOME THE DOC DEFENDANTS' IMMUNITY FROM SUIT ........ 13

        E.  PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES REQUIRED BEFORE FILING SUIT ........................................................ 16

i

F. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR NEGLIGENT HIRING, SUPERVISION, AND RETENTION AGAINST THE DOC DEFENDANTS ............................................................................................ 17

III.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN ............... 18

A. THE PROPOSED CLASS DEFINITION DOES NOT UTILIZE OBJECTIVE CRITERIA ............................................................................................ 19

B. THE PROPOSED DEFINITION IS OF AN IMPROPER FAIL-SAFE CLASS ............................................................................................................ 21

CONCLUSION ....................................................................................................... 22

51748740.1

# TABLE OF AUTHORITIES

CASES

*Adger v. Coupe*,
    2022 WL 777196 (3d Cir. Mar. 14, 2022) ....................................................6, 11, 12

*Adger v. Gov. John Carney*,
    2021 WL 1198723 (D. Del. Mar. 30, 2021), 2022 WL 777196 ......................12, 13

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
    No. CV 18-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019) ...........................5, 7

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ...............................................................................................22

*Arunachalam v. Int'l Bus. Machines Corp.*,
    No. CV 20-1020-LPS, 2021 WL 7209362 (D. Del. Dec. 29, 2021) ........................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................6

*Bates v. Caesar Rodney Sch. Dist.*,
    2018 WL 11360454 (Del. Super. Ct. Nov. 30, 2018) ...........................................16

*Beers-Capitol v. Whetzel*,
    256 F.3d 120 (3d Cir. 2001) ..................................................................................11

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ..................................................................................20

*Colburn v. Upper Darby Twp.*,
    946 F.2d 1017 (3d Cir. 1991) ................................................................................10

*Cook v. Wetzel*,
    2015 WL 2395390 (E.D. Pa. May 20, 2015) ..........................................................7

*Davis v. Neal*,
    2023 WL 5289445, (D. Del. Aug. 17, 2023) ..........................................................6

*Doe v. Trinity Logistics, Inc.*,
    2018 WL 1610514 (D. Del. April 3, 2018)......................................................20, 21

*Durham v. Kelley*,
    82 F.4th 217 (3d Cir. 2023) ...................................................................................13

51748740.1

*Durmer v. O'Carroll,*
    991 F.2d 64 (3d Cir. 1993)..................................................................................................10

*Estelle v. Gamble,*
    429 U.S. 97 (1976)......................................................................................................8, 10

*Farmer v. Brennan,*
    511 U.S. 825 (1994).........................................................................................................8

*Fields v. Dep't of Correction,*
    2016 WL 7105930 (D. Del. Dec. 2, 2016)........................................................................9

*Greenfield for Ford v. Budget of Delaware, Inc.,*
    2017 WL 5075372 (Del. Super. Ct. Oct. 31, 2017).......................................................17

*Gutierrez v. Advanced Student Transportation, Inc.,*
    2015 WL 4460342 (Del. Super. Ct. July 14, 2015)..................................................15, 16

*Hardwick v. Nurse #1,*
    2017 WL 4532192 (D. Del. Oct. 10, 2017)..................................................................6, 10

*Hart v City of Philadelphia,*
    779 F. App'x 121 (3d Cir. 2019)..............................................................................6, 10, 11

*J.L. v. Barnes,*
    33 A.3d 902 (Del. Super. Ct. 2011)..................................................................................15

*Jackson v. Se. PA Transp. Auth.,*
    260 F.R.D. 168 (E.D. Pa. 2009)......................................................................................20

*Lamont v. New Jersey,*
    637 F.3d 177 (3d Cir. 2011).............................................................................................14

*Marcus v. BMW of North America LLC,*
    687 F.3d 583 (3d Cir. 2021).......................................................................................20, 21

*Martin ex rel. of Est. of Martin v. State,*
    2001 WL 112100 (Del. Super. Ct. Jan. 17, 2001).........................................................15

*Matthews v. Booth,*
    2008 WL 2154391 (Del. Super. Ct. May 22, 2008)...................................................17, 19

*Melo v. Hafer,*
    912 F.2d 628 (3d Cir. 1990).............................................................................................13

*Messner v. Northshore University HealthSystem,*
    669 F.3d 802 (7th Cir. 2012)...........................................................................................21

iv

*Miller v. Corr. Officer Berrios*,
    2023 U.S. Dist. LEXIS 84419 (D.N.J. May 15, 2023) ..........................................................17

*Mills v. Pivot Occupational Health*,
    2022 WL 610781 (D. Del. Feb. 15, 2022) ...............................................................................18

*Moleski v. Cheltenham Twp.*,
    No. CIV.A. 01-4648, 2002 WL 32349132 (E.D. Pa. Apr. 30, 2002) ......................................7

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ...................................................................................................................13

*Parkell v. Danberg*,
    833 F.3d 313 (3d Cir. 2016) ..............................................................................................10, 11

*Patel v. Sunvest Realty Corp.*,
    No. 2018 WL 4961392 (Del. Super. Ct. Oct. 15, 2018) ........................................................18

*Peroza-Benitez v. Smith*,
    994 F.3d 157 (3d Cir. 2021) ............................................................................................13, 14

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ....................................................................................................5

*Rinaldi v. United States*,
    904 F.3d 257 (3d Cir. 2018) ..................................................................................................16

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ...............................................................................................5

*Rode v. Dellarciprete*,
    845 F.2d 1195 (3d Cir. 1988) ..................................................................................................9

