# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| HARRY SAMUEL, CHRISTOPHER ROBERT DESMOND, and ARTHUR GOVAN, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 23-1134-JLH-SRF |
| CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, ACTING COMMISSIONER TERRA TAYLOR, FORMER COMMISSIONER CLAIRE M. DEMATTEIS, FORMER COMMISSIONER MONROE B. HUDSON, JR., MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH, and BUREAU CHIEF MEDICAL RECORDS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this civil rights case are four motions to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and two motions to strike, as follows:

| MOVANT(S) | MOTION | D.I. # | RECOMMENDED DISPOSITION |
|---|---|---|---|
| VitalCore Health Strategies ("VitalCore") | Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) | D.I. 21[1] | GRANT-IN-PART |
| Centurion of Delaware LLC ("Centurion") | Motion to Strike Class Allegations | D.I. 23 | DENY |

---

[1] The briefing associated with VitalCore's motion to dismiss is found at D.I. 22, D.I. 54, and D.I. 63.

| Centurion | Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) | D.I. 25[2] | GRANT-IN-PART |
|---|---|---|---|
| Centene Corporation ("Centene") | Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) | D.I. 27[3] | DENY |
| Terra Taylor, Claire M. DeMatteis, Monroe B. Hudson, Jr., Dr. Awele Maduka-Ezeh, and Michael Records (collectively, the "DOC Defendants") | Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively, Strike Class Allegations | D.I. 53[4] | GRANT-IN-PART |

## I.       BACKGROUND

Plaintiffs Harry Samuel, Christopher Robert Desmond, and Arthur Govan, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), brought this putative action against defendants VitalCore, Centurion, Centene, and the DOC Defendants (collectively, "Defendants") on October 11, 2023.  (D.I. 1)  Plaintiffs, who are incarcerated in Delaware correctional facilities, contend that their rights under the Eighth and Fourteenth Amendments of the U.S. Constitution were violated by Defendants' failure to provide them with adequate medical care from April 1, 2020 through the present (the "Class Period").  (*Id.* at ¶¶ 1-4, 156)

On November 14, 2019, the Delaware Department of Corrections ("DOC") issued a request for bids to operate the prison healthcare system.  (*Id.* at ¶ 94)  The following week, Centene created Centurion, a wholly owned subsidiary, to bid on the contract.  (*Id.* at ¶ 95)  The DOC selected Centurion's bid, and Centurion assumed contractual responsibility for providing healthcare services to Delaware inmates on April 1, 2020.  (*Id.* at ¶¶ 105, 108)  The complaint

---

[2] The briefing associated with Centurion's motions to strike and dismiss is found at D.I. 24, D.I. 26, D.I. 54, and D.I. 61.  Centene joined in Centurion's briefing on the motions to strike and dismiss at D.I. 29 and D.I. 30.

[3] The briefing associated with Centene's motion to dismiss is found at D.I. 28, D.I. 54, and D.I. 62.

[4] The briefing associated with the DOC Defendants' motion to dismiss is found at D.I. 55, D.I. 60, and D.I. 64.

alleges that Centene centralized oversight of its medical programs, operated a unified corporate compliance program, and treated Centurion's revenues as its own. (*Id.* at ¶¶ 98-102)

From April 1, 2020 to the end of Centurion's contractual term on June 30, 2023, Centurion allegedly understaffed the prison healthcare system, failed to adequately supervise its staff, retained staff who were not qualified for their positions, and delayed and denied health care to inmates in contravention of its contractual obligations. (*Id.* at ¶¶ 118-23, 131-32) The complaint provides examples of Centurion's systemic failure to provide adequate and timely healthcare to the three named Plaintiffs and other inmates. (*Id.* at ¶¶ 26-82)

Samuel began to experience severe bleeding and sought emergency care from Centurion staff on November 29, 2022. (*Id.* at ¶ 27) He was seen by a staff member the following day but received no treatment for his symptoms. (*Id.* at ¶ 28) When Samuel's symptoms worsened on January 1, 2023, a staff member referred him to a Centurion physician assistant. Five days later, Samuel was diagnosed with diverticulosis and was prescribed over-the-counter fiber tablets and a stool softener. (*Id.* at ¶¶ 30-32) The following month, Samuel was taken to the infirmary on an emergency basis for extensive blood loss, and he was ultimately transported to BayHealth Emergency Department. (*Id.* at ¶¶ 33-35) The examining physician indicated that Samuel required surgery and needed to see a specialist, but Centurion failed to provide him with a specialist consultation and/or surgery prior to the expiration of its contract on June 30, 2023. (*Id.* at ¶¶ 35-36)

On September 15, 2022, Govan began to experience prostate and urinary problems which were confirmed by blood work results. (*Id.* at ¶ 41) He received a referral for specialist healthcare on September 26, but he was never taken to a urologist. (*Id.* at ¶¶ 42-44) Govan received another urology referral in May of 2023, but he did not see a urologist before the June

30, 2023 expiration of Centurion's contract. (*Id.* at ¶¶ 45-46)

Desmond was placed in the Chronic Care Program because he suffers from chronic high blood pressure, heart disease, high cholesterol, and kidney disease. (*Id.* at ¶¶ 49-50) Despite his chronic conditions, Centurion staff withheld his prescribed blood pressure medication for 47 days, and he was not brought to the cardiologist on a regular basis. (*Id.* at ¶¶ 51-52) Desmond did not have a colonoscopy or see a dermatologist despite his elevated risks of colon and skin cancer. (*Id.* at ¶ 53)

Other unidentified inmates also experienced a broad range of health issues for which appropriate medical care was delayed or denied. (*Id.* at ¶¶ 55-82) Their conditions included hernias, joint pain, brain damage and seizures, injuries resulting from sexual assault, gastrointestinal problems, mental illness, opioid addiction, prostate issues, back injuries, stroke, heart attack, infection, asthma, kidney disease, and nerve damage. (*Id.*)

On January 10, 2023, Centene sold Centurion to an undisclosed buyer for $236 million. (*Id.* at ¶¶ 23, 126-29) Centurion continued its practices of understaffing, failing to supervise, and delaying and denying health care for serious conditions between January 11 and the end of its contractual term on June 30, 2023. (*Id.* at ¶¶ 130-32, 167-72, 178, 180) The DOC did not renew its contract with Centurion and instead awarded the correctional health care contract to VitalCore after an expedited bidding process. (*Id.* at ¶¶ 133-41) VitalCore's contract runs from May 1, 2023 to June 30, 2026. (*Id.* at ¶¶ 142-43)

