# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONA SAMUEL SAMPSON AND ORLANDO SAMUEL, personal representative of the Estate of HARRY SAMUEL, individually and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CENTENE CORPORATION, CENTURION OF DELAWARE LLC, VITALCORE HEALTH STRATEGIES, & MEDICAL DIRECTOR DR. AWELE MADUKA-EZEH,<br><br>*Defendants*. | )<br>)<br>)<br>) Case No. 1:23-cv-01134-SRF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## LETTER TO THE HONORABLE SHERRY R. FALLON IN RESPONSE TO PLAINTIFFS' LETTER REGARDING DISCOVERY DISPUTES

Jeremy D. Anderson (#4515)
BAKER & HOSTETLER LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801-1147
(302) 407-4224
jdanderson@bakerlaw.com

*Attorney for Defendant VitalCore*

Dated: July 15, 2026

# BakerHostetler

Baker&Hostetler LLP

1201 N. Market Street
Suite 1407
Wilmington, DE 19801

T 302.319.2799
www.bakerlaw.com

July 15, 2026

Jeremy D. Anderson
direct dial: 302.407.4224
jdanderson@bakerlaw.com

**<u>VIA CM/ECF</u>**
The Honorable Sherry R. Fallon
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 North King Street, Unit 14, Room 6100
Wilmington, DE 19801

*Re:*   ***Samuel, et. al. v. Centene, et. al., C.A. No. 1:23-cv-01134-SRF***

Dear Judge Fallon:

The Court should deny the relief that Plaintiffs' request for privileged information and information not necessary for class certification, additional searches, and more depositions. VitalCore has agreed to produce NCCHC reports for JVTCC Baylor, as well as to supplement the interrogatory responses.[1]   Plaintiffs' request for that discovery is therefore moot.

## I.   Plaintiffs' Request Exceeds the Permissible Scope of Proportional Class-Certification Discovery

Plaintiffs incorrectly state that November 13, 2026 is the close of fact discovery. It is not. November 13, 2026 is the close of **class certification discovery**. That distinction matters. Plaintiffs' repeated confusion of that divide is prevalent throughout their approach to this case and takes center stage in the present dispute.

Pre-certification discovery is not unlimited. Although the Third Circuit requires a "rigorous analysis" of Rule 23, that requirement permits inquiry into merits issues only to the extent necessary to decide certification; it does not authorize wholesale merits discovery untethered to Rule 23. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316–21 (3d Cir. 2008). This court must consider the evidence needed to decide numerosity, commonality, and typicality, but the discovery must remain proportional and directed to those issues. *See Marcus v. BMW of N.*

---

[1] During the parties' July 6, 2026 meet-and-confer, VitalCore agreed to supplement its responses to the requested interrogatories.

*Atlanta   Austin   Chicago   Cincinnati   Cleveland   Columbus   Dallas   Denver   Houston   Los Angeles
New York   Orange County   Orlando   Philadelphia   San Francisco   Seattle   Washington, DC   Wilmington*

The Honorable Sherry R. Fallon
July 15, 2026
Page 2

*Am., LLC*, 687 F.3d 583, 592–94 (3d Cir. 2012). That limitation is particularly important where, as here, class and merits discovery has been bifurcated.  Plaintiffs generalized assertions of "system-wide" failure in the prion healthcare system is insufficient. *See also MacLean v. Wipro Ltd.*, 2023 WL 3742832, at *4 (D.N.J. May 31, 2023) (explaining that Plaintiffs' entitlement to class-wide discovery "is not boundless," and courts must enforce Rule 26 proportionality, particularly before a class-certification motion is filed); *Conner v. Perdue Farms, Inc.*, 2013 WL 5977361, at *3-7 (D.N.J. Nov. 7, 2013) (restricting discovery to issues necessary for class certification).

Plaintiffs proposed order confuses class-certification discovery with full merits discovery. It would require VitalCore to produce nine sweeping categories of documents from **May 1, 2023 through June 1, 2026**, run seven additional overly broad ESI search terms, and make their employees sit for four additional depositions. That relief is not narrowly tailored. Plaintiffs have not shown that each requested category is necessary to class certification, non-duplicative of DDOC productions, or producible without invading protected patient, peer-review, quality-assurance, security, and confidentiality interests. Nor have Plaintiffs shown that the depositions they seek are not duplicative of the VitalCore depositions they have already taken.

II.     **The Court Should Not Order Blanket Production of Internal Quality, Review, and Committee Materials**

Plaintiffs collapse distinct categories of documents into a single request for wholesale production: continuous quality improvement ("CQI") or QAPI reports and minutes, morbidity-and-mortality ("M&M") or adverse-incident reports, monthly status reports, healthcare advisory committee minutes, medical staff meeting minutes, health services reports, joint provider meeting minutes, and special-needs multidisciplinary team minutes. These categories raise different issues and cannot be resolved by Plaintiffs' generalized assertion that anything "system-wide" is discoverable. Moreover, many requested materials contain protected health information, peer-review content, quality-assurance analyses, security-sensitive information, and third-party confidential information. The protective orders that have been entered do not establish relevance, proportionality, waiver, or discoverability.  Nor do those protective orders eliminate the need for redactions.

