**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MONA SAMUEL SAMPSON and ORLANDO SAMUEL, Personal Representatives of the ESTATE OF HARRY SAMUEL, *et al.*, individually and on behalf of others similarly situated, | ) | |
| Plaintiffs, | ) | Civil Action No. 23-1134-SRF |
| v. | ) | |
| CENTENE CORPORATION, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this **1st** day of **September, 2026**, the court having considered the motion to amend the second amended complaint ("SAC") filed by plaintiffs Christopher Robert Desmond, Arthur Govan, Orlando Samuel, and Mona Samuel Sampson (collectively, "Plaintiffs"), (D.I. 274),[1] IT IS ORDERED that the motion is GRANTED for the following reasons.

1. **Background.** The court writes primarily for the parties and assumes familiarity with the pleaded allegations. This putative class action is brought on behalf of individuals incarcerated in Delaware correctional facilities against Dr. Awele Maduka-Ezeh, the former Medical Director of the Delaware Department of Corrections ("DDOC"), and contract medical providers VitalCore Health Strategies, Centurion of Delaware LLC, and Centene Corporation (collectively, "Defendants"). (D.I. 207) Plaintiffs contend that their rights under the Eighth and

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 275, D.I. 285, and D.I. 292.

Fourteenth Amendments of the U.S. Constitution have been and continue to be violated by Defendants' failure to provide them with adequate medical care from April 1, 2020 through the present.

**2.** In the proposed third amended complaint ("TAC"), Plaintiffs seek leave to name as defendants Commissioner Terra Taylor, Bureau Chief Michael Records, and Medical Director Carolyn Ianni (collectively, the "Proposed DDOC Defendants") in their official capacities. (D.I. 274 at 1) The TAC seeks injunctive relief against each of the Proposed DDOC Defendants. (D.I. 274-1 at 42)

**3.** The TAC proposes substituting Dr. Ianni, the current DDOC medical director, for Dr. Maduka-Ezeh. (D.I. 274-1 at ¶¶ 35-37) In a Memorandum Order issued on May 29, 2026, the court indicated that such a substitution was procedurally proper under Federal Rule of Civil Procedure 25(d). (D.I. 276 at 3 n.5)

**4.** Taylor and Records were named as defendants in their individual capacities in the original complaint filed on October 11, 2023, and they joined Dr. Maduka-Ezeh and other defendants in moving to dismiss the claims against them. (D.I. 1; D.I. 53) During the June 12, 2024 oral argument on the motion to dismiss, Plaintiffs' counsel expressly reiterated that Taylor, Records, and Dr. Maduka-Ezeh were named in their individual capacities and stated that they could not be sued in their official capacities. (D.I. 76 at 46:22-47:7)

**5.** In a Memorandum Order issued on September 27, 2024, the court denied the motion to dismiss the claims against Dr. Maduka-Ezeh but dismissed without prejudice the claims against Taylor and Records for failure to plausibly allege that they were personally involved in the alleged violations of Plaintiffs' constitutional rights. (D.I. 89 at 3-4) The court granted Plaintiffs fourteen days from the date of the Memorandum Order to amend the claims against

Taylor and Records. (*Id.* at 5) Plaintiffs filed a first amended complaint on October 11, 2024, within the requisite time frame. (D.I. 90) The amended pleading did not name Taylor or Records as defendants. (*Id.*)

**6.** Following the submission of the first amended complaint, the court entered a scheduling order setting a deadline of February 26, 2027 for amended pleadings. (D.I. 99) Thereafter, the parties mutually agreed to multiple extensions of scheduling order deadlines. (D.I. 134; D.I. 141; D.I. 165; D.I. 172; D.I. 191; D.I. 221) The deadline for amended pleadings remains unchanged. (D.I. 225 at ¶ 2)

**7.** On February 19, 2026, Plaintiffs moved for leave to file a second amended complaint. (D.I. 186) The second amended complaint included five additional inmates who sought to serve as class representatives and revised the damages claims "to forego seeking individual compensatory damages from Defendants." (D.I. 187 at 1-2, 12) Dr. Maduka-Ezeh did not oppose the proposed amendments, including the withdrawal of the compensatory damages claim. (D.I. 196)

