**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MONA SAMUEL SAMPSON and ORLANDO SAMUEL, Personal Representatives of the ESTATE OF HARRY SAMUEL, *et al.*, individually and on behalf of others similarly situated, | ) | |
| Plaintiffs, | ) | Civil Action No. 23-1134-SRF |
| v. | ) | |
| CENTENE CORPORATION, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

At Wilmington this **1st** day of **September, 2026**, the court having considered the parties' discovery dispute briefing and associated filings regarding Defendants' assertion of the peer review privilege, (D.I. 324; D.I. 325; D.I. 327; D.I. 328; D.I. 329; D.I. 330), as well as the arguments presented at the hearing on July 15, 2026, IT IS ORDERED that Plaintiffs' motions for a conference to resolve discovery disputes (D.I. 288; D.I. 297) are addressed as follows.

1. **Background.** The court writes primarily for the parties and assumes familiarity with the pleaded allegations. This putative class action is brought on behalf of individuals incarcerated in Delaware correctional facilities who allege that their rights under the Eighth and Fourteenth Amendments of the U.S. Constitution have been and continue to be violated by Defendants' failure to provide them with adequate medical care from April 1, 2020 through the present. The parties are currently engaged in class certification fact discovery, which closes on November 13, 2026. (D.I. 271)

**2.** The present dispute originated from Plaintiffs' motion to compel certain discovery from VitalCore Health Strategies ("VitalCore"), a contract medical provider for the Delaware Department of Corrections ("DDOC"). (D.I. 305) Plaintiffs move to compel certain categories of documents for the time period from May 1, 2023 to June 1, 2026:

i. Continuous Quality Improvement ("CQI" or "QAPI") reports and minutes;

ii. Morbidity and Mortality ("M&M") reports and/or adverse incident reports;

iii. Monthly status reports;

iv. Healthcare advisory committee meeting minutes;

v. Medical staff meeting minutes;

vi. Health services reports;

vii. Joint provider meeting minutes; and

viii. Special needs multidisciplinary team meeting minutes.

(D.I. 305-6) The CQI reports, M&M reports, and related documents are intended to identify deficiencies in the prison healthcare system and develop, implement, and review the efficacy of corrective action plans. (D.I. 305 at 3) Under the terms of their agreements with the DDOC, contract service providers of prison healthcare are required to hold administrative meetings, issue monthly statistical reports, and provide DDOC with CQI and M&M reports. (D.I. 324-1)

**3.** VitalCore refused to produce many of the requested documents on the grounds that they are protected by the peer review privilege. (D.I. 311 at 2-3) During the discovery dispute hearing on July 15, 2026, the DDOC, the DDOC Medical Director, Centene Corporation ("Centene"), and Centurion of Delaware LLC ("Centurion") joined in VitalCore's arguments for application of the peer review privilege.[1] (7/15/2026 Tr.)

---

[1] The DDOC is a non-party to this action but joined in the supplemental briefing on the

**4.** At the conclusion of the discovery dispute hearing on July 15, 2026, Plaintiffs and VitalCore indicated that they could reach mutual agreement on all their discovery disputes except for the production of documents allegedly protected by the peer review privilege. (*Id.*) The court ordered the participants at the hearing to submit a stipulated supplemental briefing schedule for addressing the applicability of the peer review privilege. (D.I. 317) Supplemental briefing is now complete, and the issue is ripe for resolution.

**5. Legal Standard.** Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Evidentiary privileges asserted in federal court are governed by Federal Rule of Evidence 501, which states that

> [t]he common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.[2] In accordance with Rule 501, "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).

---

applicability of the peer review privilege. (D.I. 324) For ease of reference, and consistent with the parties' supplemental briefing, the court refers to Dr. Ianni, Centene, Centurion and VitalCore collectively as "Defendants."

[2] Federal Rule of Evidence 501 was amended in 2011. The Committee Notes on the amendment confirm that the "changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 501, Advisory Committee Notes to 2011 Amendment.