*Saucier v. Katz*,
    533 U.S. 194 (2001) ...............................................................................................................14

*Schramm v. Mayrack*,
    2023 WL 6387889 (D. Del. Sept. 29, 2023) ..........................................................................13

*Sharp v. Johnson*,
    669 F.3d 144 (3d Cir. 2012) ..................................................................................................14

*Sussex County v. Morris*,
    610 A.2d 1354 (Del. 1992) ....................................................................................................15

*West v. Atkins*,
    487 U.S. 42 (1988) .................................................................................................................14

v

*White v. Napoleon,*
    897 F.2d 103 (3d Cir. 1990) ........................................................................9

*Wholaver v. Sorber,*
    2023 WL 7410423 (3d Cir. Nov. 9, 2023) .................................................8

*Williams v. Sec'y Pennsylvania Dep't of Corr.,*
    848 F.3d 549 (3d Cir. 2017) ....................................................................14

*Zarichny v. Completer Payment Recovery Systems, Inc.,*
    80 F. Supp. 3d 510 (E.D. PA. 2015) ...................................................21, 22

## STATUTES

10 Del. C. § 4001 ...........................................................................................15

42 U.S.C. § 1983 ...................................................................................... passim

Prisoner Litigation Reform Act ....................................................................16

## OTHER AUTHORITIES

Eighth Amendment ................................................................................. passim

Eleventh Amendment .....................................................................................13

Fourteenth Amendment ........................................................................1, 4, 7, 8

Fed. R. Civ. P. 8 ..................................................................................... passim

Fed. R. Civ. P. 12 ................................................................................... passim

Fed. R. Civ. P. 23 ................................................................................... passim

## NATURE AND STAGE OF PROCEEDINGS

This is a putative class action seeking to recover damages arising from the alleged denial of medical care to three inmates at the Delaware Department of Correction ("DOC") facility in Smyrna.  As Plaintiffs' Complaint (D.I. 1) alleges, DOC contracted with two medical providers to provide medical diagnoses and treatment to inmates.  Plaintiffs assert claims against those providers and current and former DOC officials alleging they were deliberately indifferent to Plaintiffs' medical needs. As to Defendants Acting Commissioner Taylor, Former Commissioner DeMatteis, Former Commissioner Hudson, Medical Director Dr. Maduka-Ezeh and Bureau Chief Records (collectively, the "DOC Defendants"),  Plaintiffs claim they (1) are liable under 42 U.S.C. § 1983 for violating Plaintiffs' Eighth and Fourteenth Amendment rights, and (2) are liable for negligent hiring, supervision, and retention. Plaintiffs seek an order declaring this case as a class action, enjoining Commissioner Taylor from delaying and denying treatment to inmates and using for-profit companies to provide correctional healthcare services, ordering "sentence reductions," and awarding compensatory and punitive damages, costs, and attorneys' fees.

## SUMMARY OF ARGUMENT

The DOC Defendants move, pursuant to Rules 8(a) and 12(b)(6), to dismiss Plaintiffs' Complaint, or alternatively, to strike Plaintiffs' proposed class definition pursuant to Rules 12(f) and 23(d)(1)(D). Plaintiffs' Complaint should be dismissed against the DOC Defendants for the following reasons.

1. Plaintiffs improperly group the DOC Defendants together in their allegations, and do not allege the prerequisites of a deliberate indifference claim: knowledge by the DOC Defendants of Plaintiffs' medical conditions, intentional indifference to them, and resulting injuries.  Plaintiffs' negligent hiring and supervision claims fare no better. The DOC Defendants are not employers, and there are no allegations they

1

knew about Centene's or VitalCore's purported deliberate indifference to Plaintiffs' medical needs.

2. The DOC Defendants enjoy qualified immunity from suit, and Plaintiffs fail to allege sufficient facts to defeat that immunity under Delaware law.

3. Even if Plaintiffs' claims were properly pled, Plaintiffs' proposed class definition is flawed and should be stricken. The Court should order Plaintiffs to revise their proposed class definition to add objective criteria so that would-be class members can be identified pursuant to Rule 23(c)(1)(B) and notified under Rule 23(c)(2) and (d)(1)(B) in the event a class is ever certified without having to try their individual cases on the merits.

## STATEMENT OF FACTS [1]

### I.    THE COMPLAINT

Plaintiffs are incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware. Compl. ¶¶ 8, 11, 14. According to Plaintiffs, Defendant Centurion of Delaware LLC ("Centurion") owned Defendant Centene Corporation ("Centene"), which contracted with the DOC to provide healthcare services from April 1, 2020, until June 30, 2023. Compl. ¶ 22. On July 1, 2023, Defendant VitalCore Health Strategies ("VitalCore") became the healthcare provider for the DOC. Compl. ¶ 24.

#### A.    Allegations of Centene's and VitalCore's Provision of Healthcare

Pursuant to the Centene contract, DOC required Centene to maintain certain staffing levels and to provide "comprehensive healthcare," including nurses, specialists, in-patient services, diagnostic, laboratory, and radiology services. Compl. ¶¶ 107, 109-117. Plaintiffs allege that Centene maintained insufficient staffing levels and did not provide adequate care in order to increase its own "profitability." Compl. ¶ 122. They further allege that Centene was noncompliant

---

[1] This summary of relevant facts assumes, for purposes of this Motion only, the truth of the allegations in the Complaint.

with the National Commission on Correctional Health Care ("NCCHC") baseline standards and required to take corrective action.   Compl. ¶¶ 124-25.   Plaintiffs do not allege the date or circumstances surrounding the alleged noncompliance, nor do they allege it occurred at a DOC facility or that any of the DOC Defendants were aware.