When VitalCore assumed responsibility for inmate healthcare, it gained access to personnel records, unfilled position descriptions, grievances, records on the use of outside specialists, and records on the timing of responses to sick calls. (*Id.* at ¶¶ 145-48) Nonetheless, VitalCore hired Centurion's existing staff. (*Id.*) The alleged deficiencies in the medical care

4

provided by Centurion continued under VitalCore. (*Id.* at ¶¶ 149-54)

Although Samuel received a bone scan and a colonoscopy after VitalCore's contractual term began, he was denied further treatment when those tests revealed terminal prostate and rectal cancer. (*Id.* at ¶¶ 38-39) Samuel passed away on April 21, 2024. (D.I. 74) Despite receiving a second referral for an urgent consult with a urologist on May 11, 2023, Govan still had not seen a specialist as of the filing of the complaint on October 11, 2023. (D.I. 1 at ¶¶ 45-47) As a result, Govan still does not know whether he has prostate cancer. (*Id.* at ¶¶ 40, 47-48) Desmond still has not seen a cardiologist or dermatologist, and he has not had a colonoscopy. (*Id.* at ¶¶ 52-54)

The complaint also attributes liability to the DOC Defendants in their individual capacities. (D.I. 76 at 46:22-47:4) DeMatteis, Hudson, and Taylor served consecutively as Commissioners of the DOC during the Class Period and had a constitutional and statutory duty to provide medical care to inmates. (D.I. 1 at ¶¶ 84-85) DeMatteis was responsible for contracting with Centurion and made payments throughout the contractual period without seeking to terminate the contract for cause despite Centurion's alleged breaches. (*Id.* at ¶¶ 19, 87, 108, 125) Hudson selected VitalCore as Centurion's successor in an expedited bidding process when the term of Centurion's contract ended. (*Id.* at ¶¶ 87, 133-38, 141) Taylor took over for Hudson as Acting Commissioner on July 6, 2023, after working as Deputy Commissioner since August of 2022. (*Id.* at ¶¶ 17, 125) The complaint alleges that DeMatteis, Hudson, and Taylor failed to supervise Centurion and VitalCore. (*Id.* at ¶ 92)

Records has served as Bureau Chief since November 8, 2021, and he served as deputy Bureau Chief prior to that date, supervising Centurion and VitalCore and overseeing the operation of the grievance system to ensure timely and proper investigation and remediation of

all grievances submitted by inmates.  (*Id.* at ¶¶ 17, 21)  The complaint alleges that Records routinely denied grievances without investigating the facts or requiring Centurion and/or VitalCore to provide the recommended medical care to inmates.  (*Id.* at ¶¶ 88-89)

Maduka-Ezeh has served as the Medical Director throughout the Class Period and was responsible for ensuring that Delaware inmates received adequate healthcare in a timely fashion. (*Id.* at ¶ 20)  Maduka-Ezeh purportedly admitted under oath that Centurion and VitalCore failed to provide the requisite medical care or maintain adequate records, yet she took no action to terminate the contracts for cause.  (*Id.* at ¶¶ 90-91)

## II.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

VitalCore and the DOC Defendants allege that Plaintiffs failed to exhaust their administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this suit.  (D.I. 22 at 26; D.I. 55 at 16)  This argument is not persuasive. The Third Circuit has explained that, "[b]ecause failure to exhaust is an affirmative defense for the defendants to plead and prove," plaintiffs are not required to plead or demonstrate exhaustion in the complaint to state a claim under Rule 12(b)(6). *Williams v. Del. Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 474 n.7 (3d Cir. 2021); *see also Nash v. Akinbayo*, C.A. No. 18-677-MN, 2019 WL 4393159, at *4-5 (D. Del. Sept. 13, 2019) (explaining that "the exhaustion issue is not amenable to resolution" on a motion to dismiss because it requires examination of factual matters outside the pleadings).  Consequently, I recommend that the court DENY VitalCore and the DOC Defendants' motions to dismiss for failure to exhaust administrative remedies.

## B. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Matters of sovereign immunity and standing are both addressed under Rule 12(b)(1). *See United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) ("[A] claim of sovereign immunity advances a jurisdictional bar which a party may raise at any time . . . and which the court may raise *sua sponte*."); *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (explaining that constitutional standing is properly tested under Rule 12(b)(1)).

The Eleventh Amendment bars federal suits against States, their agencies, and officers in their official capacities. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). The DOC Defendants contend that they are immune from suit under the Eleventh Amendment in their official capacities. (D.I. 55 at 13) At oral argument, counsel for Plaintiffs confirmed that the complaint does not assert causes of action against the DOC Defendants in their official capacities. (D.I. 76 at 46:22-47:4) Consequently, I recommend that the court DENY the DOC Defendants' motion to dismiss on sovereign immunity grounds.

VitalCore also moves to dismiss the complaint under the Eleventh Amendment, alleging that sovereign immunity extends to claims against a contracted arm of the state acting in its official capacity. (D.I. 22 at 27-28) But the Supreme Court case cited by VitalCore in support of its position does not address the discrete issue of whether sovereign immunity extends to a private prison healthcare provider. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Cases that have addressed the issue have held that immunity under the Eleventh Amendment does not extend to a private prison healthcare provider under contract with the State. *See Caine v. Butler*, 685 F. Supp. 3d 1315, 1326 n.10 (M.D. Ala. Aug. 1, 2023) (explaining that

private prison healthcare contractors are not entitled to sovereign immunity, which is reserved for the State and its employees); *Moya v. G.E.O. Grp.*, 2024 WL 402564, at *2 n.2 (S.D. Fla. Feb. 2, 2024) (same). Therefore, I recommend that the court DENY VitalCore's motion to dismiss on sovereign immunity grounds.