Plaintiffs' arguments concerning CQI and M&M reports suffer from the same defect. Plaintiffs cite cases addressing merits discovery, not the narrower question presented here: whether privileged, patient-specific morbidity-and-mortality materials must be produced during class certification discovery. They need not be. The Third Circuit recognizes that Rule 23 permits inquiry into merits issues only to the extent necessary to decide certification; it does not authorize merits discovery untethered to Rule 23. See *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008). M&M materials concern after-the-fact reviews of individual adverse events, clinical judgments, quality-improvement assessments, and peer-review deliberations. They are not necessary to determine numerosity, commonality, or typicality.

The peer-review privilege concerns independently defeat Plaintiffs' request. Delaware recognizes a statutory peer-review privilege protecting records and proceedings of committees

The Honorable Sherry R. Fallon
July 15, 2026
Page 3

whose function includes reviewing medical records, medical care, and physicians' work with a view toward quality of care and utilization. 24 Del. C. § 1768(a). That protection extends to information, data, reports, and records furnished to or generated by such committees. *See Ocme v. Dover Behavioral Health System*, 976 A.2d 160 (Del. 2009); *Danklef v. Wilmington Medical Center*, 429 A.2d 509 (Del. Super. 1981). The purpose is to maintain professional standards and encourage candid medical-quality review. Federal law points the same direction: the Patient Safety and Quality Improvement Act protects "patient safety work product," including data, reports, records, memoranda, analyses, and written or oral statements assembled or developed for reporting to a patient safety organization or reflecting patient-safety deliberations or analysis. *See KD v. United States, 715 F. Supp. 2d 587* (D. Del. 2010). Plaintiffs' merits-focused cases do not overcome these protections or justify production of M&M materials at the class certification stage.

While Plaintiffs treat quality-improvement and incident-review materials as ordinary business records, these materials are uniquely sensitive because they are generated to evaluate clinical care, assess incidents, identify improvements, and support candid internal review. Even if the Court concludes that no categorical federal privilege bars all production, the proper remedy is not blanket disclosure. At a minimum, Plaintiffs should be required to identify specific subject matters, facilities, time periods, and incidents relevant to the named Plaintiffs and Rule 23 issues, and should permit VitalCore to apply targeted redactions and assert any applicable privileges or protections on a document-by-document basis.

Consistent with that proportional approach, VitalCore has agreed to produce the NCCHC accreditation reports and the QAPIs report for Baylor Women's Correctional Institution and James T. Vaughn Correctional Center—the two facilities where the named Plaintiffs were housed. That production is appropriately tailored to class-certification discovery because it provides Plaintiffs with facility-level quality and accreditation materials for the facilities actually implicated by the named Plaintiffs' claims. VitalCore does not agree, however, that class-certification discovery requires production of NCCHC, QAPI, CQI, M&M, committee, or other internal quality materials for facilities where no named Plaintiff was housed, or broader production beyond the two agreed reports for Baylor and James T. Vaughn.

Plaintiffs have not shown that DDOC's production is inadequate as to each disputed category. VitalCore should not be required to reproduce documents already available from DDOC or to conduct duplicative collection and review where Plaintiffs already possess the same or substantially similar materials. If Plaintiffs contend that particular DDOC productions are incomplete, they should identify the specific gaps, not use alleged gaps as a basis for an order compelling every document in every listed category.

### III. The Nine Categories of Documents Requested by Plaintiffs Amount to a Fishing Expedition

A district court is not, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim" – even at the class certification-phase of discovery. *Soseeah v. Sentry Ins.,* C.A. No. 12-1091 RB/ACT, 2013 WL 11327129, at *1 (D.N.M. Nov. 4, 2013) (quoting *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002)). *See also Tottenham v. Trans*

The Honorable Sherry R. Fallon
July 15, 2026
Page 4

*World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y.2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