**8. Legal Standard.** Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 520 (D. Del. 2010) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)). Absent a showing of undue delay, bad faith or dilatory motive, undue prejudice, repeated failure to cure deficiencies by amendment previously allowed, or futility of the amendment, leave to amend under Rule 15 should generally be permitted. *Id.* at 520–21 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant or deny leave to amend lies

within the discretion of the court. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

**9. Analysis.** In the proposed TAC, Plaintiffs seek leave to add the Proposed DDOC Defendants in their official capacities by invoking the *Ex parte Young* exception to the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception provides that a state official acting in violation of federal law "may, under certain conditions, be sued in federal court in his or her official capacity ... for injunctive or declaratory relief." *Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023) (citing *Ex parte Young,* 209 U.S. 123 (1908)). Under the exception, suits may be brought against individual state officials if: (1) the claims seek to end an ongoing violation of federal law, and (2) the relief sought is limited to prospective injunctive and declaratory relief. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Dr. Maduka-Ezeh and non-party DDOC oppose Plaintiffs' requested relief, alleging that: (1) Plaintiffs unduly delayed in seeking the proposed amendment despite having multiple opportunities to cure deficiencies in the operative pleading, (2) the proposed TAC is prejudicial to them, and (3) the proposed amendments would be futile under Rule 12(b)(6). (D.I. 285 at 5-16)

**10. *Undue delay.*** Plaintiffs contend that there is no undue delay because the deadline for amending the pleadings in this matter does not expire until February 26, 2027. (D.I. 275 at 5; D.I. 173) In general, filing a motion for leave to amend within the stipulated scheduling order deadline "strongly supports a conclusion that the amendment was not untimely filed (and, relatedly, that its filing will not work to unfairly prejudice [the defendant])." *See Invensas Corp. v. Renesas Elecs. Corp.*, C.A. No. 11-448-GMS-CJB, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013). However,

> [t]he Court's discretion to grant or deny leave to amend is not limited in such mechanistic ways. The question of whether a motion for leave to amend is timely under the scheduling order is certainly relevant to the question of whether there has been undue delay. They are not, however, the same question. Just as a motion filed after the deadline could be filed without undue delay, so too could undue delay exist when a motion is filed before the deadline.

*Delaware Display Grp. LLC v. Lenovo Grp. Ltd., Lenovo Holding Co.*, C.A. No. 13-2108-RGA, 2016 WL 720977, at *8–9 (D. Del. Feb. 23, 2016). Denial of a motion for leave to amend may be warranted based on "a gap between when the amendment becomes possible and when it is actually sought[.]" *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017).

**11.** Plaintiffs' position regarding the lack of undue delay is persuasive with respect to the proposed addition of Dr. Ianni as a named defendant. The proposed second amended complaint withdrew the compensatory damages claim brought against Dr. Maduka-Ezeh, which should have placed Defendants on notice that Plaintiffs intended to assert an official capacity claim against the Medical Director by invoking the *Ex parte Young* exception. (D.I. 186, Ex. B at 44-45) Dr. Maduka-Ezeh did not challenge the timeliness of the proposed amendment and instead consented to the changes. (D.I. 196) The substitution of Dr. Ianni for Dr. Maduka-Ezeh in the proposed TAC is consistent with Rule 25 and does not amount to a substantive change.[2]

**12.** However, Plaintiffs do not address the relevant issue of when the proposed amendments to assert claims against Taylor and Records in their official capacities became possible. *See Mullin*, 875 F.3d at 151. The record before the court suggests that Plaintiffs should have been aware of their official capacity claims against Taylor and Records when they named them in the original complaint. (D.I. 1 at ¶¶ 17, 21) Plaintiffs' remarks at oral argument and their omission of Taylor and Records from the first amended complaint indicate that they

[2] The proposed TAC contains typographical errors identifying Dr. Maduka-Ezeh as a defendant. (*See, e.g.*, D.I. 274-1 at ¶¶ 237-38)

understood official capacity claims against these defendants to be legally meritless. (D.I. 76 at 46:22-47:7; D.I. 90) The proposed TAC bases the official capacity claims on the *Ex parte Young* exception to Eleventh Amendment immunity, which was available to (if not appreciated by) Plaintiffs at the time the original complaint was filed. (D.I. 275 at 4) Plaintiffs also allude to "recently-produced documentary evidence" as a justification for the proposed TAC, but they do not specifically identify any such evidence that provides new factual support for asserting claims against the Proposed DDOC Defendants in their official capacities. (D.I. 275 at 4)