**6.** There is no federal statutory peer review privilege. Congress had the opportunity to adopt a federal medical peer review privilege when it enacted the Health Care Quality Improvement Act of 1986, but it declined to do so. *See* 42 U.S.C. §§ 11101-52; *see also Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005). In 2005, Congress enacted the Patient Safety and Quality Improvement Act ("PSQIA") to protect certain documents created for submission to a certified patient safety organization ("PSO"), but this statute also omitted a broader peer review privilege. *See* 42 U.S.C. § 299b-21. The United States Supreme Court has stated that courts should be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pa. v. EEOC,* 493 U.S. 182, 189 (1990).

**7.** Although Rule 501 gives federal courts the flexibility to recognize federal common law privileges, "with very limited exceptions, federal courts have generally declined to grant requests for new privileges." *Pearson*, 211 F.3d at 67 (citing *Univ. of Pa.*, 493 U.S. at 189). Before recognizing a new privilege under federal common law, the court must assess whether the privilege "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* (citing *Trammel v. United States*, 445 U.S. 40, 47 (1980); *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996)). Factors relevant to the analysis include: (1) the needs of the public good, (2) whether the privilege is rooted in the imperative need for confidence and trust, (3) the evidentiary benefit of the denial of the privilege, and (4) consensus among the states. *Jaffee*, 518 U.S. at 10-16. The party asserting the privilege bears the burden of establishing its applicability. *See In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990).

**8. Analysis.** Defendants ask this court to apply Delaware's statutory peer review privilege under federal common law to bar the production of the requested documents.[3] (D.I. 324 at 4-12) The relevant state statute provides that

> the records and proceedings of committees and organizations . . . are confidential and may be used by those committees or organizations and the members thereof only in the exercise of the proper functions of the committee or organization. The records and proceedings are not public records and are not available for court subpoena, nor are they subject to discovery.

24 *Del. C.* § 1768(b). The committees and organizations subject to Section 1768 include "peer review committees or organizations whose function is the review of medical records, medical care, and physicians' work, with a view to the quality of care" provided to patients. *Id.* at § 1768(a).

**9.** It is broadly recognized that all 50 states and the District of Columbia have enacted some form of a medical peer review privilege. *See Adkins v. Christie*, 488 F.3d 1324, 1327 (11th Cir. 2007) (concluding that "the medical peer review process does not warrant the extraordinary protection of an evidentiary privilege in federal civil rights cases."); *U.S. v. Aurora Health Care, Inc.*, 91 F. Supp. 3d 1066, 1067 (E.D. Wis. 2015). This consensus among the states supports Defendants' position under the fourth prong of the test set forth in *Jaffee* to some degree. However, the Third Circuit has stated that "[t]he appropriateness of deference to a state's law of privilege is diminished" when "a defendant state actor alleged to have violated citizens' federal

[3] There is no dispute that Congress has not enacted a statutory medical peer review privilege that would encompass the documents at issue here. *See Weiss ex rel. Estate of Weiss v. Cnty. of Chester*, 231 F.R.D. 202, 205, 207 (E.D. Pa. 2005) (observing that Congress had more than one occasion to consider whether to include the privilege among federal statutes but declined to do so). Defendants concede that the PSO requirement under the PSQIA is not met: "Admittedly, Defendants neither 'meet the technical requirements' for a PSO nor report to a PSO the information created throughout the implementation of the CQI program and other DOC policies." (D.I. 324 at 9; *see also* D.I. 329 at 6)

rights is asserting the privilege[.]" *Pearson*, 211 F.3d at 68; *see also Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009) ("The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now.").

**10.** Moreover, federal adoption of the peer review privilege would not "promote[ ] sufficiently important interests to outweigh the need for probative evidence." *Jaffee*, 518 U.S. at 9-10. Defendants explain that "[t]he purpose of peer review statutes is to promote candid self-evaluation and quality improvement by ensuring that peer review materials are not later used in litigation." (D.I. 324 at 6) But the weight of authority does not support Defendants' position, particularly in the context of a civil rights case arising from allegations of inadequate medical care in a prison setting.