DOC contracted with VitalCore to provide healthcare services starting on July 1, 2023. Compl. ¶ 141.   Plaintiffs allege that VitalCore hired all of Centene's staff when it took over, Compl. ¶ 147, but that VitalCore did not remedy the alleged understaffing of the system, Compl. ¶ 150.   Plaintiffs allege that "[r]easonable discovery" will reveal that Plaintiffs were not given adequate care by VitalCore to increase its profitability. Compl. ¶ 152.

### B.   Allegations Specific to the DOC Defendants

Plaintiffs do not name DOC as a defendant. Instead, they have sued former and current DOC officers and employees, although it is unclear whether the claims are made against the DOC Defendants in their official or individual capacities.   Unlike their detailed allegations against Centene and VitalCore, Compl. ¶¶ 105-132, 133-154, Plaintiffs' allegations against the DOC Defendants focus on who they are, not what they allegedly knew or did (or did not do) with respect to Plaintiffs' medical needs or in connection with DOC's hiring, retention, and supervision of its medical providers.

As to Defendant Taylor, Plaintiffs allege she was appointed Acting Commissioner on July 6, 2023, and worked for the DOC for 26 years. Compl. ¶ 17.  As to Defendant Hudson, Plaintiffs allege he was appointed Commissioner in July 2021 and served in that role until he was replaced by Taylor.  Compl. ¶ 18.  Finally, as to DeMatteis, they allege she was appointed Commissioner in June 2019 until she was replaced by Hudson.  Compl. ¶ 19.  Plaintiffs make no other factual allegations as to Commissioners Taylor, Hudson, or DeMatteis.

3

As to Defendant Records, Plaintiffs allege he has served as Bureau Chief since November 8, 2021, where he has been involved in prisoner grievances regarding inadequate healthcare. Compl. ¶ 21, 89. No specific events involving Mr. Records are alleged in the Complaint. As to Defendant Maduka-Ezeh, Plaintiffs allege she has served as Medical Director since July 2018. Compl. ¶ 20. No specific events involving Maduka-Ezeh are alleged in the Complaint.

Plaintiffs seek to certify the following class under Rule 23(b)(1), (2) and (b)(3):

Persons incarcerated in Delaware correctional facilities with serious medical needs whose diagnosis or treatment was delayed or denied during the period April 1, 2020, through present (hereinafter 'time period.'), except that the class excludes those whose medical needs were denied or delayed pursuant to the Pain Management Initiative.

Compl. ¶¶ 156, 165. They claim that class members share common questions of law and fact, including whether Defendants operate a "constitutionally inadequate health care system," "unreasonably" delayed or delayed medical care, "withheld" medical care "as a form of punishment," "chronically understaffed" the healthcare system, engaged in "deliberate indifference to those owed a duty of care," and whether their "deliberate indifference" damaged the class. Compl. ¶ 161. Plaintiffs allege that Plaintiffs and the members of the putative class "have suffered and will continue to suffer grave and irreparable harm" unless the Court "orders Defendants to provide timely medical care for serious medical needs." Compl. ¶ 166.

### C. Purported Causes of Action Against the DOC Defendants

As to the DOC Defendants, Plaintiffs advance claims under 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment (Count I) and Negligent Hiring, Supervision and Retention (Count II). Compl. ¶¶ 167-180. As with their other allegations, these Constitutional counts lump all Defendants together. As to their negligent hiring, supervision, and retention claim, Plaintiffs allege Commissioners Taylor, DeMatteis, and Hudson were deliberately indifferent to

4

Plaintiffs' medical needs by hiring, failing to supervise, and retaining DOC's medical providers. Compl. ¶¶ 175, 177.

## ARGUMENT

## II.    PLAINTIFFS FAIL TO STATE A CLAIM

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Accordingly, a pleading must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her …." *See Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)) (emphasis in original); *Arunachalam v. Int'l Bus. Machines Corp.*, No. CV 20-1020-LPS, 2021 WL 7209362, at *8 (D. Del. Dec. 29, 2021) (dismissing complaint for "impermissible group pleading," because "it is impossible to discern which Defendants allegedly did what, where, or when").

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), one must "accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). But a "plaintiff must allege facts showing 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

5

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (2009).

### B. Plaintiffs' Allegations Against the DOC Defendants Fail to Satisfy This Court's Notice Pleading Standard

Plaintiffs' allegations against the DOC Defendants are vague and conclusory, and they do not meet the pleading standard of Rule 8(a). Indeed, for many of the DOC Defendants, Plaintiffs allege *zero* substantive facts whatsoever; instead, they simply make statements of law concerning the duties allegedly owed in their official capacities. *See* Compl. ¶¶ 47, 84, 88-92, 108. These allegations, which are largely comprised of bare legal conclusions, do not satisfy Rule 8(a). *See, e.g., Adger v. Coupe*, 2022 WL 777196, at *3 (3d Cir. Mar. 14, 2022) (complaint fails under Rule 8 where it merely "lists many defendants that engaged in generalized conduct").