VitalCore contends that Plaintiffs also lack constitutional standing to bring claims against it because the complaint does not identify an injury in fact fairly traceable to the actions of VitalCore. (D.I. 22 at 20-22) As discussed during oral argument, the injuries alleged by Plaintiffs in this matter are not abstract. (D.I. 76 at 37:23-38:19) For example, the complaint avers Samuel was denied further medical treatment by VitalCore after tests revealed terminal cancer. (D.I. 1 at ¶¶ 38-39) It is undisputed that Samuel has since passed away. (D.I. 74) VitalCore's position that the progression of Samuel's condition is not tied to a delay or denial of healthcare by VitalCore goes to the sufficiency of the pleaded facts under Rule 12(b)(6), as opposed to standing under Rule 12(b)(1). (D.I. 76 at 38:10-19) I recommend that the court DENY VitalCore's Rule 12(b)(1) motion for lack of standing.

### C. Motion to Dismiss Under Fed. R. Civ. P. 8(a)

Rule 8 of the Federal Rules of Civil Procedure places "minimal burdens on the plaintiff at the pleading stage." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (internal quotation marks omitted). It requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he 'plain' statement prerequisite ensures the pleading 'identifies discrete defendants and the actions taken by these defendants in regard to the plaintiff's claims.'" *McCary v. Cunningham*, C.A. No. 21-667-TLA, 2022 WL 2802385, at *3 (D. Del. July 18, 2022) (quoting *Garrett*, 938 F.3d at 93).

VitalCore alleges that Plaintiffs' complaint is an improper "shotgun pleading" which violates Rule 8(a) by asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for particular acts or omissions. (D.I. 22 at 8-11) Because VitalCore's contractual term began only three months prior to the filing of this litigation, it contends that it cannot properly be held accountable for the actions of its predecessors. (*Id.*)

I recommend that the court DENY VitalCore's motion to dismiss the causes of action against VitalCore under Rule 8(a). A "shotgun pleading" is a pleading that asserts numerous claims against multiple defendants without giving adequate notice of the grounds on which the claims rest. *Brown v. Nicklow*, 2023 WL 1766272, at *3 (M.D. Pa. Feb. 3, 2023). The instant complaint provides adequate notice to VitalCore regarding the scope of the claims asserted against it by specifying that both Counts I and II are brought against VitalCore. *See McCary*, 2022 WL 2802385, at *4 (finding no deficiency under Rule 8(a) where the complaint identified which of the defendants each claim was brought against). The pleading also notifies VitalCore of the scope of the liability alleged against it by identifying the date VitalCore assumed responsibility for providing healthcare in Delaware prisons and alleging conduct that occurred after that date. (*See, e.g.*, D.I. 1 at ¶¶ 38-39, 141)

Generally, "shotgun pleadings" arise in the context of individual defendants when the complaint fails to tie specific conduct to each individual defendant, shifting the burden to the defendant to identify the claim(s) against it. *McCary*, 2022 WL 2802385, at *4 (discussing shotgun pleadings in the context of multiple defendants collectively accused of various acts or omissions). But VitalCore is an institutional defendant alleged to have carried on the practices of Centurion, its predecessor. (D.I. 1 at ¶¶ 91, 150-54) The complaint alleges that VitalCore's

9

liability began with its assumption of correctional healthcare responsibilities as of July 1, 2023 and continues to the present. (D.I. 1 at ¶¶ 38, 46-47) These averments are sufficient to satisfy the low threshold of Rule 8(a) at this stage of the proceedings.

The DOC Defendants also contend that the pleaded allegations against them are too vague and conclusory for purposes of Rule 8(a) because they fail to specify the facts regarding each DOC Defendant's alleged conduct and instead assert legal conclusions about the duties each DOC Defendant owes to Plaintiffs. (D.I. 55 at 6-7) As previously discussed, however, the complaint adequately sets forth the timing and details of the alleged misconduct experienced by Plaintiffs. (*See, e.g.*, D.I. 1 at 17-21, 27-39, 108) The complaint also alleges that each of the DOC Defendants bears responsibility for this conduct by failing to supervise Centurion and VitalCore, failing to call for the termination of their contracts for cause, and/or denying medical grievances without an investigation. (*Id.* at ¶¶ 87-92) Because these averments are sufficient to put the DOC Defendants on notice of the allegations against them, I recommend that the court DENY the DOC Defendants' motion to dismiss under Rule 8(a).

### D. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### 1. Count I: Violations of 42 U.S.C. § 1983

Plaintiffs bring constitutional claims under the Eighth and Fourteenth Amendments for Defendants' alleged deliberate indifference to Plaintiffs' medical needs and their policy, practice, or custom of delaying or denying medical care to Plaintiffs pursuant to 42 U.S.C. § 1983. Section 1983 is a vehicle that Plaintiffs may use against state actors to remedy violations of constitutional rights or other federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Liability for constitutional violations under § 1983 based on a municipality's policies and customs also extends to private companies providing prison medical services under contract. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); *see Francis v. Carroll*, 659 F. Supp. 2d 619, 625-26 (D. Del. 2009)

("[A]lthough a private corporation offering medical services to inmates cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.") (internal quotation marks omitted).

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, includes a proscription against cruel and unusual punishment which requires prison officials to provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To successfully plead a claim under 42 U.S.C. § 1983 for an Eighth Amendment medical care violation, a plaintiff must plausibly allege "(1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Parkell v. Pierce*, C.A. No. 17-157-LPS, 2018 WL 3104406, at *5 (D. Del. June 22, 2018) (citing *Estelle*, 429 U.S. at 103-05; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d. Cir. 1999)). "Deliberate indifference requires that a defendant knew of and disregarded an excessive risk to inmate health and safety." *Wholaver v. Sorber*, 2023 WL 7410423, at *1 (3d Cir. Nov. 9, 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### a. Centurion

To succeed on their § 1983 claim against Centurion, a government contractor, Plaintiffs must show that their constitutional rights were violated as a result of a Centurion policy, practice or custom. *See Williams v. Guard Bryant Fields*, 535 F. App'x 205, 211 (3d Cir. 2013); *Natale*, 318 F.3d at 583-84. A corporate defendant "is only liable if its policies are so inadequate and ineffective that the mere decision to employ these policies demonstrates deliberate indifference on the part of the corporation." *McCray v. First State Med. Sys.*, 379 F. Supp. 2d 635, 638 (D. Del. 2005).