Plaintiffs do not have any "modicum of objective support" for the allegations that supposedly support their request for the nine categories of documents they seek.  In support of their request for: (1) **CQI reports**, Plaintiffs imply that VitalCore has identified "systematic problems" (D.I. 305 at 3); (2) **M&M reports**, Plaintiffs allege that "egregious failures that led to Samuel's death" were "replicated time and time again" (*Id.*); (3) **Monthly Status Reports**, Plaintiffs argue that these documents show "delays", (*Id.* at 4); (4) **Healthcare Advisory Minutes**, Plaintiffs claim that "these documents contain . . . data on the lack of staffing, unfilled vacancies, backlogs on mental health evaluations, delays on sending out incarcerated persons for medically-required consultations, and rate of medication errors" (*Id.*);  (5) **Medical Staff Meeting Minutes**, Plaintiffs contend that the "problems discussed by VitalCore medical staff at the regularly-occurring meetings are the type of system-wide issues that are relevant" (*Id.*); (6) **Health Services Reports**, Plaintiffs allege they "reveal" VitalCore's "failures" (*Id.*); (7) **Pharmacy & Therapeutics meeting Minutes**, Plaintiffs aver these documents reveal how incarcerated persons "are not able to access prescribed medications, and how VitalCore is trying to drive down its medication costs" (*Id.* at 5); (8) **Multidisciplinary Team Meeting Minutes**, Plaintiffs imply that they show that "incarcerated individuals with special needs" did not receive "appropriate care" (*Id.*); and (9) **Subcontracts**, Plaintiffs allege that "these documents will show how VitalCore could have delivered adequate healthcare but doing so would cut into its financial incentives" (*Id.*). Plaintiffs lack of evidence for any of those claims is fatal to their requests.

Furthermore, Plaintiffs admission DDOC produced "a few of VitalCore's meeting minutes" satisfies VitalCore's obligations on this category of documents. *Boucher v. First Am. Title Ins. Co.*, C.A. No. C10-199RAJ, 2011 WL 5299497, at *3 (W.D. Wash. Nov. 4, 2011) (stating that "it is fortunate that Plaintiffs have curtailed their demands to a sample of" transactions). And Plaintiffs' request for subcontracts with hospitals, specialty practices, imaging centers, procedure centers, and durable medical equipment providers is disproportionate to class certification. Plaintiffs have not shown that those agreements will prove commonality, typicality, predominance, or any other class-certification requirement.

## IV.    Plaintiffs' Request that VitalCore Conduct Another ESI Search Should be Denied

Plaintiffs' argument that VitalCore searched for ESI using the wrong search terms is meritless. They cite absolutely no evidence for that proposition. (D.I. 305 at 6 (citing Exhibit "XX")). To the contrary, Plaintiffs conducted an extremely broad search of more than 170 custodians in January 2025 using the following terms: "Harry Samuel"; "Henry Samuel"; "Christopher Desmond"; "001603880"; "00229027"; "00201360"; "Arthur Govan"; "Medical"; "Treatment"; "Prescription"; "Therapy"; "X-ray"; "Transportation"; "Medication"; "Doctor"; "Reports"; "Psychological"; "Psychiatric"; "Recommendation"; and "Surgery. " VitalCore's extensive search and review resulted in the production of more than 5,000 responsive documents. Plaintiffs' belated eleventh-hour request that VitalCore run a new set of requests should be denied. *Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 168 (D. Del. 2010) (refusing to compel

The Honorable Sherry R. Fallon
July 15, 2026
Page 5

production because such "voluminous and far reaching" discovery was "significantly broader than necessary" to assess class-certification issues).

## V.      Plaintiffs' Request for Additional Depositions Should Be Denied

VitalCore presented two Rule 30(b)(6) depositions – Dr. Harbans Deol (VitalCore's chief medical officer) and Lori Wieschedel (VitalCore's director of utilization management for the State of Delaware). VitalCore also agreed to present two additional deponents – Stuart Hudson (VitalCore's COO) and Kristen Hernandez (VitalCore's Chief Nursing Officer) – and agreed to present Dr. Deol for his continued deposition.  Until the filing of this discovery dispute, the parties had an agreement that no further depositions would be taken until after the agreed upon depositions.

Plaintiffs seek an order compelling July or August depositions of John Barnas, Jessica Martin, Shyam Singareddy, and John Tomarchio. Plaintiffs have not shown why these additional witnesses are necessary, proportional, or limited to class-certification issues. Dr. Singareddy and Dr. Tormachio are assistant medical officers for VitalCore. Since Plaintiffs have already taken the deposition of Dr. Deol, Vitalcore's chief medical officer, those depositions would be duplicative. Moreover, Vitalcore has offered to make Dr. Deol – its 30(b)(6) witness – available for a continued deposition.  Plaintiffs can ask Dr. Deol any questions that it may want to ask Dr. Singareddy and Dr. Tormachio. Furthermore, since Plaintiffs have already taken the deposition of Ms. Wieschedel and Teresa Jamison, VitalCore's VP of Operations, and are scheduled to take Ms. Heranandez's deposition next week, the depositions of Mr. Barnas (a CQI nurse) and Jessica Martin (nurse) are also duplicative.[2] Before additional depositions are compelled, the scheduled depositions should be completed. And Plaintiffs must demonstrate that any remaining topics cannot be addressed more efficiently through a Rule 30(b)(6) deposition or targeted written discovery.

Respectfully submitted,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson (No. 4515)

cc: All counsel of Record

---

[2] During the parties' May 7, 2026 meet and confer, Plaintiffs could not articulate any reason for Ms. Martin's deposition and acknowledged counsel had not reviewed her role before the call.