**13.** For the foregoing reasons, Plaintiffs' motion presents a close question on the issue of undue delay with respect to the proposed addition of Taylor and Records as defendants. Nonetheless, Plaintiffs moved for leave to file the proposed TAC well in advance of the February 26, 2027 scheduling order deadline for amended pleadings, which "strongly supports a conclusion that the amendment was not untimely filed[.]" (D.I. 173); *Invensas*, 2013 WL 1776112, at *3. Moreover, as Plaintiffs note in their reply brief, the "switch" from individual to official capacity claims already occurred, with Dr. Maduka-Ezeh's consent, when the second amended complaint was filed. (D.I. 292 at 4; *see* D.I. 196) In keeping with "the solicitude given in civil rights cases" to amend the pleading despite some delay and the lack of actual prejudice described below, Plaintiffs' delay in seeking leave to file the TAC is not "undue." *Mullin*, 875 F.3d at 153.

**14. *Prejudice.*** As the nonmovants, the DDOC and Dr. Maduka-Ezeh "bear[ ] the burden to demonstrate that actual prejudice will result from the amendment of the complaint." *Invensas*, 2013 WL 1776112, at *2 (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990)). They do not meet their burden. The DDOC and Dr. Maduka-Ezeh describe the general unfairness of permitting a switch from individual capacity claims to official capacity claims in

spite of their prior assurances on the record, citing non-binding, out-of-circuit cases disfavoring such a switch. (D.I. 285 at 8-10) But this argument overlooks the fact that Dr. Maduka-Ezeh previously consented to this switch by agreeing to the proposed amendments in the second amended complaint, which withdrew compensatory damages claims against Dr. Maduka-Ezeh and limited the relief sought against her to declaratory and injunctive relief. (D.I. 196)

**15.** The DDOC and Dr. Maduka-Ezeh also cite broad aspects of their defense, such as counsel selection, discovery strategy, and immunity arguments, without identifying any specific prejudice or describing what additional discovery is required to defend against the official capacity claims in the proposed TAC. (D.I. 285 at 10) They emphasize the passage of the substantial completion deadline for class certification discovery on May 13, 2026 without acknowledging that fact discovery on class certification does not close until November 13, 2026.[3] (D.I. 285 at 5-6; D.I. 271) The November 13, 2026 deadline for the completion of class certification fact discovery is the result of multiple extensions of time sought by both parties in this case. (D.I. 134; D.I. 141; D.I. 165; D.I. 172) Nothing on the present record indicates that additional discovery occasioned by the proposed amendments could not be completed within the applicable deadlines.

**16.** In contrast, Plaintiffs maintain that Taylor and Records "are those with the power to implement any injuncti[on] designed to reform the broken correctional healthcare system," and they would be hamstrung in implementing any relief if leave to amend is denied. (D.I. 292 at 3)

---

[3] The DDOC and Dr. Maduka-Ezeh discuss the Sixth Circuit's nonprecedential decision in *Gunnels v. Kenny*, 700 F. App'x 478 (6th Cir. 2017). (D.I. 285 at 8-9) But *Gunnels* is distinguishable for reasons acknowledged by the DDOC and Dr. Maduka-Ezeh in their answering brief. The actual prejudice in *Gunnels* resulted from the reopening of closed discovery if amendment were permitted. *Gunnels*, 700 F. App'x at 484. Here, in contrast, class certification discovery does not close until November 13, 2026, and merits discovery has not yet begun. (D.I. 271)

On balance, the prejudice to Plaintiffs outweighs the prejudice to the DDOC and Dr. Maduka-Ezeh.

**17. *Futility.*** According to the DDOC and Dr. Maduka-Ezeh, leave to amend would be futile because the proposed TAC fails to adequately allege an ongoing violation of federal law. (D.I. 285 at 12-13) A review of the proposed TAC does not support their argument. By way of example, the proposed TAC identifies ongoing violations in the form of a plaintiff who "does not know whether or not he has prostate cancer—and if he does, what stage it has reached—because Defendants continue to delay and deny him his needed consult with a specialist." (D.I. 274-1 at ¶ 56) Another plaintiff is alleged to have "stitches and tubes remaining in his eyes from procedures that occurred over four years ago." (*Id.* at ¶ 73) A third plaintiff allegedly does not receive his prescribed medication on a consistent basis and continues to be denied a CAT scan and specialist care for his conditions. (*Id.* at ¶ 93) Unlike the averments in *Merritts v. Richards*, which claimed past violations with ongoing effects in the context of easements acquired without justification or just compensation, 62 F.4th 764, 772 (3d Cir. 2023), Plaintiffs' proposed TAC identifies ongoing failures to provide adequate health care in addition to ongoing adverse health effects resulting from those failures, (D.I. 274-1 at ¶¶ 56, 73, 93).