**11.** In *Agster v. Maricopa County*, the Ninth Circuit declined to adopt a federal peer review privilege in a prisoner civil rights case after balancing the competing interests:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided.

*Agster*, 422 F.3d at 839. The court rejected the argument that mortality reviews would be chilled due to the disclosure "[g]iven the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not[.]" *Id.*

**12.** Following the reasoning in *Agster*, the Eastern District of Pennsylvania declined to adopt the peer review privilege to protect mortality and sentinel-event reviews in a prisoner class action brought under the Eighth and Fourteenth Amendments. *See Williams v. City of Phila.*, 2014 WL 5697204, at *4 (E.D. Pa. Nov. 4, 2014). In *Williams*, the court expressly distinguished a prisoner civil rights class action from a medical malpractice suit seeking monetary damages to

compensate for the inadequate care of a prison doctor. *Id.* A prisoner civil rights case raises "questions integral to the development of federal policy," and precluding review of M&M reports and other peer review documents "would be detrimental to the development of that policy." *Weiss ex rel. Estate of Weiss v. Cnty. of Chester*, 231 F.R.D. 202, 206–07 (E.D. Pa. 2005). Numerous other district courts have declined to recognize the peer review privilege in the context of prisoner civil rights litigation for similar reasons. *See Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1197-99 (D.N.M. 2019) (citing cases).

**13.** Here, Defendants contend that requiring disclosure of peer review documents "creates an environment where participants may be more cognizant of and cautious about the content and documentation of their quality improvement discussions, leading to missed opportunities for improvement or incomplete improvement plans." (D.I. 329 at 8) Although Defendants raise important concerns, those concerns do not outweigh the need for probative evidence in a Section 1983 case brought to address allegedly unconstitutional state action regarding the safety and wellbeing of prisoners in need of adequate medical care. *See Weiss*, 231 F.R.D at 206; *Johnson v. Cook Cnty.*, 2015 WL 5144365, at *4 (N.D. Ill. Aug. 31, 2015) (explaining it is harder for a plaintiff to prove "a widespread practice of deliberate indifference to the serious medical needs of inmates" than to establish medical malpractice). Any chilling effect is limited by the fact that prison medical providers are contractually obligated to provide CQI reports, M&M reports, and other documents pertaining to the provision of inmate health services. (D.I. 324-1) And any chill on the peer review process is outweighed by "the need for truth in rooting out unconstitutional state-action[.]" *Estate of Belachir v. County of McHenry*, 2007 WL 2128341, at *7 (N.D. Ill. July 25, 2007).

**14.** The cases cited by Defendants in support of a federal common law peer review privilege are not persuasive. In *Hadix v. Caruso*, the court gave significant weight to the broad adoption of state peer review privilege statutes and concluded that discovery of peer review materials was not necessary because prisoners' civil rights could be adequately protected by an individualized review of each plaintiff's medical records. 2006 WL 2925270, at *2 (W.D. Mich. Oct. 6, 2006). The court rejected the Ninth Circuit's analysis in *Agster* as "applicable but not persuasive" and equated a prisoner civil rights case founded on Eighth Amendment claims to be "the federal equivalent of state medical malpractice suits[.]" *Id.* *Hadix* has received significant negative treatment since its issuance, and its reasoning has not been widely adopted.