Even assuming, *arguendo*, some of Plaintiffs' allegations are considered factual, they are still deficient under Rule 8(a), because they do not state the "conduct, time, place, and persons responsible" for the supposed deprivation of their constitutional rights. *Hardwick v. Nurse #1*, 2017 WL 4532192, at *3 (D. Del. Oct. 10, 2017); *see also Hart v City of Philadelphia*, 779 F. App'x 121, 125–26 (3d Cir. 2019) ("a defendant in a § 1983 action must have personal involvement in the alleged wrongs, and such personal involvement must be alleged with appropriate particularity").

In *Davis v. Neal*, for example, this Court dismissed a civil rights complaint against certain correctional officers and administrators where the complaint did not allege that those individuals were "personally involved in the assaults or their medical care after the assaults took place." 2023 WL 5289445, at *5 (D. Del. Aug. 17, 2023) (dismissing claims with prejudice where defendant has "complete lack of involvement in the incident that preceded Sturgis' inadequate medical care"). Here, likewise, there are no allegations that any of the DOC Defendants were personally

51748740.1

involved in Plaintiffs' medical care, and their claims thus lack the requisite particularity under Rule 8(a).

Plaintiffs' Complaint is further deficient under Rule 8(a) because it groups all defendants together without specifying what actions are asserted against which defendant.  For example, Plaintiffs allege that "Defendants" deprived them of their rights under the Eighth and Fourteenth amendments by not providing adequate healthcare. *See* Compl. ¶¶ 167-72. Absent allegations identifying specific conduct committed by the DOC Defendants, Plaintiffs' Complaint fails under Rule 8(a) and should be dismissed.  *See Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) ("allegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard").

### C.  Plaintiffs Fail to State a Cause of Action Under 42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983, as pertinent here, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, "[a] plaintiff may bring a §1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States." *See Moleski v. Cheltenham Twp.*, No. CIV.A. 01-4648, 2002 WL 32349132, at *2 (E.D. Pa. Apr. 30, 2002).  The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *Cook v. Wetzel*, 2015 WL 2395390, at *3 (E.D. Pa. May 20, 2015), states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel

7

and unusual punishments inflicted," U.S. Const. amend. VIII. The Eighth Amendment thus imposes on correctional officials a duty "to provide humane conditions of confinement." *Id*.

As explained in *Estelle v. Gamble*, 429 U.S. 97, 105, (1976), not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 105-6. In other words, to state a cause of action for violation of the Eighth Amendment, "a plaintiff must allege that he was incarcerated under conditions imposing a substantial risk of serious harm, and that the defendants were deliberately indifferent to that risk." *Wholaver v. Sorber*, 2023 WL 7410423, at *1 (3d Cir. Nov. 9, 2023). To establish deliberate indifference, the plaintiff must allege that "a defendant knew of and disregarded an excessive risk to inmate health and safety;" however, "[p]rison officials who knew of a substantial risk of harm are not liable 'if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* at *1 (quoting *Farmer v. Brennan*, 511 U.S. 825, 826 (1994)).

### 1. Plaintiffs Do Not Allege That Any of the DOC Defendants Possessed Actual Knowledge of Plaintiffs' Medical Needs

Plaintiffs do not allege that the DOC Defendants had ***actual*** knowledge of Plaintiffs alleged medical needs. Rather, they attempt to impute Centene's and VitalCore's staff's alleged knowledge of Plaintiffs' medical needs onto the DOC Defendants. This is fatal to their claims.

It is well-established that "[a]n individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Fields v. Dep't of Correction*,

2016 WL 7105930, at *3 (D. Del. Dec. 2, 2016) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)) (cleaned up). As Plaintiffs do not and cannot allege that any of the DOC Defendants knew about Plaintiffs' specific and individual medical needs, they cannot be found to have been deliberately indifferent to those needs, and thus, their § 1983 claims must be dismissed.

> **2.  Plaintiffs Do Not Allege That Any of the DOC Defendants Were Intentionally Indifferent to Plaintiffs' Medical Needs**

Even assuming, *arguendo*, that Plaintiffs alleged the DOC Defendants were aware of Plaintiffs' medical needs, there are no allegations that the DOC Defendants were ***intentionally*** indifferent to those needs. Courts in this circuit have been clear, "a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment," nor is a claim stated, "when a doctor disagrees with the professional judgment of another doctor." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Mr. Samuel was allegedly prescribed certain medications, but no antibiotics, Compl. ¶ 32, taken to the BayHealth Emergency Department, Compl. ¶ 35, and given a bone scan and colonoscopy, Compl. ¶ 38.  The remainder of the allegations related to him reveal nothing more than a disagreement with the type of treatment he did or did not receive.  As to Mr. Govan, Plaintiffs allege that he should have seen a urologist but was not taken to one. Compl. ¶ 41-48. Plaintiffs do not give the reason why he was not taken to a urologist, and instead, merely surmise that it was "wrongful." Finally, as to Mr. Desmond, Plaintiffs only allege that "Defendants," at an unspecified time, did not give him blood pressure medication because he made repetitive "sick calls," Compl. ¶ 51, and he allegedly suffers from certain medical conditions and has not received care to "check" for cancer.  Compl. ¶ 53.

These allegations do not rise to a constitutional violation, as "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Hardwick*, 2017 WL

4532192, at *4 (quoting *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016)). At best, the facts as alleged may suggest "an error in medical judgment," but that does not rise to the level of deliberate indifference needed to state a claim. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see e.g., Hart*, 779 F. App'x at 127 ("decision to discontinue a lotion prescribed by another doctor is not *per se* sufficient, and there are no facts alleged that support this action was done maliciously"); *Hardwick*, 2017 WL 4532192, at *3 (scheduling a plaintiff "a regular sick call instead of as an emergency," or providing a plaintiff with "medication, but not ice or ice packs" are not sufficient to allege deliberate indifference). In sum, Plaintiffs here, like those in *Estelle*, theorize that "more should have been done by way of diagnosis and treatment" and they "suggest [] a number of options that were not pursued," but this, as a matter of law, does not establish deliberate indifference. *Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment"). Accordingly, Plaintiffs' 42 U.S.C. § 1983 claim against them must be dismissed.