Centurion alleges that Count I should be dismissed because it fails to identify any such policy, practice or custom that resulted in a violation of Plaintiffs' constitutional rights. (D.I. 26 at 10-12) Plaintiffs respond that the complaint plausibly alleges Centurion had a policy and custom of maximizing profits by delaying and denying diagnostic testing, withholding prescribed medications, withholding surgeries and other needed treatments, and systemically understaffing and failing to supervise medical staff. (D.I. 54 at 17)

The pleaded allegations regarding Centurion's policies, practices and customs, when viewed in the light most favorable to Plaintiffs, plausibly state a claim under § 1983 at this stage of the proceedings. The complaint alleges that Centurion had a policy or custom of failing to adequately staff its operations, as evidenced by numerous job postings throughout the relevant period. (D.I. 1 at ¶ 119) The complaint further alleges that Centurion had a policy or custom of failing to hire and supervise competent, licensed staff, as shown by a negative audit result on accreditation standards and the retention of an unlicensed nurse. (*Id.* at ¶¶ 120-21, 124-25, 131-32) And, fundamentally, the complaint states that Centurion had a policy or custom of delaying or denying healthcare to inmates, which manifested in the denial of medically necessary specialist care and the denial of grievances without sufficient investigation.[5] (*Id.* at ¶¶ 122-23) According to the pleaded averments, all of these policies or customs arose in the broader context of Centurion's goal to minimize expenditures and maximize profits under the flat-fee contract. (*Id.* at ¶¶ 105, 121-22, 126-29, 152, 171)

---

[5] Centurion contends that Plaintiffs cannot maintain a § 1983 claim based on Centurion's alleged failure to investigate medical grievances. (D.I. 26 at 13-14) When viewing the complaint in the light most favorable to Plaintiffs, however, it is plausible to infer that the pleaded allegations regarding Centurion's failure to investigate grievances are a feature of Centurion's policy, practice or custom of delaying or denying medical treatment. (*See, e.g.*, D.I. 1 at ¶¶ 29, 48, 123)

The pleading also plausibly alleges that Centurion's policies, practices and customs were the moving force behind Plaintiffs' injuries. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The complaint alleges that each of the named Plaintiffs was denied specialist care despite significant risk factors and/or symptoms. (D.I. 1 at ¶¶ 26-53) As a result, Samuel was diagnosed with terminal cancer and has since passed away. (*Id.* at ¶ 38; D.I. 74) Plaintiffs Govan and Desmond have not been tested for cancer despite their symptoms or risk factors, and Desmond was deprived of medication and care for his chronic heart condition. (D.I. 1 at ¶¶ 40-53) The complaint then offers dozens of examples of other inmates who were denied medical care and suffered injury as a result of the lack of treatment. (*Id.* at ¶¶ 55-82) Viewed collectively, these allegations establish the pervasiveness of Centurion's conduct and support an inference that the delay and denial of care was part of a broader policy, practice or custom.

The pleaded averments about Centurion's policies or practices are distinguishable from those at issue in the cases cited by Centurion. In *Sims v. Wexford Health Sources*, for instance, the complaint contained circular and conclusory allegations that the government contractor "had an open practice, policy, or custom of deliberate indifference in order to save money." 635 F. App'x 16, 20 (3d Cir. 2015). The case does not suggest that the complaint contained any factual averments to support the § 1983 claim. *Id.* Similarly, in *Hurley v. Connections Community Support Programs, Inc.*, the complaint alleged in a general and conclusory manner that the government contractor knew its employees had a practice of ignoring inmates' serious medical conditions, yet the contractor failed to respond to inmates' requests for treatment and violated the standards of care. C.A. No. 20-895-RGA, 2021 WL 677943, at *4-5 (D. Del. Feb. 22, 2021). The court concluded that these allegations were insufficient to establish the contractor's policy as

the moving force behind the alleged injury. *Id.* Consequently, I recommend that the court DENY the motion to dismiss Count I of the complaint as to Centurion.

  **b. VitalCore**

  VitalCore contends that the § 1983 claim should be dismissed because VitalCore cannot be vicariously or jointly liable for the actions of other Defendants. (D.I. 22 at 11-15)  As described at § II.D.1.a, *supra*, however, a corporate defendant such as VitalCore may be liable under § 1983 if Plaintiffs show that their constitutional rights were violated as a result of a VitalCore policy, practice or custom. *See Williams*, 535 F. App'x at 211.  Here, the complaint states that VitalCore assumed responsibility for providing healthcare to inmates on July 1, 2023. (D.I. 1 at ¶ 141)  Thus, the face of the complaint establishes that VitalCore is responsible for alleged violations occurring from July 1, 2023 to the present.

  The complaint also plausibly alleges that VitalCore continued a policy, practice or custom of delaying or denying treatment for diagnosed health conditions, supported by factual allegations specific to Samuel and Govan. (D.I. 1 at ¶¶ 38-39, 47)  The pleading supports an inference that VitalCore had actual knowledge and acted with deliberate indifference by stating that VitalCore provided Samuel with a bone scan and a colonoscopy which revealed his terminal cancer before advising him that he would not receive any treatment. (*Id.* at ¶¶ 38-39)  Although the time period of VitalCore's conduct is shorter than Centurion's, the same analysis applies to the nature of the policy, practice or custom and the severity of the resultant injury. *See* §§ II.D.1.a, *supra* and II.D.1.c, *infra*.  Therefore, I recommend that the court DENY VitalCore's motion to dismiss Count I of the complaint.

### c.  The DOC Defendants

The DOC Defendants assert three related arguments in support of dismissal of Count I against them: (1) a failure to plead actual knowledge; (2) a failure to plead deliberate indifference; and (3) a failure to allege a policy or practice causing constitutional harm.  (D.I. 55 at 8-12)  These arguments are all rooted in the alleged insufficiency of the pleaded averments regarding the DOC Defendants' supervisory liability for the actions of Centurion and VitalCore.  (*Id.*)  It is well-established that liability under § 1983 is personal in nature, and a defendant must be personally involved in the wrongful conduct.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015).  As a result, viable claims for supervisory liability under § 1983 are limited to situations where (1) supervisors "established and maintained a policy, practice or custom which directly caused the constitutional harm," or (2) "they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."  *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotation marks and citations omitted).

The complaint plausibly alleges that Maduka-Ezeh had actual knowledge of the deficiencies in the correctional healthcare system and was deliberately indifferent to Plaintiffs' medical needs based on her admission under oath that Centurion and VitalCore failed to provide the required medical care or maintain records, and her failure to call for the termination of their contracts for cause.  (*Id.* at ¶ 90)  These allegations, taken as true, support a plausible inference that Maduka-Ezeh had actual knowledge of unconstitutional deficiencies in the prison healthcare system, and her failure to act amounted to deliberate indifference of Plaintiffs' medical needs.  *See Parkell*, 833 F.3d at 330 (explaining that government officials can be liable for the actions of

subordinates under §1983 if they, "as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."). Therefore, I recommend that the court DENY the DOC Defendants' motion to dismiss Count I as to Maduka-Ezeh.