**18.** The DDOC and Dr. Maduka-Ezeh also argue that the proposed TAC fails to adequately allege an underlying Eighth Amendment violation on the part of the Proposed DDOC Defendants because it does not state that they had actual knowledge of Plaintiffs' medical needs and were intentionally indifferent to those needs.[4] (D.I. 285 at 13-15) But the cited portions of

[4] The DDOC and Dr. Maduka-Ezeh also suggest that the Eighth Amendment claims against the Proposed DDOC Defendants are futile for the same reasons the court previously dismissed Taylor and Records, without addressing the analytical differences occasioned by a claim asserted against a state actor in his or her individual, as opposed to official, capacity. (D.I. 285 at 14-15)

the proposed TAC do not support their argument. (D.I. 274-1 at ¶¶ 140-44) For example, the proposed TAC alleges that Taylor provided a CPAP machine for a single prisoner while taking no action to remedy prisoners' lack of access to durable medical equipment more broadly. (*Id.* at ¶ 140) Other averments state that Taylor and Records were aware of VitalCore's failure to satisfy its staffing obligations but took no action to enforce the terms of the contracts.[5] (*Id.* at ¶¶ 142-43) At this stage, the allegations are sufficient to plausibly demonstrate the Proposed DDOC Defendants' actual knowledge of the ongoing violations and their indifference to Plaintiffs' medical needs.

**19.** Finally, the DDOC and Dr. Maduka-Ezeh contend that the proposed TAC fails to indicate how the request for injunctive relief would provide prospective relief to Plaintiffs and the purported class. (D.I. 285 at 15-16) The proposed TAC requests a prospective injunction enjoining the Proposed DDOC Defendants "from continuing to subject Plaintiffs and the class to unlawful and unconstitutional delays and denials of treatment described herein[.]" (D.I. 274-1 at 42) The requested injunction satisfies the *Ex parte Young* requirement that relief must be limited to prospective injunctive relief. *See Pa. Fed'n of Sportsmen's Clubs*, 297 F.3d at 323.

**20.** To the extent that the DDOC and Dr. Maduka-Ezeh raise additional issues with the sufficiency of the relief requested, the legal basis for their argument is unclear. They cite no binding authority, or cases from this district, in support of their argument. (D.I. 285 at 15) The

[5] The DDOC and Dr. Maduka-Ezeh challenge the sufficiency of the allegations against Dr. Ianni in the proposed TAC, alleging that Plaintiffs fail to satisfy the *Ex parte Young* requirements with respect to Dr. Ianni and also fail to plausibly allege ongoing knowledge or deliberate indifference attributable to Dr. Ianni. (D.I. 285 at 13-15) Dr. Maduka-Ezeh raised similar challenges to the SAC in a motion to dismiss, which the court denied in its May 29, 2026 Memorandum Order. (D.I. 212; D.I. 276) The DDOC and Dr. Maduka-Ezeh have not shown that the pleaded allegations in the proposed TAC differ from the SAC in a way that would alter the court's analysis regarding the sufficiency of the averments against the DDOC Medical Director.

cases they do cite are not persuasive. *See, e.g.*, *Johnson v. Becerra*, 668 F. Supp. 3d 14 (D.D.C. 2023) (granting a motion to dismiss for lack of subject matter jurisdiction where plaintiffs failed to establish redressability in the context of alleged Medicare and Rehabilitation Act violations, without addressing the *Ex parte Young* exception, futility, the Eighth Amendment, or any other issues relevant to the instant case).

**21. Conclusion.** In the exercise of the court's discretion, and in the interest of upholding the Third Circuit's liberal policy favoring amendment to ensure that claims are decided on the merits, IT IS ORDERED that the motion to amend (D.I. 274) is GRANTED. On or before **September 8, 2026**, Plaintiffs shall docket a revised proposed TAC correcting the typographical errors describing Dr. Maduka-Ezeh as a named defendant.

Sherry R. Fallon
United States Magistrate Judge