**15.** In *Finney v. Palakovich*, the court applied a peer review privilege to bar the production of a prisoner suicide report prepared in anticipation of a prison doctor's potential full-time employment, and not in response to the suicides. 2010 WL 3703791, at *2 (M.D. Pa. Sept. 15, 2010). The court distinguished the reasoning in *Weiss v. County of Chester*, which involved a mortality review report prepared in direct response to a prisoner's suicide. *Id.* (citing *Weiss*, 231 F.R.D. at 205). In *Finney*, the court determined that the peer review report would have been done regardless of the prisoners' suicides, it was not necessary to prove the plaintiff's case, and it did not concern the crux of the underlying litigation. *Id.* at *3. The facts of the instant case align more closely with those at issue in *Weiss*.

**16.** Defendants also discuss the District of Delaware's decision in *KD ex rel. Dieffenbach v. United States*, 715 F. Supp. 2d 587, 592 (D. Del. 2010), which involved the disclosure of documents regarding a minor child's participation in ongoing monitoring as part of research performed by the National Institutes of Health. In limiting its ruling to "the particular circumstances of this case," the court expressly acknowledged that "[a] privilege for medical

peer review materials has not been recognized in this circuit" and "the balance of authority weighs against recognition." *Id.* This case does not support an extension of the medical peer review privilege to a prisoner civil rights case. *See Nash v. Connections CSP, Inc.*, C.A. No. 16-896-GMS, 2018 WL 2012898, at *2 (D. Del. Apr. 30, 2018) (holding that the peer review privilege was not available in a prisoner's civil rights case, and stating that the contract medical provider "cannot withhold discovery on this ground."). For the foregoing reasons, the court declines to recognize a federal common law medical peer review privilege in this case.

**17.** Next, Defendants contend that Plaintiffs' requested discovery goes to the merits of the case and exceeds the proper scope of discovery at the class certification stage. (D.I. 324 at 12-13) To the extent that the alleged peer review material is limited to class certification discovery from Baylor Women's Correctional Institution and James T. Vaughn Correctional Center—the two facilities where the named Plaintiffs were housed—these documents contain system-wide information necessary to show that potential class members suffered from common deficiencies in the prison healthcare system. (D.I. 311 at 3) "[T]hey are compelling evidence that Plaintiffs' egregious experiences are not unique but rather are typical and reflect the common experience of the class." (D.I. 325 at 3-4) Discovery from other correctional facilities is not permitted by this Memorandum Order. The protective orders governing this case should otherwise protect against any potential fishing expeditions to identify new class members. (D.I. 112; D.I. 159; D.I. 180; D.I. 284)

**18.** Finally, Defendants argue if the court is inclined to reject the assertion of peer review privilege, the court should "exercise its discretion to greatly limit the production of those materials regardless of privilege." (D.I. 329 at 10) Defendants offer no proposed parameters to guide the court in this narrowing exercise, nor does the record contain a hit count estimate of the

number of documents allegedly implicated by the request, leaving the court with no guidance as to the scope of discovery implicated by Defendants' assertion of the peer review privilege. And although Defendants have not produced a privilege log regarding any of the documents at issue, they also ask the court to engage in an *in camera* review before requiring the production of any documents. (*Id.*) Defendants' alternative requests for the court to engage in a *sua sponte* narrowing of discovery and *in camera* review are DENIED without prejudice.

**19. Conclusion.** For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion to compel VitalCore to produce the following documents from the Baylor Women's Correctional Institution and James T. Vaughn Correctional Center for the time period from May 1, 2023 to June 1, 2026 is GRANTED:

i. Continuous Quality Improvement ("CQI" or "QAPI") reports and minutes;

ii. Morbidity and Mortality ("M&M") reports and/or adverse incident reports;

iii. Monthly status reports;

iv. Healthcare advisory committee meeting minutes;

v. Medical staff meeting minutes;

vi. Health services reports;

vii. Joint provider meeting minutes; and

viii. Special needs multidisciplinary team meeting minutes.

(D.I. 288; D.I. 297) Defendants may not withhold discovery from these institutions based on their assertion of the peer review privilege. IT IS FURTHER ORDERED that Defendants' alternative requests for relief are DENIED without prejudice.

Sherry R. Fallon
United States Magistrate Judge