### 3. Plaintiffs Govan and Desmond Do Not Allege Serious or Extreme Deprivation of Care

For an inmate's condition to be considered sufficiently serious for purposes of the Eighth Amendment, the condition "must be such that a failure to treat can be expected to lead to *substantial* and unnecessary suffering, injury, or death." *Hart*, 779 F. App'x at 127 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)) (emphasis in original). In contrast to Plaintiff Samuel, who Plaintiffs allege suffers from terminal prostate and rectal cancer as a result of Centene's and VitalCore's alleged delay in his diagnosis and treatment, neither Plaintiff Govan nor Plaintiff Desmond allege serious or extreme suffering or an injury as a result of the alleged deprivation of their care.

10

For Mr. Govan, Plaintiffs simply allege that he has "urinary hesitation" and an elevated PSA. Plaintiffs do not allege that he has prostate cancer but instead speculate that him not seeing a urologist **may** result in prostate cancer.  Compl. ¶ 48.  Likewise, as to Mr. Desmond, Plaintiffs allege only that he has a "risk" of skin cancer and colon cancer, not that he was actually diagnosed with or suffers from these illnesses.  Compl. ¶ 53.  As explained in *Hart*, a plaintiff must allege that the failure to treat "can be expected to lead to substantial and unnecessary suffering," 779 F. App'x at 127.  Here, Plaintiffs merely speculate that it is plausible an injury may result in the future. Absent present suffering or injury that is serious in nature resulting from supposed inadequate treatment, Plaintiffs Govan's and Desmond's claims must be dismissed as a matter of law.

### 4.   Plaintiffs Fail to Allege a Policy or Practice Directly Causing Constitutional Harm

Notwithstanding that Plaintiffs fail to allege they were subjected to deliberately indifferent treatment, they likewise fail to establish the DOC Defendants "'maintained a policy, practice or custom which directly caused the constitutional harm,'" *Adger*, 2022 WL 777196, at *3 (quoting *Parkell*, 833 F.3d at 330); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) ("to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.").

Plaintiffs' allegations that such a policy or practice exists are wholly conclusory and inadequate to state a cause of action.  In *Adger*, the Court dismissed the plaintiffs' supervisory liability claim on the basis that the plaintiffs did not "identif[y] any direction, planning, or

11

guidance" and the "allegations that the named supervisory Defendants either received complaints or were aware of incidents of excessive force prior to the alleged violations" were conclusory. *Adger v. Gov. John Carney*, 2021 WL 1198723, at *6 (D. Del. Mar. 30, 2021), *aff'd in part, rev'd in part and remanded sub nom.  Adger*, 2022 WL 777196.  Similarly, here, Plaintiffs allege that certain of the DOC Defendants engaged in "policy development, strategic planning and decision making," Compl. ¶¶ 17, 21, but any allegations implying that the policy created a risk of violation of the Eighth Amendment are entirely speculative. Here, Plaintiffs' allegation that Centene and VitalCore instituted policies to maximize profits is not only, again, conclusory, but it is directly contradictory to the DOC's contracts which require healthcare providers to maintain adequate staffing levels, Compl. ¶ 107. Finally, the litany of other alleged examples of inadequate treatment, *see* Compl. ¶¶ 53-82, are not accompanied by any factually detailed allegation that the DOC Defendants were aware of such incidents.[2] As made clear in *Adger*, conclusory "allegations that the named supervisory Defendants either received complaints or were aware of incidents of excessive force prior to the alleged violations … do not suffice to state a claim that requires allegations of personal knowledge or acquiescence." *Adger*, 2021 WL 1198723, at *6.

Plaintiffs allege no facts establishing that the DOC Defendants directly or indirectly in a supervisory capacity were deliberately indifferent to Plaintiffs alleged medical needs and their claims must be dismissed.

---

[2] It is virtually impossible for the DOC Defendants to have been aware of each of the incidents, as one of them is not even alleged to have occurred in Delaware. *See* Compl. ¶ 62 (describing treatment of man in a New Jersey facility). *See also*, *Adger*, 2022 WL 777196, at *3 (explaining that a complaint does not comply with Rule 8 where it simply lists "many plaintiffs who suffered injuries that were inflicted by unidentified . . . employees").

**D. Plaintiffs Have Not Alleged Sufficient Facts to Overcome the DOC Defendants' Immunity from Suit**

Under the Eleventh Amendment, suits against states are precluded in federal court. *See Schramm v. Mayrack*, 2023 WL 6387889, at *4 (D. Del. Sept. 29, 2023). This protection from suit is extended to state officers acting in their official capacities, and thus, "state officers, if sued in their official capacities for retrospective relief, are not "persons" subject to suit under § 1983." *Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023). To the extent claims for monetary damages are advanced against the DOC Defendants in their official capacities, they must be dismissed with prejudice. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (explaining that the Eleventh Amendment "bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.").