I recommend the court GRANT the motion to dismiss Count I as to Records. The complaint alleges that Records denied grievances submitted by prisoners without properly investigating them or requiring Centurion or VitalCore to provide required medical care under the terms of their contracts. (D.I. 1 at ¶¶ 21, 88) The Third Circuit has held that review or denial of inmate grievances by a government official is insufficient to establish actual knowledge of that official for purposes of a deliberate indifference claim. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (upholding dismissal of claims against three government officials who lacked the requisite personal involvement where they participated only in the denial of the plaintiff's grievances).

The pleaded averments regarding Taylor, DeMatteis, and Hudson (collectively, the "Commissioner Defendants") also fail to state a claim. *See White v. Connections Cmty. CSP, Inc.*, C.A. No. 19-1541-MN, 2021 WL 616951, at *3 (D. Del. Feb. 17, 2021) (granting motion to dismiss against individual DOC Defendants because the complaint failed to satisfy the Eighth Amendment scienter requirement of deliberate indifference). The complaint alleges that the Commissioner Defendants had a responsibility to ensure that inmates received adequate healthcare in a timely fashion and were obligated to supervise Centurion and VitalCore in the provision of that healthcare. (D.I. 1 at ¶¶ 84-87) But allegations of an official's responsibility for supervising other defendants are insufficient, by themselves, to plausibly allege personal involvement or actual knowledge of the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988). Supervisory liability may only attach "if the plaintiff asserts facts

17

showing that the supervisor's actions were 'the moving force' behind the harm suffered by the plaintiff." *Stones v. McDonald*, 7 F. Supp. 3d 422, 436 (D. Del. 2014). Here, however, the complaint contains no specific facts showing that the Commissioner Defendants expressly directed the deprivation of Plaintiffs' constitutional rights or that they maintained a policy or custom which directly caused the constitutional harm. *Id.*; *see also White*, 2021 WL 616951, at *3.

The facts before the court in the instant case are distinguishable from those in *Natale*, a case cited by Plaintiffs. 318 F.3d at 584. In *Natale*, the court faulted the governmental defendants for failing to implement a policy that would ensure detainees received necessary medication while in custody. *Id.* at 578, 585. Here, in contrast, the complaint discloses the terms of the DOC service contracts with Centurion and VitalCore which set specific staffing and service requirements to prevent such gaps in the provision of medical care. (D.I. 1 at ¶¶ 107-116) The complaint does not suggest that Centurion or VitalCore lacked discretion in the provision of inmate medical care under the Commissioner Defendants' policies, or that it was the specific actions of the Commissioner Defendants which produced the alleged deprivation of Plaintiffs' constitutional rights. *Stones*, 7 F. Supp. 3d at 436. For these reasons, I recommend that the court GRANT the DOC Defendants' motion to dismiss as to the Commissioner Defendants.

The DOC Defendants also argue that Count I should be dismissed because Plaintiffs Govan and Desmond do not allege a serious or extreme deprivation of care. (D.I. 55 at 10-11) In contrast to Samuel's diagnosis with terminal cancer, the DOC Defendants contend that Govan's urinary hesitation and Desmond's risks of skin and colon cancer are insubstantial and

speculative. (*Id.*) Plaintiffs respond that the seriousness of Govan and Desmond's medical conditions is an issue of fact that should not be resolved on a motion to dismiss. (D.I. 60 at 11)

Viewing the pleaded facts in the light most favorable to Plaintiffs, I recommend that the court DENY the DOC Defendants' motion to dismiss Count I on this basis. To state a plausible claim for deliberate indifference to medical needs under § 1983, Plaintiffs must objectively plead that their medical needs were serious, "such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991); *see Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

The complaint alleges that Govan's urinary hesitation was accompanied by lab results showing high levels of prostate specific antigen ("PSA"), and Govan disclosed a family history of prostate cancer. (D.I. 1 at ¶¶ 41-42) According to the complaint, the uncertainty surrounding his specific diagnosis is the result of Centurion and VitalCore's failure to take him to a specialist despite multiple referrals for a urology consult. (*Id.* at ¶¶ 42-48) Unlike the skin condition at issue in *Hart v. City of Philadelphia*, which caused rough patches on the skin, Govan's lab results, symptoms, and family history point to prostate cancer, which is indisputably a serious condition. 779 F. App'x 121, 127 (3d Cir. 2019). The pleaded averments regarding Govan are sufficient to plausibly infer Govan's condition is serious at this early stage. *See Pearson*, 850 F.3d at 537 (holding that "medical expert testimony may be necessary in some adequacy of care cases when the propriety of a particular diagnosis or course of treatment would not be apparent to a layperson.").

With respect to Desmond, the complaint states that his blood pressure medication was withheld for 47 days and he was denied a visit with a cardiologist. (D.I. 1 at ¶¶ 51-52) Desmond also has heightened risks of skin cancer and colon cancer because of medication side effects and

family history, respectively. (*Id.* at ¶ 53) Despite these conditions and risks, Desmond was not brought to see a dermatologist and did not undergo a colonoscopy. (*Id.*) As with Govan, Desmond's cardiac condition and cancer risk factors may lead to substantial and unnecessary suffering, injury, or death, and denying him access to his medication and treatment with a cardiologist went against the prescription of a medical specialist.

### 2. Count II: Negligent Hiring, Supervision, & Retention

Centurion, VitalCore, and the DOC Defendants also move to dismiss Count II of the complaint. (D.I. 26 at 14-16; D.I. 61 at 11-13; D.I. 22 at 24; D.I. 63 at 8; D.I. 55 at 17) The briefing on this issue reveals the parties' confusion as to whether Plaintiffs intended to state a claim under federal or state law at Count II. Plaintiffs' answering brief clarifies that Count II is a state law claim sounding in negligence. (D.I. 54 at 23) However, Defendants' confusion is justifiable based on a review of the pleading. On multiple occasions, Count II refers to Defendants' "deliberate indifference" to the risk of "constitutional and statutory rights" violations. (D.I. 1 at ¶¶ 175-80) I recommend that the court GRANT Defendants' motion to dismiss Count II of the complaint with leave to amend.