When sued in their individual capacities, government officials are shielded from liability under the doctrine of qualified immunity, "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In determining whether a government official is entitled to qualified immunity, courts "first determine whether a right has been violated," and if so, courts "then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017). First, and foremost, as explained *supra*, Plaintiffs failed to allege that the DOC Defendants violated their constitutional rights, and thus, the DOC Defendants are entitled to qualified immunity. Nevertheless, even assuming, *arguendo*, that the DOC Defendants did violate Plaintiffs' constitutional rights, the right allegedly violated was not "clearly established, such that

'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Peroza-Benitez*, 994 F.3d at 165 (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011)).

A right is "clearly established" only when it has been defined with "the appropriate level of specificity," *id.* (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)), and at the time of the alleged violation, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," *id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Plaintiffs' constitutional claim against the DOC Defendants is that they failed to supervise Centene and VitalCore and terminate their contracts, but there is nothing to suggest that the DOC Defendants should have been aware that their supposed conduct was a constitutional violation. While Plaintiffs are correct that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody," Compl. ¶ 86 (quoting *West v. Atkins*, 487 U.S. 42, 56 (1988)), the use of an outside vendor to provide healthcare services is not in and of itself impermissible, let alone a constitutional violation. DOC issued contracts to Centene and VitalCore requiring the provision of adequate care and staffing levels, and DOC's (and its employees') belief that such contractual requirements would not lead to a constitutional violation was objectively reasonable.

The DOC Defendants are also entitled to immunity under the Delaware Tort Claims Act ("DTCA"), which provides that public employees are immune from suit when:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

14

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence. 10 Del. C. § 4001 *See also, J.L. v. Barnes*, 33 A.3d 902, 914 (Del. Super. Ct. 2011).

The DOC Defendants' conduct, to the extent any is even factually alleged, is discretionary and falls within the protection of the DTCA. Conduct is considered "discretionary" where "there is no hard and fast rule as to [the] course of conduct that one must or must not take." *Id.* (quoting *Martin ex rel. of Est. of Martin v. State*, 2001 WL 112100, at *5 (Del. Super. Ct. Jan. 17, 2001)). By contrast, "ministerial" acts, which are excluded from the DTCA, "'involve less in the way of personal decision or judgment,' are more routine, and typically involve conduct directed by mandatory rules or policies." *Id.* (quoting *Sussex County v. Morris*, 610 A.2d 1354, 1359 (Del. 1992)). For example, in *Gutierrez v. Advanced Student Transportation, Inc.*, the plaintiff alleged that she was attacked on a school bus and the school district was negligent in hiring staff to supervise children on the school bus. 2015 WL 4460342 (Del. Super. Ct. July 14, 2015). The Court explained that while the decision to hire a bus company was ministerial, the claim that a different bus company should been hired implicates a discretionary act. *Id.* at *5. Similarly, here, the decision to hire a healthcare provider generally may be considered ministerial, but the decision as to which healthcare provider to hire is unquestionably a discretionary act, rendering the DOC Defendants immune from suit for that decision.

Moreover, there are no facts alleged in the Complaint establishing that the DOC Defendants were personally involved in the decision to hire the providers, acted without good faith or committed gross or wanton negligence in doing so. The burden to plead lack of good faith and gross negligence lies with the plaintiff. *See Gutierrez*, 2015 WL 4460342, at *6. Under Delaware law, "gross negligence is a higher level of negligence representing an extreme departure from the

ordinary care standard of care" and "[a] person acts wantonly when with no intent to cause harm, she performs an act so unreasonable and dangerous that the person knows or should have known that there is an eminent likelihood of harm which can result." *Bates v. Caesar Rodney Sch. Dist.*, 2018 WL 11360454, at *6 (Del. Super. Ct. Nov. 30, 2018), *aff'd*, 263 A.3d 127 (Del. 2021) (citations and marks omitted). As discussed *supra*, there are no allegations whatsoever establishing the DOC Defendants' knowledge of Centene's and VitalCore's supposed deliberate indifference to inmates' constitutional rights either before or after their hiring by DOC.

To the contrary, Plaintiffs admit that DOC's contracts with the medical providers required, *inter alia*, adequate staffing, Compl. ¶ 107, and the provision of "comprehensive healthcare services," Compl. ¶ 109. Thus, according to Plaintiffs' own allegations, DOC and its employees acted in good faith to procure adequate healthcare services.

### E. Plaintiffs Failed to Exhaust Administrative Remedies Required Before Filing Suit

The Prisoner Litigation Reform Act ("PLRA") requires inmates to exhaust the prison's internal grievance procedures prior to filing an action against the prison or its officials. *See Rinaldi v. United States,* 904 F.3d 257, 265 (3d Cir. 2018). Plaintiffs in this case are incarcerated individuals subject to the PLRA. Compl. ¶¶ 8, 11, 14. The PLRA "exhaustion requirement" serves as a deterrent for frivolous litigation by creating a mandatory requirement that: "[n]o action shall be brought with respect to prison conditions under section 1983, or any other Federal law," by a prisoner confined in any correctional facility until administrative remedies can be shown to be exhausted. *Miller v. Corr. Officer Berrios*, 2023 U.S. Dist. LEXIS 84419, *1 (D.N.J. May 15, 2023).

Plaintiffs have not alleged that they pursued any of the available administrative remedies, let alone completed them, before filing suit. This is fatal to Plaintiffs claims and requires dismissal.