### 3. Centene's relationship to Centurion

Centene argues that Plaintiffs' claims against it should be dismissed because the pleaded allegations are predicated on Centurion's conduct, and holding Centene liable for Centurion's conduct would violate the legal separateness of Centene as the parent corporation and Centurion as its subsidiary. (D.I. 28 at 10-19) With respect to Count I, Centene specifies that it cannot be liable for Centurion's conduct under 42 U.S.C. § 1983 because the complaint does not allege Centene was personally involved in the conduct alleged by Plaintiffs, and vicarious liability is unavailable for claims brought under § 1983. (*Id.* at 10-13)

Plaintiffs respond that the corporate veil between Centene and Centurion may be pierced under federal common law, and it is premature to dismiss Centene before discovery is taken regarding the nature of its corporate relationship with Centurion. (D.I. 54 at 29-30)  According to Plaintiffs, the pleaded allegations "raise a very plausible scenario that Centene likely stripped the subsidiary of capital yet burdened it with all the liabilities arising from the pattern of depriving incarcerated persons of their Eighth Amendment rights." (*Id.* at 32)

I recommend that the court DENY Centene's motion to dismiss Count I of the complaint. Under federal common law, courts consider a non-exhaustive list factors in determining whether the corporate veil may be pierced: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a façade." *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470-71 (D. Del. 2010) (citing *U.S. v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)). These seven factors "apply in Delaware regardless of whether the cause of action is based on federal or state law." *Id.* at 471.  No single factor is dispositive, but some combination is required, and "an overall element of fraud, injustice, or unfairness must always be present." *Id.* (citations omitted).

The complaint alleges facts to plausibly support corporate veil piercing under federal common law.  For example, the complaint states that Centene did not allow Centurion to operate independently, suggesting Centurion was not more than a façade for Centene. (D.I. 1 at ¶¶ 96-100)  The complaint also alleges that Centene failed to keep separate financial books and siphoned Centurion's revenue, refusing to expend funds needed by Centurion to sustain its operations and meet its contractual obligations. (*Id.* at ¶¶ 101-03, 119-22)  These averments,

taken as true at this early stage of the proceedings, meet several factors set forth in *Blair* and are therefore sufficient to plausibly challenge the corporate separateness of Centene and Centurion. *See Blair*, 720 F. Supp. 2d at 470-71.

Centene's position that it cannot be liable for Centurion's conduct under § 1983 is not persuasive. None of the cases cited by Centene support a conclusion that a state contractor defendant having an unconstitutional policy, practice, or custom can shield its corporate parent from liability despite a lack of corporate separateness between the entities. In *Williams v. Guard Bryant Fields*, the Third Circuit affirmed the district court's grant of a prison contractor's motion for summary judgment where there was no evidence that the contractor had any policy, custom or practice separate from the municipality's policy of denying prescribed medication. 535 F. App'x at 211-12; *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("[A] private contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality."). The case did not address matters of corporate separateness between two private entities.

In *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, the Third Circuit held that a governmental entity cannot be held liable for the actions of its employees based on a theory of *respondeat superior* in a § 1983 action. 372 F.3d 572, 580 (3d Cir. 2004); *see also Johnson*, 398 F.3d at 877 ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory."). Here, the issue is not whether the actions of Centurion's employees can be imputed to Centurion. Instead, the question is whether § 1983 liability for Centurion's allegedly unconstitutional policies can be attributed to Centene where the complaint contains plausible allegations that Centene attempted to shield itself from liability through an abuse of the corporate form. Nothing in these cases suggests a corporate parent that abuses the

22

corporate form is nonetheless immunized from liability under § 1983. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (explaining that veil-piercing is appropriate to prevent fraud, illegality, or injustice, when recognition of the corporate entity would defeat public policy, or when the parent dominates the subsidiary such that it has no separate existence).

Authority addressing facts more analogous to the instant case supports the conclusion that it is possible for a corporate parent to be liable under § 1983 for the actions of its private contractor subsidiary. In *Carter v. City of Montgomery*, the plaintiff brought a § 1983 suit against the municipality and a private contractor ("JCS") that was hired by the municipality to supervise misdemeanor probation. 473 F. Supp. 3d 1273, 1285 (M.D. Ala. 2020). The plaintiff also included JCS's parent company, CHC, in its § 1983 claim and corresponding state law claims, alleging that CHC is liable for JCS's actions because it controlled JCS. *Id.* at 1295. Although the court determined on summary judgment that there was insufficient evidence to support CHC's excessive control over JCS under an alter ego theory, the court did not identify any *per se* bar on corporate veil-piercing allegations in the context of a § 1983 claim. *Id.* at 1297.

Centene also moves to dismiss Plaintiffs' state law claim at Count II, arguing that the complaint does not plausibly allege an alter ego or agency theory of liability tying Centurion's conduct to Centene. (D.I. 28 at 14-19) Consistent with the recommendation to dismiss Count II as to Centurion at § II.D.2, *supra*, I recommend that the court GRANT the motion to dismiss Count II as to Centene.

### 4. Qualified immunity

The DOC Defendants contend that Plaintiffs' § 1983 claim against them in their

individual capacities should be dismissed under the doctrine of qualified immunity.  (D.I. 55 at

13-16)  Qualified immunity shields officials from personal liability for "conduct [that] does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Schramm v. Mayrack*, C.A. No. 22-1443-MN, 2023 WL 6387889, at *4-5 (D.

Del. Sept. 29, 2023) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)).  When a defendant

moves to dismiss on qualified immunity grounds, the relevant inquiry turns on "(1) whether the

plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was

'clearly established' at the time of the official's conduct." *Dennis v. City of Phila.*, 19 F.4th 279,

286 (3d Cir. 2021) (quoting *L.R. v. Sc. Dist. of Phila.*, 836 F.3d 235, 240-41 (3d Cir. 2016)).  On

a motion to dismiss, the court may determine that qualified immunity applies to a defendant

"only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258

F.3d 156, 161 (3d Cir. 2001) (internal citations and quotation marks omitted).