16

51748740.1

### F. Plaintiffs Fail to State a Cause of Action for Negligent Hiring, Supervision, and Retention Against the DOC Defendants

Nor can the DOC Defendants be liable for negligent hiring, supervision, or retention. They are not employers, and there are no allegations the DOC Defendants knew about the other defendants purported deliberate indifference to Plaintiffs' medical needs during their contracts with DOC.

Under Delaware Law, "[a]n action for negligent supervision is based upon the employer's negligence in failing to exercise due care to protect third parties from the foreseeable tortious act of an employee." *Matthews v. Booth*, 2008 WL 2154391, at *3 (Del. Super. Ct. May 22, 2008), *aff'd sub nom. Matthews v. Food Lion, L.L.C.*, 970 A.2d 257 (Del. 2009). Thus, "[a]n employer is liable for negligent hiring or supervision where the employer is negligent in giving improper or ambiguous orders or in failing to make proper regulations, or in the employment of improper persons, thus creating an unreasonable risk of harm to others." *Id.*

Here, the DOC Defendants are not employers of the medical providers in question. Rather DOC, the party that entered into contracts with Centene and VitalCore, is their employer. The DOC Defendants therefore cannot be held liable for DOC's supposedly negligent hiring, supervision, or retention of those providers. *See Greenfield for Ford v. Budget of Delaware, Inc.*, 2017 WL 5075372, at *4 (Del. Super. Ct. Oct. 31, 2017), *aff'd sub nom. Greenfield as Next Friend for Ford v. Miles*, 211 A.3d 1087 (Del. 2019) ("Delaware law recognizes claims of negligent hiring and supervision of employees, but that liability is imposed on the employer where the employer is negligent, not on supervisors."). Thus, any claim for negligence against the DOC Defendants must be dismissed. *See, e.g.*, *Mills v. Pivot Occupational Health*, 2022 WL 610781, at *4 (D. Del. Feb. 15, 2022), *aff'd*, 2022 WL 17984476 (3d Cir. Dec. 29, 2022) (dismissing claim against individual officers of the Delaware River & Bay Authority).

17

Second, even if claims for negligent hiring, supervision, and retention could be advanced against the DOC Defendants, despite their qualified immunity and their status as supervisors (not employers), the claim further fails because Plaintiffs do not allege that they had the requisite notice of Centene's and VitalCore's alleged misconduct. To state a claim for negligent hiring, "[t]he plaintiff must … allege the employer was on notice of the employee's risk of tortious behavior *at the time the employer hired the employee.*" *Patel v. Sunvest Realty Corp.*, No. 2018 WL 4961392, at *6 (Del. Super. Ct. Oct. 15, 2018) (emphasis in original). The Complaint is devoid of allegations concerning Centene's and VitalCore's conduct prior to their hiring by DOC, and there are no allegations that the DOC Defendants were on notice that the two providers could not fulfill their contractual obligations to DOC.  Indeed, as detailed *supra*, DOC specifically prohibited them from engaging in the conduct Plaintiffs allege Centene and VitalCore committed.  Accordingly, Plaintiffs' claim for negligent hiring must be dismissed.

Likewise, claims for negligent retention and supervision require notice of behavior that risks injury to third parties. Here, there are no allegations that the DOC Defendants were aware that Centene and VitalCore were engaging in any conduct that could result in a violation of Plaintiffs' constitutional rights. While Plaintiffs allege a litany of supposed incidents within DOC facilities, *see* Compl. ¶¶ 55-82, and a supposed NCCHC audit of Centene, Compl. ¶¶ 124-25, they do not allege that the DOC Defendants were on notice.  Plaintiffs' omission is glaring, and the claim must be dismissed. *See, e.g.*, *Matthews*, 2008 WL 2154391, at *3 (denying negligent retention and supervision claim where there was "no evidence that any supervisor or other member of the management of the Food Lion was aware of that information . . . of [the defendant]'s propensity to engage in the type of conduct that caused Plaintiff's injuries.").

## III.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN

If the Court does not dismiss the Complaint against the DOC Defendants pursuant to Rule 12(b)(6), it should strike the proposed class definition, Compl. ¶ 156 and require Plaintiffs to proceed on their individual claims alone.  Rule 12(f) provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).  Rule 23(d) gives the Court authority to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  *See* Fed. R. Civ. P. 23(d)((1)(D).

As set forth in the Motion to Strike filed by Defendant Centene (D.I. 24), the proposed class is unworkable under Rule 23(b)(3) because the claims of each member of the putative class would turn on individual facts (each class member's unique medical condition, needs, diagnoses and treatment, and injury from delayed or denied care) that would predominate over common ones and make the adjudication of both liability and the awarding of damages impossible on a class-wide basis.  The DOC Defendants will not repeat those arguments here[3] but instead focus on why the proposed definition itself is vague, overbroad, and improper given the Court's duties under Rule 23(c)(1)(B) to define the class using objective criteria and to notify class members of their involvement in a class action and under Rule 23(c)(2) and (d)(1)(B) before actually adjudicating the merits of the class's claims.

### A.  The Proposed Class Definition Does Not Utilize Objective Criteria

Because Rule 23(c) requires the Court to notify members of the putative class of any order certifying a Rule 23(b)(3) class or settling the money damages aspect of the case, the identities of

---

[3] The DOC Defendants reserve the right to oppose any Motion to Certify filed later in this case by Plaintiffs with these and additional arguments.

members of the class must be "ascertainable."  *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).  As the Third Circuit explained in *Marcus v. BMW of North America LLC*, 687 F.3d 583, 594 (3d Cir. 2021), ascertainability "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action."  In order for a class to be ascertainable, the class must be precisely defined "with reference to objective criteria" and "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Doe v. Trinity Logistics, Inc.*, 2018 WL 1610514 (D. Del. April 3, 2018), citing *Jackson v. Se. PA Transp. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009).