The focus of the parties' argument on qualified immunity with respect to the § 1983

claim at Count I of the complaint is twofold.  First, the parties disagree about whether a

challenge based on qualified immunity is appropriately addressed on a motion to dismiss even

though it is an affirmative defense on which the DOC Defendants bear the burden.  (D.I. 60 at

14; D.I. 64 at 7)  Second, they dispute whether the well-established constitutional right to be free

from deficient healthcare was violated by the DOC Defendants.  (D.I. 64 at 7-8; D.I. 76 at 33:18-

23)

I recommend that the court DENY the DOC Defendants' motion to dismiss Count I based

on the defense of qualified immunity.  Although qualified immunity should be considered at the

earliest possible stage of the proceedings, "it is generally unwise to venture into a qualified

immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast

majority of cases." *Newland v. Reehosrt*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *see Curley

v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). Qualified immunity applies to claims on a motion to

dismiss only when the immunity is established on the face of the complaint and there are no

disputed issues of fact. *Id.*; *see Taylor v. Rosa*, 856 F. App'x 376, 378 n.3 (3d Cir. 2021). For

the reasons set forth at § II.D.1.c, *supra*, disputed issues of fact preclude a finding of qualified

immunity as to Maduka-Ezeh at this stage of the proceedings. *See Estate of Morcho v. Borough*,

2024 WL 21940, at *9 (E.D. Pa. Jan. 2, 2024) (explaining that a motion to dismiss based on

qualified immunity should be denied if a viable claim is stated against the defendant).

      Having recommended that the court grant the DOC Defendants' motion to dismiss Count

II of the complaint at § II.D.2.c, *supra*, the court need not reach the DOC Defendants' position

that qualified immunity protects them from liability under the DTCA.

      VitalCore also alleges that it is also immune from suit under the DTCA, without

explaining how qualified immunity applies to it as a government contractor, as opposed to a

government official or entity. (D.I. 22 at 22-23); *see* 10 *Del. C.* § 4001(1). "It is well-settled

that an independent contractor is not, as a matter of law, a State actor" for purposes of the

DTCA. *Higgins v. Walls*, 901 A.2d 122, 135 (Del. Super. Ct. 2005) (citing *Syvy v. Landmark

Eng'g, Inc.*, 2005 WL 791391, at *1 (Del. Super. Ct. Mar. 31, 2005)). I recommend that the

court DENY VitalCore's motion to dismiss on immunity grounds under the DTCA.

**E.  Motions to Strike Class Allegations Under Fed. R. Civ. P. 12(f)[6]**

Defendants move to strike the class allegations from the complaint.  (D.I. 22 at 29-30;

D.I. 24; D.I. 29; D.I. 55 at 19-22)  Rule 12(f) provides that "[t]he court may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."  Fed. R. Civ. P. 12(f).  Rule 23(c)(1)(A) provides a court with authority to strike class

allegations from the complaint before a motion for class certification is filed when the complaint

demonstrates that the requirements for maintaining a class action cannot be met.  *In re Railway*

*Indus. Employee No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 495 (W.D. Pa. 2019); *see*

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).[7]  Rule

23(d)(1)(D) allows the court to "require that the pleadings be amended to eliminate allegations

about representation of absent persons[.]"  Fed. R. Civ. P. 23(d)(1)(D).

Motions to strike are generally disfavored, and district courts are reluctant to strike class

allegations before discovery unless the complaint clearly demonstrates that the plaintiff cannot

meet the requirements for a class action.  *See Landsman*, 640 F.3d at 93 n.30; *see also*

*Hernandez v. Newrez, LLC*, 2024 WL 1016365, at *1 (E.D. Pa. Mar. 8, 2024) (citing *Woodard v.*

*FedEx Freight E., Inc.*, 250 F.R.D. 178, 181-82 (M.D. Pa. 2008)).  "It is only when no amount of

---

[6] Several case authorities from within the Third Circuit have suggested that "a court's
consideration of a motion to strike class allegations should not be analyzed under Rule 12(f)
under which the movant bears the burden of proof; rather, a court should consider a motion to
strike class allegations under the pertinent provisions of Rule 23, which governs class
certifications." *In re Railway Indus. Employee No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464,
496 (W.D. Pa. 2019); *see Davis v. C&D Sec. Mgmt., Inc.*, 2020 WL 4284379, at *2 (E.D. Pa.
July 27, 2020); *McIntyre v. Trans Union LLC*, 2020 WL 1150443, at *6 (E.D. Pa. Mar. 5, 2020).
[7] The Third Circuit granted rehearing *en banc* on this decision and later vacated that order after
the U.S. Supreme Court decided *Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740 (2012).  *See*
*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).
That decision had no bearing on the Third Circuit's analysis of the propriety of resolving class
certification at the pleading stage prior to discovery.

discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (internal citations and quotation marks omitted). As a result, "district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012).

Plaintiffs contend that it would be premature to strike the class allegations at this stage, noting that they anticipate filing a motion for class certification after taking the necessary discovery. (D.I. 54 at 33-35; D.I. 60 at 21-22) Plaintiffs' briefing does not address the substantive viability of the class allegations under Rule 23. (*Id.*)

Centurion and the DOC Defendants argue that this is a rare case in which no discovery is needed to determine that Plaintiffs' proposed class should not be certified.[8] Focusing on the commonality, predominance, and ascertainability requirements of Rule 23(a) and Rule 23(b)(3), these Defendants stress that an individualized assessment of each inmate's medical conditions, treatment, and injuries will be required to determine liability and establish an amount of compensatory damages. (D.I. 24 at 10-19; D.I. 55 at 19-21; D.I. 61 at 13-19) They cite cases holding that claims for deliberate indifference to the medical needs of inmates do not lend themselves to class certification, and they point to a lack of objective criteria for determining which inmates have a "serious medical need" and defining what amounts to a denial or delay of diagnosis or treatment under the pleaded class definition. (*Id.*) According to the DOC

---

[8] VitalCore alleges that the class certification allegations in the pleading are inadequate without substantively elaborating on its position. (D.I. 22 at 29-30)

Defendants, the proposed class is an improper fail-safe class, where membership depends on whether the inmate has a valid claim. (*Id.* at 21-22)