Plaintiff's proposed class definition does not utilize objective criteria that could be used to feasibly identify the members of the putative class.  First, to be in the class, an inmate would need to have a "serious medical need", but that term is neither defined in the Complaint nor amenable to objective criteria as highlighted by Plaintiffs' own allegations.  For example, Plaintiff Govan complains of "urinary hesitation" and "an elevated PSA."  Does that constitute a "serious medical need"?  What medical conditions do and do not qualify an inmate for membership in the class?  Secondly, to be a member of the class an inmate must have a "diagnosis or treatment [that] was delayed or denied" by Defendants.  If an inmate complains of "urinary hesitation" and is given a PSA test the next day, has his diagnosis been "delayed"?  How many days must elapse between when an inmate complains of some condition and that condition is diagnosed or treated by DOC's medical providers for the inmate to be in the putative class?

The same problem exists for the "denial" of diagnosis or treatment prong of Plaintiff's proposed class definition.  If DOC's medical provider decides in its professional judgment that "urinary hesitation" is the result of something other than prostate cancer and does not order a PSA test, is that inmate a member of the class?  If the inmate is given medicine to treat the "urinary

20

hesitation but not given radiology or surgery for prostate cancer, is he a member of the class?  How does the Court decide which DOC inmates are in the class and which are not?  Ultimately, the Court would have to utilize some type of subjective criteria in determining which DOC inmates are members of the class and which are not.  That would be improper.  In sum, the putative class, as defined by Plaintiffs, would not provide the Court with an administrative means of readily ascertaining who is in the putative class and who is not because the definition lacks objective criteria.

### B.  The Proposed Definition is of an Improper Fail-Safe Class

A closely related problem with the proposed class is that it is a fail-safe class, *i.e.*, membership in the putative class depends on a finding that an inmate with serious medical needs has had their medical needs denied or delayed.  A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Zarichny v. Completer Payment Recovery Systems, Inc.*, 80 F. Supp. 3d 510, 623 (E.D. PA. 2015), *citing, Messner v. Northshore University HealthSys*tem, 669 F.3d 802, 825 (7th Cir. 2012).

Given the Court must provide notice of class certification before the merits of the case are decided, a fail-safe class is improper because, by definition, "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,'." *Marcus*, 687 F.3d at 593 (3d Cir. 2012) (stating fail-safe classes are "inappropriate.") *See also Trinity Logistics*, 2018 WL 1610514, at *11 ("Where a proposed class requires the court to address the central issue of liability in the case, the class definition may be untenable. … When a class definition involves an ultimate issue of liability, the court must conduct mini-hearings in order to determine the members of the class, rendering the process administratively infeasible and, therefore, unascertainable."); William H. Rubenstein, *Newberg on Class Actions* § 3:6 (5th ed.) ("Class definitions that require a court to decide the merits of prospective individual class members' claims to determine class

21

membership—sometimes referred to as "fail-safe" classes—may also run afoul of the definiteness requirement.")

Here, membership in the class proposed by Plaintiffs would depend on the outcome of the merits of the putative class members' individual claims, namely whether their medical care was denied or delayed.  Not only would the Court need to develop objective criteria for identifying inmates who meet this proposed class definition, but it would have to review each inmate's medical file to determine whether his diagnosis or treatment was denied or delayed.  This is no different than adjudicating the ultimate issue in the deliberate indifference claim in this case.

While Plaintiffs also have alleged a negligent hiring, supervision, and retention claim in their Complaint, they propose the same class definition for that claim, so the Court could not avoid adjudicating inmate claims as part of the class certification notice process.  Doing so would "create[e] what the Supreme Court called "one-way intervention," *Zarichny*, at 624, citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). As the Court explained, "That is to say, either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims." *Zarichny*, at 624.

For these additional reasons, Plaintiffs' proposed class definition should be stricken by the Court.  Alternatively, because the Court has the discretion to allow Plaintiffs to amend their proposed class definition, the Court should order Plaintiffs to revise their proposed class definition in an amended pleading.  Doing so will likely narrow the amount of discovery needed in the case, avoid satellite litigation over membership in the putative class, and save judicial and the parties' limited resources.

## **CONCLUSION**

22

For these reasons, the DOC Defendants respectfully request the Court grant their Motion to Dismiss the Complaint and dismiss the Complaint as asserted against them, with prejudice. Alternatively, the Court should grant their Motion to Strike and strike Plaintiffs' class allegations and grant them such other and further relief as it deems just and proper.

Respectfully submitted,

**SAUL EWING LLP**

*/s/Marisa R. De Feo*
James D. Taylor, Jr. (#4009)
Marisa R. De Feo (No. 6778)
SAUL EWING LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19810
302-421-6800
james.taylor@saul.com
marisa.defeo@saul.com

James A. Morsch, *admitted pro hac vice*
161 N. Clark St., Suite 4200
Chicago, IL 60601
(312) 876-7100
jim.morsch@saul.com

Ryan M. Jerome, *admitted pro hac vice*
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
(212) 980-7200
ryan.jerome@saul.com.

Dated: February 9, 2024

*Counsel for Defendants Terra Taylor, Claire M. DeMatteis, Monroe B. Hudson, Jr., Dr. Awele Maduka-Ezeh, and Michael Records*

23