Neither Centurion nor the DOC Defendants has persuasively established the propriety of striking Plaintiffs' class allegations at this early stage of the proceedings, before discovery has been taken or a motion for class certification has been filed. *See Davis v. D.R. Horton Inc.*, C.A. No. 19-1686-MN-JLH, 2020 WL 1244848, at *4-5 (D. Del. Mar. 16, 2020) ("District courts . . . typically deny as premature motions to strike class allegations filed before the plaintiff moves for class certification."). The ramifications of striking the class allegations are significant because "an order granting a motion to strike class allegations is tantamount to a denial of class certification after a motion to certify." *Cole's Wexford Hotel, Inc. v. UPMC*, 127 F. Supp. 3d 387, 403-04 (W.D. Pa. 2015) (internal citations and quotation marks omitted). The cases cited by Centurion and the DOC Defendants in support of their motions to strike arose, at the very earliest, in the context of a motion for class certification filed after some discovery was taken. *See, e.g., Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016) (affirming district court's decertification decision made after a bench trial); *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) (affirming district court's decision granting motion to certify general class and two subclasses); *Woodall v. Wayne Cnty., Mich.*, 2021 WL 5298537 (6th Cir. Nov. 15, 2021) (reversing district court's grant of a motion for class certification and remanding for further proceedings); *Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019) (granting-in-part motion to certify class); *Sabata v. Neb. Dep't of Corr. Servs.*, 337 F.R.D. 215 (D. Neb. 2020) (denying motion to certify the proposed class and subclasses).

This is not the "rare case" where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23[.]" *Zarichny*, 80 F. Supp. 3d at 615.

Centurion focuses on the potential factual differences among individual Plaintiffs which could

defeat class certification by destroying commonality or predominance.  But such factual

differences may be overcome by "common proof developed in discovery."  *In re Allergan*

*Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021)

(quoting *Landsman*, 640 F.3d at 94).  The common legal issues identified in the complaint, such

as institution-wide deliberate indifference to Plaintiffs' medical needs, are sufficient to establish

commonality at this early stage.  (D.I. 1 at ¶ 160); *see Hagan v. Rogers*, 570 F.3d 146, 158 (3d

Cir. 2009) (concluding that the alleged threat of injury to inmates from prison's deliberate

indifference was sufficiently common to allow case to proceed as a class, even though inmates

did not endure the same injuries).  Similarly, "predominance does not prohibit all individualized

inquiry," and because the predominance analysis "venture[s] into the territory of a claim's

merits," the existence of individual questions is not enough to support striking class allegations

before discovery.  *Hernandez*, 2024 WL 1016365, at *5 (quoting *Landsman*, 640 F.3d at 93); *see*

*also Cole's Wexford Hotel*, 127 F. Supp. 3d at 412-13.

        The ascertainability inquiry, which requires Plaintiffs to identify objective, reliable

criteria for identifying class members, is also more appropriately addressed after fact discovery.

*Davis*, 2020 WL 1244848, at *5.  The complaint defines the class as

> persons incarcerated in Delaware correctional facilities with serious medical
> needs whose diagnosis or treatment was delayed or denied during the period April
> 1, 2020 through present . . . except that the class excludes those whose medical
> needs were denied or delayed pursuant to the Pain Management Initiative.

(D.I. 1 at ¶ 156)  Here, records from correctional facilities may reveal how Defendants' policies

and practices impacted all inmates, and which inmates sought and/or received medical care

during the relevant time period.  *See Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 460

(D.N.J. 2015) ("[O]ne cannot determine, upon the present pleadings, whether receipts or records

or other means exist . . . to identify class members."). Development of the record is also

necessary before the court can resolve the DOC Defendants' position that the proposed class is

an improper fail-safe class. *See Hernandez*, 2024 WL 1016365, at \*5 (denying motion to strike

because, without discovery, "the Court cannot perform the rigorous analysis required to

determine the extent to which [the] class claims may have to be amended to solve any fail-safe

problem.").

      Centurion also argues that the class allegations should be stricken because the prayer for

relief seeks compensatory damages, which would require an individualized inquiry into each

Plaintiff's injuries. (D.I. 24 at 18-19) But "damages need not be proven on a classwide basis for

class certification to be appropriate[,]" and it is not apparent from the face of the complaint that

Plaintiffs' individualized compensatory damages calculations would overwhelm the common

questions of law and fact in this case. *Cole's Wexford Hotel*, 127 F. Supp. 3d at 413. Cases

within the Third Circuit demonstrate that a putative class action complaint may survive a motion

to strike when the relief sought is a mix of injunctive relief and monetary damages. *See, e.g.*,

*Burford v. Del. County, Pa.*, 2019 WL 7048796, at \*2, 13-14 (E.D. Pa. Dec. 20, 2019) (denying

motion to strike class allegations in § 1983 action brought by criminal defendants seeking

injunctive relief and compensatory damages, among other forms of relief).

      Defendants may ultimately prevail at the class certification stage. Nonetheless, Plaintiffs

should be permitted to take discovery to determine the extent to which the putative class

members' medical care was delayed or denied pursuant to an unlawful policy, custom, or

practice. On its face, the complaint does not definitively establish that Plaintiffs cannot meet the

requirements of Rule 23. After the factual record has been developed, the court will be better

equipped to engage in the "rigorous analysis" of whether the requirements of Rule 23 are met.

*See Landsman*, 640 F.3d at 93.  For these reasons, I recommend that the court DENY the motions to strike Plaintiffs' class allegations.

## III.  CONCLUSION

For the foregoing reasons, I recommend that the court dispose of the pending motions as follows:

| MOVANT(S) | D.I. # | RECOMMENDED DISPOSITION |
|---|---|---|
| VitalCore's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) | D.I. 21 | GRANT-IN-PART<br>• GRANT motion to dismiss Count II, with leave to amend.<br>• DENY in all other respects. |
| Centurion's Motion to Strike Class Allegations | D.I. 23 | DENY |
| Centurion's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) | D.I. 25 | GRANT-IN-PART<br>• GRANT motion to dismiss Count II, with leave to amend.<br>• DENY in all other respects. |
| Centene's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) | D.I. 27 | GRANT-IN-PART<br>• GRANT motion to dismiss Count II, with leave to amend.<br>• DENY in all other respects. |
| DOC Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively, Strike Class Allegations | D.I. 53 | GRANT-IN-PART<br>• GRANT motion to dismiss Count I as to Records and the Commissioner Defendants.<br>• GRANT motion to dismiss Count II, with leave to amend.<br>• DENY in all other respects. |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

      The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated:  July 26, 2024

                                           Sherry R. Fallon

                                           United States Magistrate Judge